## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
### NO. 5:05-CV-48 FL (1)

RICHARD P. NORDAN, as Ancillary )
Administrator for the separate Estates of )
STEPHEN S. HELVENSTON, MIKE R. )
TEAGUE, JERKO GERALD ZOVKO and )
WESLEY J.K. BATALONA, )
            )
        Plaintiffs, )
            )
      v. )
            )
BLACKWATER SECURITY )
CONSULTING, LLC, a Delaware Limited )
Liability Company; BLACKWATER )
LODGE AND TRAINING CENTER, INC., )
a Delaware Corporation, JUSTIN L. )
MCQUOWN, an individual; and THOMAS )
POWELL, an individual, )
            )
        Defendants. )
_____ )

**PLAINTIFF'S MEMORANDUM
OF LAW IN SUPPORT OF
MOTION FOR REMAND**

The Plaintiff hereby submits this memorandum of law in support of his Motion to

Remand, in accordance with 28 U.S.C. § 1447 and Local Civil Rule 7.1 of the U.S. District

Court for the Eastern District of North Carolina.


### INTRODUCTION

On January 5, 2005, Plaintiff Richard P. Nordan, as Ancillary Administrator of the

Estates of Scott S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley J.K. Batalona,

filed an action in North Carolina Superior Court, Wake County, alleging two exclusively state

law causes of action for wrongful death and fraud.  On January 24, 2005, Defendants Blackwater

1

Security Consulting, LLC and Blackwater Lodge and Training Center, Inc., along with Joinders from Defendants Justin L. McQuown and Thomas Powell, filed a Notice of Removal of Action to this U.S. District Court.

The removal was not based upon diversity of citizenship, nor upon a claim in the Complaint arising under the Constitution or a treaty or law of the United States. Instead, the removal was based exclusively upon an anticipated defense by the Defendants. However, for more than a century, federal courts across the country, including the U.S. Supreme Court, have held that an affirmative defense premised upon federal law does not confer federal subject matter jurisdiction over a state court action and does not provide grounds for the matter to be removed to federal court. The Defendants have ignored this long-standing principle of American jurisprudence.

Moreover, the Defendants' Notice of Removal contains a literal plethora of factual allegations found nowhere within the Plaintiff's Complaint. There is an equally long-standing principle in American law that the basis for removing an action to federal court must be premised exclusively upon the facts and claims contained in the Plaintiff's Complaint. With this regard, the courts have described the Plaintiff as the "master of his own pleadings," in determining which facts are included in the Complaint for the purpose of consideration regarding removal.

Despite the overwhelming legal authority restricting the factual allegations upon which a case may be removed to only those contained in the Complaint, the Defendants boldly recite fact after fact of allegations which are newly introduced to the litigation, and found nowhere within the Plaintiff's Complaint. Not only do the Defendants wish to premise their removal upon their anticipated defenses, but they also wish to premise their removal upon their own set of facts, which are only interjected by their Notice of Removal. It is black letter law that neither of these

attempts may form the basis for removal of the instant state court action. In all, this court simply lacks subject matter jurisdiction over the case, and thus it must be remanded to state court.

## STATEMENT OF FACTS

On January 5, 2005, Plaintiff Richard P. Nordan, as Ancillary Administrator for the separate Estates of Scott S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley J.K. Batalona filed a Complaint in North Carolina Superior Court, Wake County, alleging two state court causes of action for wrongful death and fraud. The Complaint alleges a very detailed set of facts regarding the Defendants' intentional conduct in causing the deaths of Scott S. Helvenston, Mike R. Teague, Jerko Geraldo Zovko and Wesley J.K. Batalona ("Decedents"), as well as the Defendants' intentional conduct of fraudulently inducing the Decedents to enter into their respective Independent Contractor Service Agreements.

In addition to the multitude of facts concerning the Defendants' wrongful, intentional conduct, the Complaint also alleges facts concerning certain contracts under which the Decedents were performing work for Blackwater. More specifically, there are contractual relationships alleged between three separate companies. One company is a Cyprus Corporation named ESS Support Services Worldwide, Eucharist Support Services International, LTD. ("ESS"). ESS is a business with two divisions, the most relevant of which provides catering support services. [*Complaint*: ¶18.] The other division provides design and building services to U.S. Armed Forces and other U.S. contracting agencies in Iraq and Kuwait. [*Id.*] It is worth noting that the allegations contained in the Complaint related to ESS's "catering support services," and not the other division of ESS which provides services to the "U.S. Armed Forces and other U.S. contracting agencies in Iraq and Kuwait." [*Id.*]

The second company about which there are factual allegations in the Complaint is a

Kuwaiti company named Regency Hotel and Hospital Company ("REGENCY"). [*Complaint*:

¶19.] The third company described in the Complaint is collectively referred to as

"BLACKWATER," which consists of Blackwater Security Consulting, LLC, a Delaware Limited

Liability Company, and Blackwater Lodge and Training Center, Inc., a Delaware Corporation.

[*Complaint*: ¶¶5-7].

The Complaint specifically alleges that BLACKWATER and REGENCY joined forces to

submit a bid to ESS to be "the provider of security services for the food convoys." [Complaint:

¶21.] For the purpose of analyzing federal jurisdiction upon the instant motion to remand, these

are essentially the relevant facts concerning the contractual arrangements between these three

companies. There is absolutely <u>no</u> allegation contained in the Complaint that indicates that

BLACKWATER was a subcontractor to the United States Armed Forces. Such an allegation is

exclusively a creation of the Defendants' Notice of Removal [*Notice of Removal*: ¶8].

Instead, the factual allegations which are actually contained in the Complaint give rise to

the two state law causes of action for wrongful death and fraud. Essentially, the Defendants

made false representations to the Decedents to induce them to enter into their respective

Independent Contractor Service Agreements, and travel to Iraq and surrounding countries to

provide security services for ESS's catering division. The Decedents entered into their respective

Independent Contractor Service Agreements in reliance upon the Defendants' representations

that they would be provided with certain protections, tools and information to allow them to

perform their jobs.

More specifically, the Decedents were each told by the Defendants that: (1) each security

mission would be handled by a team of no less than six members; (2) each security mission

would be performed in armored vehicles; (3) the security teams would be comprised of at least two armored vehicles, with at least three security contractors in each vehicle, which would provide for a driver, a navigator and a rear gunner; (4) the rear gunner would have a heavy automatic weapon, allowing the gunner to fight off any attacks from the rear; (5) they would be given at least 24-hours notice prior to any security mission; (6) each security mission would be subject to a Risk Assessment completed prior to the mission and that if the threat level was too high, they would have the option not performing the mission; (7) they would be afforded the opportunity to review the travel routes, gather intelligence about each mission, do a pre-trip inspection of the route and determine the proper logistics to carry out the security detail; and (8) they would arrive in the Middle East and have at least 21 days prior to any operations to become acclimated to the area, learn the lay of the land, and gather intelligence and learn safe routes through the area. [*Complaint*: ¶13.]

However, in an effort to cut costs and improve their bottom line, BLACKWATER did not provide the Decedents with these promised protections, tools and information. [*Complaint*: ¶15.] As a result, the Defendants intentionally and knowingly sent the Decedents into known harm's way without the needed and promised protections. [*Complaint*: ¶16.]

In addition, there existed animosity between one of the managing agents of BLACKWATER, Defendant Justin McQuown, and one of the Decedents, Scott Helvenston. [*Complaint*: ¶¶40-42.] This animosity resulted in Justin McQuown pulling Scott Helvenston off of his pre-designated team, assigning him to a new team consisting of individuals he had never met, and sending him into Baghdad prior to the commencement of the security contract with ESS, at a time when Helvenston was physically ill. [*Complaint*: ¶¶43-49.]  Once in Baghdad, the Decedents were sent on a security mission by another managing agent of BLACKWATER,

5

Defendant Tom Powell, prior to the commencement date of the contract with ESS. The Decedents were sent out on this security mission, without the required six-man team, without armored vehicles, without a rear gunner in each vehicle, without heavy machine weapons, without a Risk Assessment, without a pre-trip inspection of the route, and without even so much as a map of the area. With the ESS food convoy in their charge, the Decedents ultimately became lost, and ended up driving through the center of Fallujah. This was at a time when even the U.S. military would not travel into the heart of Fallujah.

As the Decedents were lost, without the needed protections, tools and information which BLACKWATER initially represented they would have, they were ambushed by insurgents in Fallujah, who were able to literally walk up behind the vehicles and shoot all four men with small arms at close range. [*Complaint*: ¶ 61.] Their bodies were pulled into the streets, burned and their charred remains were beaten and dismembered. Ultimately, two of the burnt bodies were strung up from a bridge over the Euphrates River. [*Id.*]

In sum, the factual allegations contained in the Complaint do not allege that the Decedents or BLACKWATER were working subject to a contract with the U.S. Armed Forces. Instead, the Complaint alleges a contractual relationship between ESS (a Cyprus company), REGENCY (a Kuwaiti company), and BLACKWATER (a pair of related Delaware companies). The Complaint further alleges that the BLACKWATER engaged in fraudulent conduct in inducing the Decedents to enter into their respective Independent Contractor Service Agreements, and the Defendants knowingly and intentionally caused the wrongful death of the Decedents. Based upon the factual allegations actually contained in the Complaint, this action does not state a claim "arising under" the Constitution, or a treaty or law of the United States. Instead, the Complaint strictly alleges two state law causes of action.

6

## STATEMENT OF LAW

### A.    Federal Subject Matter Jurisdiction is Strictly Limited

On January 24, 2005, the Defendants removed the instant action from North Carolina state court to the instant federal court. "The right to remove a case from state to federal court derives solely from *28 U.S.C. §1441*, which provides in relevant part: (a) . . . Any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the Defendant or the Defendants, to the district of the United States for the district and division embracing the place where such action is pending." *Mulcahey v. Columbia Organic Chemicals Company, Inc.*, 29 F.3d 148, 151 (4th Cir. 1994). "Accordingly, the propriety of removal depends on whether the case falls within the provisions of *28 U.S.C. §1331*: 'The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Id.*

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 376 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* "Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction. If federal jurisdiction is doubtful, a remand is necessary." *Mulcahey*, 29 F.3d at 151.

In the instant case, <u>none</u> of the claims contained within the Plaintiff's Complaint "arise under" the Constitution, treaties, or laws of the United States. As such, there simply does not exist federal subject matter jurisdiction over the instant action. Since federal courts are courts of limited jurisdiction and removal jurisdiction must be strictly construed, this court should remand

the action back to state court, for lack of subject matter jurisdiction.

**B.    Defendants' Anticipated Defenses, Including Federal Preemption, Do Not Create Federal Subject Matter Jurisdiction.**

The Defendants' removal of this case to federal court is premised *exclusively* upon the claim that their anticipated defense gives rise to federal preemption.  It is based upon this anticipated defense that the Defendants claim this court has federal subject matter jurisdiction over the subject action.

However, it is one of the oldest principles in American jurisprudence that an anticipated defense, *even if premised upon federal law or federal preemption,* cannot form the basis for federal subject matter jurisdiction.  "The jurisdictional structure at issue in this case has remained basically unchanged for the past century." *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 43 U.S. 1, 7 (1983).

> [Whether] a case is one arising under the Constitution or a law or treaty of the
>
> United States, in the sense of the jurisdictional statute, . . . must be determined
>
> from what necessarily appears in the Plaintiff's statement of his own claim in the
>
> bill or declaration, <u>unaided by anything alleged in anticipation of avoidance of</u>
>
> <u>defenses which it is thought the Defendant may interpose.</u> [Emphasis added.] *Id.*
>
> at 9.

This principle was firmly settled even back near the turn of the century. *See Taylor v. Anderson*, 234 U.S. 74, 75 (1914).  Later, Supreme Court Justice Cardozo articulated this rule as

follows: **"[T]he controversy must be disclosed upon the face of the Complaint, unaided by the Answer or by the Petition for Removal. Indeed, the Complaint itself will not avail a basis of jurisdiction insofar as it goes beyond a statement of the Plaintiff's cause of action and anticipates or replies to a probable defense."** [Emphasis added.] *Gully v. First National Bank*, 299 U.S. 109, 113 (1936). "Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit." *Id.* at 115.

Over the past 20 years, the U.S. Supreme Court has continually reinforced this rule of law. In 1983, Justice Brennan provided: "For better or worse, under the present statutory scheme as it has existed since 1887, a Defendant may not remove a case to federal court unless the *Plaintiff's* complaint establishes that the case 'arises under' federal law. [Italics in original.]" *Franchise Tax Board*, 463 U.S. at 10.

In 1987, Justice O'Connor, artfully wrote: "Federal pre-emption is ordinarily a federal defense to the Plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63 (1987). Also in 1987, Justice Brennan more thoroughly articulated the interplay between the rule that facts giving rise to federal jurisdiction must be exclusively contained within the Plaintiff's complaint and the anticipated defense of federal preemption:

Ordinarily, federal pre-emption is raised as a defense to the allegation in a Plaintiff's complaint. Before 1887, a federal defense such as pre-emption could provide a basis for removal, but, in that year, Congress amended the removal statute. We interpret that amendment to authorize removal only where original

federal jurisdiction exists. **Thus, it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the Plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.** [Italics in original.] [Emphasis added.] *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987).

In 1997, Justice O'Connor revisited this issue and delivered an opinion consistent with the century-old rule of law: "The propriety of removal thus depends on whether the case originally could have been filed in federal court. The district courts have original jurisdiction under the federal question statute over cases 'arising under the Constitution, laws or treaties of the United States.' §1331. 'It is long-settled law that a cause of action arises under federal law only when the Plaintiff's well-pleaded complaint raises issues of federal law.'" *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 163 (1997).

In 1998, Justice Ginsburg continued to ingrain in legal history this rule of law: "Congress has provided for removal of cases from state court to federal court when the Plaintiff's complaint alleges a claim arising under federal law. **Congress has not authorized removal based upon a defense or an anticipated defense federal in character.**" [Emphasis added.] *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 472 (1998). "Thus, a case may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the Plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Id.* at 475.

In this respect, the plaintiff is the master of the complaint, and only those facts contained within the complaint may give rise to the federal subject mater jurisdiction.

It is well-settled that a Plaintiff is the "master of the complaint" and that a claim for relief arises under federal law only when a substantial federal question is presented on the face of the plaintiff's 'well-pleaded complaint.' Accordingly, a plaintiff may preclude removal by electing not to plead an optional federal cause of action. Likewise, a defendant may not usurp control of a plaintiff's case simply by asserting a federal defense." *Marcus v. AT&T Corp.*, 938 F.Supp 1158, 1165 (S.D.N.Y. 1996).

Recently, Justice Stevens confirmed that this rule of law is still alive today: "Thus, a defense that relies on the preclusive effect of a prior federal judgment, or the preemptive effect of a federal statute, will not provide a basis for removal. As a general rule, absent diversity jurisdiction, a claim will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6 (2003).

In the instant case, the Defendants' Notice of Removal based upon the alleged existence of federal jurisdiction is premised *exclusively* upon their claim that the Plaintiff's action is preempted by federal law (i.e., The Defense Base Act). However, the century-old rule of law concerning removal jurisdiction clearly mandates that federal jurisdiction must be derived from the claims contained in the Plaintiff's Complaint. An anticipated defense to the Plaintiff's Complaint, including a defense involving federal preemption, does not serve as a basis for federal subject matter jurisdiction for the purpose of removal.

For there to be federal jurisdiction over the instant action, the Plaintiff's claims must be created by federal law. Here, both of the Plaintiff's claims are not created by federal law, but instead are premised exclusively upon North Carolina state law concerning wrongful death and fraud. Therefore, as much as the Defendants wish to create federal jurisdiction by informing this court of its anticipated defenses, a multitude of binding U.S. Supreme Court decisions simply defeat this attempt.

In addition, the Defendants also include in their Notice of Removal other factual allegations not found anywhere within the Complaint [such as, that the Department of Labor already entered a compensation order], for the purpose of arguing that a prior order is a defense to the instant action. Once again, anticipated defenses to the Plaintiff's Complaint, including prior federal judgments, do not create a basis for federal jurisdiction. *See Beneficial National Bank*, 539 U.S. at 6; and *Rivet*, 522 U.S. at 477 ["In sum, claim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under §1441(b)."]

In the face of overwhelming judicial authority, the Defendants have improperly removed the instant case to federal court based upon their anticipated defenses. The allegations contained in the Complaint itself clearly give rise to no claim under the Constitution, laws or treaties of the United States. As such, pursuant to 28 U.S.C. §1447(c), it is proper for this court to remand the instant action back to North Carolina state court.

### C.     There is No "Complete Preemption" of the Plaintiff's Claims for Wrongful Death and Fraud.

A corollary to the above-described principle of law that an anticipated defense may not serve as a basis for federal jurisdiction is a very narrowly drawn exception thereto, whereby if federal law "completely preempts" a Plaintiff's entire cause of action, federal courts may exercise

subject matter jurisdiction over the claim. However, there is no "complete preemption" in this case, in that: (1) this is a very narrow exception to the rule (found to exist in only three instances); (2) state law claims for wrongful death and fraud have never been completely preempted; (3) there is an absence of the required clear intent by Congress for the Defense Base Act to provide complete preemption; and (4) no state or federal court in the country has ever found that the Defense Base Act provides complete preemption for the purpose of federal removal jurisdiction.

This principle of complete preemption was recently articulated by the Fourth Circuit as follows:

> There is one corollary to the well-pleaded complaint rule. Federal pre-emption is ordinarily a federal defense to the Plaintiff's suit. Therefore, a Defendant's raising of the defense of federal preemption is, under the well-pleaded complaint rule, insufficient to allow the removal of the case to federal court. But, in some cases, federal law so completely sweeps away state law that any action purportedly brought under state law is transformed into a federal action that can be brought originally in, or removed to, federal court. The operation of this rule has come to be known as the doctrine of "complete preemption." *King v. Marriot International, Inc.*, 377 F.3d 421, 424-25 (4th Cir. 2003).

More recently, the U.S. Supreme Court articulated the complete preemption exception as follows:

There is an exception, however, to the well-pleaded complaint rule. "[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption," the state claim can be removed. This is so because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Aetna Health Inc. v. Juan Davila Signa Healthcare of Texas, Inc.*, 124 S.Ct. 2488, 2494-95 (2004).

This articulation of the exception to the rule was premised upon the Supreme Court's decision in *Beneficial National Bank v. Anderson*, 539 U.S. 1, 8 (2003). In determining whether a federal statute completely preempts an entire area of law, the courts look to whether the federal statute creates a federal cause of action that would encompass the state law claim. However, where no such federal statutes creating a cause of action exists, there can be no preemption.

Thus, a vital feature of complete preemption is the existence of a federal cause of action that replaces the preemptive state cause of action. Where no discernable federal causes of action exist on a Plaintiff's claim, there is no complete preemption, for in such cases, there is no federal cause of action that Congress intended to be the exclusive remedy for the alleged wrong. *King*, 337 F.3d at 425.

In the instant case, there is no complete preemption of the Plaintiff's claim by either the Defense Base Act or the Longshore and Harbor Workers' Compensation Act ("LHWCA"). These federal statutes do not completely preempt the Plaintiff's state law causes of action for

wrongful death and fraud for the following reasons: (1) the Defense Base Act does not "wholly displace" Plaintiff's state law causes of action for wrongful death and fraud, in that the Defense Base Act does not even apply to the instant action; (2) there is no clear intent by Congress, either expressly or implicitly, that the Defense Base Act or LHWCA completely preempt any and all state law causes of action; (3) neither the U.S. Supreme Court, nor any federal court, has ever held that either the Defense Base Act or the LHWCA provides complete preemption for the purpose of federal removal jurisdiction; and (4) Plaintiff's state law causes of action are premised upon North Carolina statutes, which preclude complete preemption.

### 1.    There is No Indication that the Defense Base Act Even Applies to the Instant Action.

As a threshold inquiry, it must be determined whether the Defense Base Act is at all applicable to the Plaintiff's causes of action.  The Defense Base Act is comprised of a detailed statutory scheme by which compensation may be paid to certain "employees" engaged in very particularized scopes of work.  Essentially, the Defense Base Act provides that "the provisions of the Longshoremen's and Harbor Workers' Compensation Act . . . shall apply in respect to the injury or death of any employee engaged in any employment" in six specific categories of work. 42 U.S.C. §1651(a).

Considering the limited and specific scope of work to which the Defense Base Act applies, prior to engaging in the analysis of whether there is complete preemption under the Defense Base Act, there must be a threshold determination, based upon the facts contained in the pleadings, as to whether the Defense Base Act applies to the Plaintiff's claims.  If the Defense Base Act does not apply to the Plaintiff's state law claims based upon the four corners of the pleadings, or if there is a factual question as to whether it applies, this court need not even

entertain the issue of complete preemption. Based upon the factual allegations contained in the Complaint, all of which must be deemed true and exclusive for the purpose of the Defendants' removal and the instant Motion for Remand, there are no facts that give rise to the application of the Defense Base Act.

First, as mandated by 42 U.S.C. §1651(a), the Defense Base Act applies to "any employee engaged in any employment . . ." However, as alleged in the Complaint, the Decedents were <u>not</u> "employees" of BLACKWATER, but instead were independent contractors: "Helvenston, Teague, Zovko and Batalona, and each of them, were hired by BLACKWATER as independent contractors, and were at no relevant time employees of BLACKWATER." [*Complaint* ¶31.] Therefore, since the Decedents were independent contractors and not employees, the Defense Base Act simply does not apply, and the issue concerning complete preemption is irrelevant.

Second, the Defense Base Act provides a very limited scope of work to which it applies, as articulated in subsections (1)-(6) of 42 U.S.C. §1651(a). Based upon the allegations contained in the Complaint, the work being performed by these independent contractors for BLACKWATER does <u>not</u> fall within any of these categories of employment. It is anticipated that the Defendants may attempt to argue that subsection (6) applies to the instant case, which relates to employment "outside the continental United States by an American employer providing welfare or similar services for the benefit of the Armed Forces pursuant to appropriate authorization by the Secretary of Defense." 42 U.S.C. §1651(a)(6).

However, a review of the factual allegations contained within the four corners of the Complaint, clearly reveals that there are no allegations which would place the scope of work by the independent contractors within this category. In fact, there is a complete absence of any reference to an "appropriate authorization by the Secretary of Defense." The only facts contained

in the Complaint concerning the contracts relating to the subject employment of these independent contractors is an agreement between a private Cyprus company (ESS), a private Kuwaiti company (REGENCY), and a collection of two private American companies (BLACKWATER).  Pursuant to the Complaint, these contracts were not the subject of any "authorization by the Secretary of Defense."

In all, based upon the allegations contained in the Complaint, the Decedents were not "employees" of BLACKWATER, but instead independent contractors, and they were not engaged in any of the specific scope of work articulated by the Defense Base Act.  As such, there is no indication that the Defense Base Act even applies to the Plaintiff's state law claims for wrongful death and fraud, and thus the issue of complete preemption is irrelevant.

### 2.    There Exists No Congressional Intent That the DBA or LHWCA Completely Preempt All State Law Causes of Action.

Notwithstanding the foregoing, to the extent that the Defendants are able to persuade this court that it should look beyond the pleadings to determine federal removal jurisdiction (which the Plaintiff respectfully submits would be improper), there is simply no clear intent by Congress for the Defense Base Act or the LHWCA to completely preempt any and all state law causes of action.  Looking to the language of the act itself, the Defense Base Act essentially extends the workers' compensation provisions of the Longshore and Harbor Workers Compensation Act to those claims which fall within the narrow scope of the Defense Base Act.

However, there is nothing in the language of the act itself which would indicate Congress's intent for the Defense Base Act to completely preempt any and all state law claims. **This is especially revealed by the fact that the Defense Base Act does <u>not</u> completely preempt any and all state law claims, but instead only applies to claims by "employees"**

**who perform work within six very narrow and particular categories of employment.**
Moreover, there is nothing within the history of this statute which would indicate Congress's
clear intent to completely preempt any and all state law claims.

With respect to the LHWCA, there is similarly an absence in the language of the statute,
as well as its history, to identify a clear intention by Congress for the LHWCA to completely
preempt any and all state law claims. In fact, this issue was specifically addressed by the
Supreme Court of Louisiana and the Supreme Court of Maine.

In *Murray v. City of Augusta*, 394 A.2d 1171 (1978), the Supreme Court of Maine
expressly found against complete preemption by the LHWCA:

> We will not presume a preemption by the federal government since the
> amendment to LHWCA does not contain such definitive language that we can
> infer a Congressional attempt to preempt jurisdiction over all injuries occurring in
> the covered areas. The Act contains no language that demonstrates (1) it was the
> clear and manifest purpose of Congress to preempt the field, or (2) that the
> exercise of dual authority is repugnant to the Congressional objective. [Citation.]
> *Id.* at 1173.

In *Logan v. Louisiana Dock Company*, 541So. 2d 182 (1989), the Supreme Court of
Louisiana expanded upon the lack of preemption by the LHWCA, and found that not only was
there no clear Congressional intent in favor of preemption, but instead, there actually exists
duality of jurisdiction for workers' compensation benefits to be paid under the LHWCA and state
workers compensation Law. Relying upon two U.S. Supreme Court decisions, the court in

*Logan* stated the rule as follows:

> It is well established that federal preemption of state laws will not be found
> without a clear expression of Congressional intent, and there is a strong
> presumption against finding preemption.  In *Askew v. American Waterways*
> *Operators, Inc.*, *41 U.S. 325, 341, 93S.Ct. 1590, 36 L.Ed. 2d 280 (1973)*, the
> Court stated: 'Even though Congress has acted in the admiralty area, state
> regulation is permissible, absent a clear conflict with federal law.'  The U.S.
> Supreme Court has also noted that in cases of doubt concerning the applicability
> of state law compensation relative to the LHWCA, the question should be
> resolved in favor of the constitutionality of the state remedy. *Id.* at 184.

The court then examined the language of the LHWCA, and concluded that not only is
there no Congressional intent for complete federal preemption, but the act itself actually permits
concurrent jurisdiction and the award of workers' compensation benefits under state law.  "We
note the LHWCA, as amended, contains no express declaration of Congressional intent to
prohibit states from providing compensation to injured workers in lieu of, or in addition to, the
benefits provided under the LHWCA." *Id.*  "We find the Court of Appeal clearly erred in finding
preemption is mandated by the LHWCA.  This holding is contrary to the statutory language itself
as well as the interpretation of the statute by the U.S. Supreme Court in *Sun Ship*" *Id.* at 185.

In *Sun Ship*, the U.S. Supreme Court expressly found that the LHWCA does not preempt
state court actions: "The language of the 1972 amendments cannot fairly be understood as pre-
empting state workers' remedies from the field of the LHWCA, and thereby resurrecting the

19

jurisdictional monstrosity that existed before the clarifying opinions in *Davis* and *Calbeck*. . . . Nor does the legislative history suggest a Congressional decision to exclude state laws from the terrain newly occupied by the post-1972 Longshoremen's Act." *Sunship v. Pennsylvania*, 447 U.S. 715, 720 (1980).

In all, there is a complete absence of any Congressional intent for the LHWCA to completely preempt all state law claims, and in fact, both state courts and the U.S. Supreme Court have found that there is no complete preemption of state law by the LHWCA.

### 3.    The U.S. Supreme Court Has Found Only Three Federal Statutes Provide Complete Preemption for Federal Removal Jurisdiction.

No state or federal court has ever found that the Defense Base Act or the LHWCA completely preempts state law for the purpose of federal removal jurisdiction. In fact, as recently as 2003, the U.S. Supreme Court indicated that there are only three federal statutes which provide complete preemption for the purpose of federal removal jurisdiction.

In *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003), the Supreme Court reviewed the issue of whether the National Bank Act completely preempted state law for the purpose of federal removal jurisdiction. The Court ultimately concluded that the exclusive provision of the National Bank Act governing the rate of interest that a national bank may lawfully charge preempted the Plaintiffs' state law claims.

Justice Scalia wrote the dissenting opinion whereby he articulated the history surrounding federal statutes which completely preempt state law claims giving rise to federal removal jurisdiction. In doing so, Justice Scalia noted that as of 2003, the Supreme Court had only found two federal statutes which provide complete preemption of state law claims for the purpose of federal removal jurisdiction: "This Court has twice recognized exceptions to the well-pleaded-

20

complaint rule, upholding removal jurisdiction notwithstanding the absence of a federal question on the face of the plaintiff's complaint." *Id.* at 13.

The first statute that the Supreme Court found to completely preempt state law was the Labor Management Relations Act ("LMRA") [29 USC §185], pursuant to the Court's decision in *Avco Corp. v. Machinists*, 390 U.S. 557 (1968). The second federal statute that the Supreme Court found completely preempts state law for the purpose of federal removal jurisdiction was the Employee Retirement Income Security Act ("ERISA"), by its decision in *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58 (1987). Other than these two federal statutes, the LRMA and ERISA, as well as the National Bank Act, the Supreme Court has never found that any other federal statute completely preempts all state law claims for the purpose of federal removal jurisdiction.

### 4.     A Cause of Action Premised Upon A State Statute is Not Preempted by Federal Law.

To the extent that a Plaintiff's cause of action is premised upon a state statute, a federal statute raised in defense to said cause of action <u>cannot</u> "completely preempt" the state law cause of action. "By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby." *Gulley v. First National Bank*, 299 U.S. 109, 116 (1936); *See also Franchise Tax*, 463 U.S. at 12.

Therefore, to the extent that the Plaintiff's cause of action is premised upon a North Carolina statute, said cause of action cannot be the basis for federal subject matter jurisdiction. The Fourth Circuit recently stated this principle another way. "A plaintiff's right to relief for a given claim necessarily depends on a question of federal law only where *every* legal theory supporting the claim requires the resolution of a federal issue. . . . In other words, if the plaintiff

21

can support his claim with even one theory that does not call for an interpretation of federal law, his claim does not 'arise under' federal law for the purposes of § 1331." [Italics in original.] *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816-17 (4th Cir. 2004).

In the instant action, the plaintiff has brought two causes of action. Plaintiff's cause of action for wrongful death is based upon a North Carolina statute, which allows for the recovery of damages "[w]hen a death of a person is caused by a wrongful act, neglect or default of another . . . ." *N.C. Gen. Stat.* §28A-18-2.

Hence, considering that at least one of the Plaintiff's causes of action is premised upon a state statute, "by unimpeachable authority," this cause of action cannot be completely preempted by a federal statute, for the purpose of removal jurisdiction.

### D.    The Court Lacks Subject Matter Jurisdiction and Remand is Proper.

As set forth in great detail above, the Defendants' anticipated defenses, even if premised upon a federal statute or federal preemption, cannot serve as the basis of federal subject matter jurisdiction, in that said defenses are outside of the claims set forth in the Complaint. Moreover, neither the Defense Base Act, nor the LHWCA, provides complete preemption of any and all state law claims for wrongful death and fraud, for the purpose of federal removal jurisdiction.

A case must be remanded to state court if at any time before final judgment it appears that the District Court lacks subject matter jurisdiction. *See* 28 USC §1447. In the instant case, since: (1) the factual allegations and claims contained in the Complaint do not "arise under" the Constitution, laws or treaties of the United States; (2) the Defendants' anticipated defenses do not form the basis for federal jurisdiction; and (3) there is no evidence of Congress's clear intent for the Defense Base Act or the LHWCA to provide "complete preemption" for the purpose of

removal jurisdiction, this District Court simply lacks subject matter jurisdiction over the instant state law claims. Consequently, it is respectfully requested that the court remand the matter back to the North Carolina Superior Court.

**E.    Plaintiff is Entitled to Recovery of Attorney's Fees in Connection with the Defendants' Improper Removal to Federal Court.**

Upon the remand of an action back to state court, 28 U.S.C. §1447(c) provides for the recovery of attorney's fees and costs incurred as a result of the Defendants' removal. Prior to 1988, Section 1447(c) only permitted the recovery for attorney's fees where "the case was removed improvidently and without justification." However, in 1988, this section was amended, and those terms were removed from the statute. *See* 28 USC §1447(c). As such, the recovery of attorney's fees upon remand no longer requires any bad faith action by the removing defendant.

Federal courts throughout the country have awarded plaintiffs the recovery of attorney's fees and costs when a defendant has improperly removed an action to federal court based upon an anticipated defense. For example, in *Wallace v. Wiedenbeck*, 985 F.Supp. 288 (1998), the District Court remanded a case back to state court, noting: "It is well established that a defendant cannot remove based upon grounds raised in its answer. This principle applies with equal force to defenses, as well as counter-claims. Thus, the federal nature of Respondents' defense and counter-claim is not sufficient to confer jurisdiction on this Court for the purposes of removal." *Id.* at 291.

In determining whether to award attorney's fees, the court noted that defense counsel was "experienced in federal court practice" and should have known that removal of an action based upon an anticipated defense cannot form the basis of federal subject matter jurisdiction.

The award of costs and fees under *28 U.S.C. §1447(c)* is discretionary, and need not be based on a finding of bad faith on the part of the removing party. In the present case, the Court finds that while the Respondents' counsel is experienced in federal court practice, the removal basis asserted in this case was contrary to overwhelming authority on each of the stated grounds. Accordingly, an award to the Petitioners of reasonable attorney's fees, costs, and disbursements incurred as a result of the removal is appropriate. *Id.* at 291.

In fact, the Fifth Circuit recently awarded attorney's fees and costs to the plaintiff upon remanding the case back to state court in a matter almost identical to the instant action. In *Garcia v. Amfels, Inc.*, 254 F.3d 585 (5th Cir. 2001), the plaintiff filed a wrongful death action in state court alleging negligence and premises liability. The complaint made no reference whatsoever to the LHWCA, or any other federal statute, regulation, law or question. Nonetheless, the defendant removed the case to federal court based upon its LHWCA defense.

The court not only remanded the action to state court, but in addition, awarded attorney's fees to the plaintiff, upon the ground that since the "law explicitly prevented removal based upon a LHWCA defense, Defendant's removal of the case was frivolous." *Id.* at 587. In support of the justification for the award of attorney's fees against the removing defendant, the court noted that "there is no question that the LHWCA does not create federal subject matter jurisdiction supporting removal. The LHWCA is a preemption defense that needs to be raised in state court." *Id.* at 588.

Moreover, Defendants' counsel, Wiley, Rein & Fielding ("WRF") is intimately familiar with this century-old principle of law, in that just within the last eight months it has been told

24

twice by a federal District Court and the Second Circuit that it cannot remove state court cases to federal court based upon an anticipated defense found within a federal statute.

In *City of Rome v. Verizon Communications, Inc.*, 362 F.3d 168 (2nd Cir. May 13, 2004), WRF took the same tact that it has attempted in the instant action. There, upon the Plaintiff's filing of a state court action seeking declaratory relief concerning a franchise agreement, WRF immediately removed the case to federal court based upon its anticipated defense under the Telecommunications Act of 1996, as well as their *own* ground for removal that resolution of the case turns upon "several important questions of federal law." *Id.* at 173. Again, similar to the instant case, WRF then filed a motion to dismiss the complaint, relying upon materials outside of the allegations contained in the complaint. *Id.*

On appeal, the Second Circuit found that the case lacked federal subject matter jurisdiction and ordered the District Court to remand it back to state court. In doing so, WRF was reminded that: "The mere existence or invocation of a federal defense does not furnish a sufficient basis for jurisdiction to attach. In this case, the complaint referred only to state and local, not federal, law." *Id.* at 174-75. Moreover, the Second Circuit found that there was no "complete preemption" of state law claims by the Telecommunications Act, and highlighted the fact that there exists complete preemption with respect to only two statutes: LMRA and ERISA. "[I]t is worth noting that the Supreme Court has discerned a Congressional intent to accomplish complete preemption in only two statutes -- the *Labor-Management Relations Act of 1947* and the *Employee Retirement Income Security Act of 1974*" *Id.* at 177.

Roughly six months ago, WRF was again reminded that an anticipated defense of a federal statute cannot form the basis of federal subject matter jurisdiction. In *City of New York v. Verizon New York, Inc.*, 331 F.Supp.2d 222 (S.D.N.Y. August 20, 2004), the plaintiff filed a state

court action seeking declaratory relief regarding a contract it had with the defendant. Representing the defendant, WRF immediately removed the case to federal court, based upon its anticipated defense under the Telecommunications Act of 1996, and upon the ground that the plaintiff's claims necessarily turned on the resolution of a question of federal law. *Id.* at 224. WRF then filed a motion to dismiss based upon a defense found in the Telecommunications Act.

The District Court again reiterated the principle that: "The mere existence or invocation of a federal defense does not furnish a sufficient basis for jurisdiction to attach." *Id.* at 225. Moreover, the District Court reminded WRF of the Second Circuit's recent decision against it (just three months prior) in the *City of Rome* case. In doing so, the court stated: "It is clear that, unless the Complaint asserts an affirmative federal claim, the state law claims in the Complaint do not arise under federal law for the purposes of federal question jurisdiction, regardless of any federal preemption defense Verizon may be able to assert to those claims . . . ." *Id.* at 226.

In determining whether this court should award the instant Plaintiff attorney's fees and costs in connection with the Defendants' improper removal, it is worth noting that: (1) Defendants' counsel are experienced federal litigators; (2) there exists a century-old, well-settled principle of law that prohibits the removal of a state-law case based upon an anticipated defense arising under federal law (and that only three federal statutes have been found to provide "complete preemption"); and (3) Defendants' counsel is intimately familiar with this well-established law, having been reminded of it twice within the past eight months in connection with two unsuccessful attempts to remove a state-law case to federal court based upon an anticipated federal defense.

These facts weigh in favor of this court exercising its discretion in awarding the Estates of the Decedents recovery of their attorney's fees in being forced to bring the instant Motion for

Remand. As such, it is respectfully requested that this court remand the case back to the North Carolina Superior Court, Wake County, and award the Plaintiff recovery of attorney's fees in connection with these federal proceedings in the amount of $12,123. [*See Affidavit of Marc P. Miles.*]

## CONCLUSION

Based on the foregoing, the Plaintiff respectfully submits that this District Court lacks federal subject matter jurisdiction of the two state law causes of action for wrongful death and fraud contained in the Complaint. As such, it is respectfully requested that this court remand the case back to the North Carolina Superior Court, Wake County, and award the Plaintiff the recovery of attorney's fees in the amount of $12,123.

This _10th_ day of February 2005.

CALLAHAN & BLAINE, APLC

By:

DANIEL J. CALLAHAN (Cal. Bar No. 91490)
BRIAN J. McCORMACK (Cal. Bar No. 167547)
MARC P. MILES (Cal. Bar No. 197741)
3 Hutton Centre Drive, Suite 900
Santa Ana, California 92707
(714) 241-4444
Fax: (714) 241-4445
Attorneys for Plaintiff
RICHARD P. NORDAN, as the Ancillary
Administrator of the separate Estates of STEPHEN
S. HELVENSTON, MIKE R. TEAGUE, JERKO
GERALD ZOVKO and WESLEY J.K.
BATALONA

KIRBY & HOLT, LLP

By: _____

DAVID F. KIRBY (N.C. Bar No. 7841)
WILLIAM B. BYSTRYNSKI (N.C. Bar No. 20883)
P.O. Box 31665
Raleigh, North Carolina 27622
(919) 881-2111
Fax: (919) 781-8630
Attorneys for Plaintiff
RICHARD P. NORDAN, as the Ancillary
Administrator of the separate Estates of STEPHEN
S. HELVENSTON, MIKE R. TEAGUE, JERKO
GERALD ZOVKO and WESLEY J.K.
BATALONA

G:\2525\2525-02\Pleadings\Federal\Remand - Memo of Law.wpd

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served the foregoing **Plaintiff's Memorandum of Law in Support of Motion for Remand** in the above-entitled action on all of parties to this cause by depositing a copy, postage prepaid, in the United States Mail, addressed as follows:

Fred F. Fielding
Margaret A. Ryan
*Attorneys for Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc.*
Wiley Rein & Fielding LLP
1776 K Street, NW
Washington, DC  20006

Kirk G. Warner
Mark A. Ash
*Attorneys for Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc.*
Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP
P. O. Box 2611
Raleigh, NC  27602

Ralph J. Caccia
William C. Crenshaw
Don R. Berthiaume
*Attorneys for Justin L. McQuown*
Powell Goldstein, LLP
901 New York Avenue, NW, 3rd Floor
Washington, DC  20001

Patricia L. Holland
Rachel Esposito
*Attorneys for Justin L. McQuown*
Cranfill, Sumner & Hartzog, L.L.P.
P. O. Box 27808
Raleigh, NC  27611-7808

This is _11_ day of February, 2005.

David F. Kirby
Kirby & Holt, L.L.P.