

## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
### NO. 5:05-CV-48 FL (1)

FEB **2 2** 2005

| | |
|---|---|
| RICHARD P. NORDAN, as Ancillary Administrator for the separate Estates of STEPHEN S. HELVENSTON, MIKE R. TEAGUE, JERKO GERALD ZOVKO and WESLEY J.K. BATALONA, <br><br>          Plaintiffs, <br><br> v. <br><br> BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited Liability Company; BLACKWATER LODGE AND TRAINING CENTER, INC., a Delaware Corporation, JUSTIN L. MCQUOWN, an individual; and THOMAS POWELL, an individual, <br><br>          Defendants. | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE BLACKWATER DEFENDANTS' MOTION TO DISMISS** |

**COMES NOW** the Plaintiff in the above-entitled action, and hereby submits the following response to Defendants Blackwater Security Consulting, LLC, and Blackwater Lodge and Training Center, Inc.'s Motion to Dismiss, filed pursuant to Federal Rules of Civil Procedure Rules 12(b)(6) and 9(b).

## INTRODUCTION

The Plaintiff in this case has brought two state court causes of action for Wrongful Death and Fraud on behalf of the estates of four individuals killed in Fallujah, Iraq, on March 31, 2004.

1

Dockets.Justia.com

The Defendants improperly removed this case to federal court, under the premise that there exists federal subject matter jurisdiction based upon their anticipated defenses.

Defendants Blackwater Security Consulting, LLC, and Blackwater Lodge and Training Center, Inc., (hereinafter collectively referred to as "BLACKWATER") filed a Motion to Dismiss, claiming that the Complaint fails to state a claim upon which relief may be granted, pursuant to Federal Rules of Civil Procedure 12(b)(6), on the following grounds: (1) the Defense Base Act provides that the workers compensation benefits articulated by the Longshore and Harbor Workers Compensation Act are the Plaintiff's exclusive remedy; and (2) the release, waiver and covenant provisions of the Decedents' Independent Contractor Service Agreements preclude the instant action. In addition, BLACKWATER has also moved to dismiss this case claiming that the Second Cause of Action for Fraud is not plead with the particularity required by Federal Rules of Civil Procedure 9(b).

BLACKWATER's Motion to Dismiss must be denied for the following reasons:

1.     This court lacks federal subject matter jurisdiction over this case, in that none of the claims contained in the Plaintiff's Complaint "arise under" the Constitution, laws or treaties of the United States, and the Defendants' anticipated defenses cannot form the basis of federal subject matter jurisdiction.[1]

---

[1] Plaintiff filed a Motion for Remand on February 11, 2005, which should be decided prior to ruling on the instant Motion to Dismiss. *See Michael v. Bayer Corporation*, 203 U.S. Dist. LEXIS 860, *6 ("However, before this Court can consider Defendants' Motions to Dismiss a determination must be made as to whether the court has jurisdiction over this action and, thus, whether removal was proper.").

2.     The Defense Base Act does not apply to this action for several reasons.

    a.     The Defense Base Act only applies to "employees," and does not apply to independent contractors, such as the Decedents in this case.

    b.     The Defense Base Act only applies to six specific categories of work, none of which the Decedents were engaged in at the time of their deaths.

    c.     The Defense Base Act, and its extension of the Longshore and Harbor Workers Compensation Act, only applies to accidental or negligent conduct, and does not apply to the intentional conduct alleged in the Complaint.

3.     The provisions of the Decedents' Independent Contractor Service Agreements are unenforceable, including the provisions relating to any releases, waivers or covenants, in that the contracts were induced by fraud and will be rescinded.

4.     The Plaintiff's Complaint consists of 55 paragraphs of detailed factual allegations, which clearly set forth the facts supporting the Plaintiff's Second Cause of Action for Fraud with the particularity required by Federal Rules of Civil Procedure 9(b).

In all, this court lacks federal subject matter jurisdiction over the case, and should decline to rule on this Motion to Dismiss, but instead should remand the matter back to state court, pursuant to the Plaintiff's pending Motion for Remand, filed on February 11, 2005. Alternatively, the motion to dismiss should be denied for the numerous reasons set forth herein.

## STATEMENT OF FACTS

On January 5, 2005, Plaintiff Richard P. Nordan, as Ancillary Administrator for the

separate Estates of Scott S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley J.K.

Batalona, filed a Complaint in North Carolina Superior Court, Wake County, alleging two state

court causes of action for wrongful death and fraud. The Complaint alleges a very detailed set of

facts regarding the Defendants' intentional conduct in causing the deaths of Scott S. Helvenston,

Mike R. Teague, Jerko Geraldo Zovko and Wesley J.K. Batalona ("Decedents"), as well as the

BLACKWATER's intentional conduct of fraudulently inducing the Decedents to enter into their

respective Independent Contractor Service Agreements.

In addition to the multitude of facts concerning the Defendants' wrongful, intentional

conduct, the Complaint also alleges facts concerning certain contracts under which the Decedents

were performing work for BLACKWATER. More specifically, there are contractual

relationships alleged between three separate companies. One company is a Cyprus Corporation

named ESS Support Services Worldwide, Eucharist Support Services International, LTD.

("ESS"). ESS is a business with two divisions, the most relevant of which provides catering

support services. [*Complaint*: ¶18.] The other division provides design and building services to

U.S. Armed Forces and other U.S. contracting agencies in Iraq and Kuwait. [*Id.*] It is worth

noting that the allegations contained in the Complaint related to ESS's "catering support

services," and not the other division of ESS which provides services to the "U.S. Armed Forces

and other U.S. contracting agencies in Iraq and Kuwait." [*Id.*]

The second company about which there are factual allegations in the Complaint is a

Kuwaiti company named Regency Hotel and Hospital Company ("REGENCY"). [*Complaint*:

¶19.] The third company described in the Complaint is collectively referred to as

"BLACKWATER," which consists of Blackwater Security Consulting, LLC, a Delaware Limited

4

Liability Company, and Blackwater Lodge and Training Center, Inc., a Delaware Corporation. [*Complaint*: ¶¶5-7].

The Complaint specifically alleges that BLACKWATER and REGENCY joined forces to submit a bid to ESS to be "the provider of security services for the food convoys." [*Complaint*: ¶21.] For the purpose of analyzing the instant motion to dismiss for failure to state a claim upon which relief may be granted, these are the relevant facts concerning the contractual arrangements between these three companies. **There are absolutely <u>no</u> allegations contained anywhere in the Complaint that indicate that BLACKWATER was a subcontractor to the U.S. Armed Forces or that the Decedents were working for the U.S. government. Such allegations are exclusively a creation of the Defendants' Motion to Dismiss.** [*See Defendants' Memo of Law*: Page 1].

The factual allegations actually contained in the Complaint give rise to the two state law causes of action for wrongful death and fraud. Essentially, the Defendants made false representations to the Decedents to induce them to enter into their respective Independent Contractor Service Agreements, and travel to Iraq and surrounding countries to provide security services for ESS's catering division. The Decedents entered into their respective Independent Contractor Service Agreements in reliance upon the Defendants' representations that they would be provided with certain protections, tools and information to allow them to perform their jobs.

When the Decedents were hired by BLACKWATER, they were hired as "independent contractors." As alleged in the Complaint, the Decedents were <u>not</u> "employees" of BLACKWATER, but instead were independent contractors: "Helvenston, Teague, Zovko and Batalona, and each of them, were hired by BLACKWATER as independent contractors, and

were at no relevant time employees of BLACKWATER." [*Complaint* ¶31.]

The Decedents were each told by the Defendants that they would be afforded certain protections, tools and information to be able to perform their jobs. [*Complaint*: ¶13.] However, in an effort to cut costs and improve their bottom line, BLACKWATER did not provide the Decedents with these represented protections, tools and information. [*Complaint*: ¶15.] As a result, the Defendants intentionally and knowingly sent the Decedents into known harm's way without the needed and promised protections. [*Complaint*: ¶16.]

In addition, there existed animosity between one of the managing agents of BLACKWATER, Defendant Justin McQuown, and one of the Decedents, Scott Helvenston. [*Complaint*: ¶¶40-42.] This animosity resulted in Justin McQuown pulling Scott Helvenston off of his pre-designated team, assigning him to a new team consisting of individuals he had never before met, and sending him into Baghdad prior to the commencement of the security contract with ESS, at a time when Helvenston was physically ill. [*Complaint*: ¶¶43-49.]

Once in Baghdad, the Decedents were sent on a security mission by another managing agent of BLACKWATER, Defendant Tom Powell, prior to the commencement date of the contract with ESS.  The Decedents were sent out on this security mission, without the required six-man team, without armored vehicles, without a rear gunner in each vehicle, without heavy machine weapons, without a Risk Assessment, without a pre-trip inspection of the route, and without even so much as a map of the area.  With the ESS food convoy in their charge, the Decedents ultimately became lost, and ended up driving through the center of Fallujah.  This was at a time when even the U.S. military would not travel into the heart of Fallujah. [*Complaint*: ¶¶57-60.]

As the Decedents were lost, without the needed protections, tools and information which BLACKWATER initially represented they would have, they were ambushed by insurgents in Fallujah, who were able to literally walk up behind the vehicles and shoot all four men with small arms at close range. [*Complaint*: ¶ 61.]  Their bodies were pulled into the streets, burned and their charred remains were beaten and dismembered.  Ultimately, two of the burnt bodies were strung up from a bridge over the Euphrates River. [*Id.*]

In sum, the factual allegations contained in the Complaint do <u>not</u> allege that the Decedents or BLACKWATER were working subject to a contract with the U.S. Armed Forces. Instead, the Complaint alleges a contractual relationship between ESS (a Cyprus company), REGENCY (a Kuwaiti company), and BLACKWATER (a pair of related Delaware companies). The Complaint further alleges that BLACKWATER engaged in fraudulent conduct by inducing the Decedents to enter into their respective Independent Contractor Service Agreements, and the Defendants knowingly and intentionally caused the wrongful death of the Decedents.  Neither of the causes of action are premised upon negligence or accidental conduct.  Moreover, the Decedents were all hire by BLACKWATER as independent contractors and were never employees.

Based upon the factual allegations contained in the Complaint, the Defense Base Act does not apply to the instant case, the Independent Contractor Service Agreements are unenforceable because they were induced by fraud, and the detailed Complaint meets the pleading specificity requirement of Federal Rules of Civil Procedure 9(b).  Hence, if this court finds federal subject matter jurisdiction, the instant motion should be denied on its merits.

## STATEMENT OF LAW

**A.    This Court Lacks Federal Subject Matter Jurisdiction.**

On January 24, 2005, the Defendants removed the instant action from North Carolina

state court to the instant federal court.  On February 11, 2005, the Plaintiff filed a Motion for

Remand, in that the claims contained in the Complaint do not "arise under" the Constitution,

laws or treaties of the United States, and the Defendants' anticipated defenses, *including federal*

*preemption*, do not give rise to federal subject mater jurisdiction. [*See Motion for Remand*]

"Federal courts are courts of limited jurisdiction.  They possess only that power

authorized by the Constitution and statute, which is not to be expanded by judicial decree."

*Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 376 (1994).

"Accordingly, the propriety of removal depends on whether the case falls within the provisions of

*28 U.S.C. §1331*: 'The district court shall have original jurisdiction of all civil actions arising

under the Constitution, laws, or treaties of the United States.'" *Mulcahey v. Columbia Organic*

*Chemicals Company, Inc.*, 29 F.3d 148, 151 (4th Cir. 1994).

> [Whether] a case is one arising under the Constitution or a law or treaty of the
> United States, in the sense of the jurisdictional statute, . . . must be determined
> from what necessarily appears in the Plaintiff's statement of his own claim in the
> bill or declaration, <u>unaided by anything alleged in anticipation of avoidance of</u>
> <u>defenses which it is thought the Defendant may interpose.</u> [Emphasis added.]
> *Franchise Tax Board of California v. Construction Laborers Vacation*
> *Trust for Southern California*, 43 U.S. 1, 9 (1983).

"Federal pre-emption is ordinarily a federal defense to the Plaintiff's suit.  As a defense, it

does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize

removal to federal court." *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63 (1987).

**"Thus, it is now settled law that a case may *not* be removed to federal court on the basis of**

**a federal defense, <u>including the defense of preemption</u>, even if the defense is anticipated in the Plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.** [Italics in original.] [Emphasis added.]" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987); *see also Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 472 (1998); and *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6 (2003).

In the instant case, the Defendants' Notice of Removal based upon the alleged existence of federal jurisdiction is premised *exclusively* upon their claim that the Plaintiff's action is preempted by federal law (i.e., The Defense Base Act). However, the century-old rule of law concerning removal jurisdiction clearly mandates that federal jurisdiction must be derived from the claims contained in the Plaintiff's Complaint. An anticipated defense to the Plaintiff's Complaint, including a defense involving federal preemption, does not serve as a basis for federal subject matter jurisdiction for the purpose of removal. Thus, this court lacks subject mater jurisdiction over this case to be able to rule on the instant motion to dismiss.

Moreover, there is no "complete preemption" in this matter by the defense of the Defense Base Act or the LHWCA. In *Aaron v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania*, 867 F.2d 1157 (5th Cir. 1989), the Fifth Circuit analyzed a case on point with the instant action. In *Aaron*, the survivors of a longshoreman brought a wrongful death action in state court. The defendants removed the case to federal court, based upon their anticipated defense of the exclusivity provisions of the Longshore and Harbor Workers Compensation Act ("LHWCA"). The Defendants then filed a motion to dismiss. In return, the plaintiffs filed a motion to remand for lack of subject matter jurisdiction. The District Court agreed with the defendants, and dismissed the action. *Id.* at 1159.

9

On appeal, the Fifth Circuit reversed the dismissal. In doing so, it analyzed the case with respect to the well-pleaded complaint rule, which prohibits the removal of an action to federal court based upon an anticipated defense. In addition, the court analyzed the exception to this general rule, which permits removal of an action if federal law completely preempts an entire area of state law, pursuant to the U.S. Supreme Court's decision in *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968). ("*Avco* Exception"). After analyzing *Avco* and its progeny, the court expressly found that there is no complete preemption under the LHWCA, which would permit removal of an action based upon said anticipated defense. *See Id.* at 1164.

Nonetheless, the defendants in *Aaron* argued that the LHWCA expressly denies the cause of action in favor of the Plaintiffs, and thus there exists completely preemption. However, the Fifth Circuit rejected this argument and found that no complete preemption exists.

> However, the "express denial" of a cause of action will always be present where federal law preempts state law. Every time federal preemption is asserted as a defense, and the defendant seeks to use that defense as a basis for removal jurisdiction, the defendant can assert that the "express denial" language of *Franchise Tax* is satisfied. Something more must therefore be required to create removal jurisdiction if the well-pleaded complaint rule is to have continued vitality, a result clearly indicated by the cases. *Id.* at 1165.

Recognizing that there exists complete preemption with respect to ERISA and LMRA, the court found that the LHWCA is not akin to those statutes, and does not create federal subject matter jurisdiction. *See Id.* at 1165. "The argument that the LHWCA is among the few statutes to which the *Avco* exception will apply must therefore fail. [ ] The LHWCA is, in this case, nothing more than a statutory defense to a state-court cause of action -- the classic circumstance of non-removability." *Id.* at 1165-66. Hence, the court reversed the order dismissing the action and remanded it to state court.

10

When the removal of an action to federal court has been challenged and a motion to dismiss is concurrently pending, it is most prudent for the court to resolve the issue of jurisdiction prior to ruling on the motion to dismiss. Such is obviously the case because if the court grants the motion to remand for want of jurisdiction, it should not rule on the pending motion to dismiss. This issue was recently addressed by the U.S. District Court for the Middle District of North Carolina. In *Michael v. Bayer Corporation*, 2003 U.S. Dist. LEXIS 806, the court was faced with the issue of whether removal to its federal court was proper, while a motion to dismiss was pending. The court decided: **"However, before this Court can consider the Defendants' Motions to Dismiss a determination must be made as to whether the court has jurisdiction over this action and, thus, whether removal was proper."** *Id.* at *6.

Finding that the removal was improper, the court remanded the action to the North Carolina state court and ruled: "As such, the Court is without jurisdiction to decide the issues raised by the Defendants' Motions to Dismiss beyond the question of whether the Court has proper jurisdiction over this matter." *Id.* at *12.

In the instant matter, this court is without subject jurisdiction over this action, and thus the case should be remanded to state court, without ruling on the instant Motion to Dismiss.

**B.     Motions to Dismiss under Rule 12(b)(6) are Strongly Disfavored.**

The standard for evaluating a motion to dismiss was articulated by the U.S. Supreme Court in *Conely v. Gibson*, 355 U.S. 41 (1957): "In appraising the sufficiency of the Complaint we follow, of course, the accepted rule that a Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support

of his claim which would entitle him to relief." *Id.* at 46. In expanding upon this rule, the

Supreme Court noted that "the Federal Rules of Civil Procedure do not require a claimant to set

out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a

short and plain statement of the claim' that will give the Defendant fair notice of what the

Plaintiff's claim is and the grounds upon which it rests." *Id.* at 47.

The Fourth Circuit has similarly stated that a motion to dismiss should be denied, unless

there is a <u>certainty</u> that the Plaintiff can in no way prevail. "We have long held that a motion to

dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty

that the Plaintiff would be entitled to no relief under any state of facts which could be proved in

support of its claim." *Rogers v. Jefferson-Pilot Life Insurance Company*, 883 F.2d 324, 325 (4th

Cir. 1989).

"The function of a motion to dismiss for failure to state a claim is to test the legal

sufficiency of the complaint and not the facts that support it." *Neitzeke v. Williams*, 490 U.S.

319, 326-27 (1989). In considering the legal sufficiency of the Complaint, all of the allegations

contained in the Complaint must be deemed true and all reasonable inferences must be viewed in

favor of the Plaintiff:

> [A] *Rule 12 (b)(6)* motion should only be granted if, after accepting all well-
> pleaded allegations in the Plaintiff's Complaint as true and drawing all reasonable
> factual inferences from those facts in the Plaintiff's favor, it appears certain that
> the Plaintiff cannot prove any set of facts in support of his claim entitling him to
> relief. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Courts have traditionally held that, due to the standard of review for a motion to dismiss

for failure to state a claim upon which relief can be granted, said motions are <u>disfavored</u>. *See*

*Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991)

["Because a dismissal under Rule 12(b)(6) is accorded res judicata effect, such dismissals are generally disfavored by the courts."] Recognizing the strong public policy that cases should be decided on their merits and not merely upon their pleadings, the Fifth Circuit has instructed that "final disposition of a civil action on the basis of bare bones pleadings is torturous thing. How a standard so simply expressed, so often repeated, is apparently so often overlooked without even so much as a deferential mention of it is hard to understand." *Arthur H. Richland Co. v. Harper*, 302 F.2d 324, 325 (5th Cir. 1962).

Courts are cautious in dealing with motions to dismiss for failure to state a claim upon which relief can be granted, particularly where to grant the motion would terminate litigation before parties have had their day in court. *See Gaine v. Brotherhood of R.&S.S. Clerks, etc.*, 177 F.Supp. 421, 430 (D. Pa. 1959), *aff'd* 275 F.2d 342 (3rd Cir. 1960). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Desardouin v. United Parcel Service, Inc.*, 285 F.Supp.2d 153, 157 (D.Ct. 2003).

Since a Rule 12(b)(6) motion tests the sufficiency of the allegations contained in the Complaint, which must all be deemed true and in favor of the Plaintiff, <u>a Rule 12(b)(6) motion should not be used to test the applicability of any of the Defendants' defenses</u>. "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, **or the applicability of defenses.**" [Emphasis added.] *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

**C.**    **The Defense Base Act Does Not Apply to the Instant Action**.

Keeping in the forefront of the court's analysis the principle that all of the facts contained within the Plaintiff's Complaint are deemed true, this case simply does not give rise to the application of the Defense Base Act.  First, the Defense Base Act applies to "employees" and not "independent contractors."  Second, the Defense Base Act applies only to six limited categories of employment, none of which encompass the Decedents' work as articulated in the Complaint.  Third, the Defense Base Act and the Longshore and Harbor Workers' Compensation Act apply only to negligent or accidental conduct, and do not apply to the intentional torts alleged in the Plaintiff's Complaint.  As described in further detail below, assuming all of the allegations contained in the Plaintiff's Complaint are true, the Defense Base Act simply does not apply, and thus its exclusivity provision cannot bar the Plaintiff's action.

**1.**    **The Defense Base Act Applies Only to Employees and Not Independent Contractors.**

The Defense Base Act is articulated in 42 U.S.C. § 1651, *et seq.*  More specifically, Section 1651(a) provides, in relevant part: "[T]he Longshoreman's and Harbor Workers' Compensation Act . . . shall apply in respect to the injury or death of any employee engaged in any employment --" within six specific categories of work. [Emphasis added.]  42 U.S.C. §1651(a).  In addition to the plain language of the statute case law across the country discussing the Defense Base Act exclusively applies its provisions to "employees" engaged in the six categories of work described in Section 1651(a).

However, the Decedents in the instant case were not "employees" of BLACKWATER, but instead were independent contractors.  The allegations in the Plaintiff's Complaint, which

14

must be deemed true for the purpose of the instant motion to dismiss, specifically state as

follows: **"Helvenston, Teague, Zovko and Batalona, and each of them, were hired by**

**BLACKWATER as independent contractors, and were at no relevant time employees of**

**BLACKWATER."** [*Complaint* ¶31.] Furthermore, it is alleged that each of them entered into

Independent Contractor Service Agreements.[2] [*Complaint* ¶ 31.]

It has long been held in American jurisprudence that there exists a substantial legal

distinction between employees and independent contractors.  In fact, the Defendants themselves

have cited case law in their Memorandum of Law that draws a distinction between independent

contractors and employees for the purpose of recovering workers compensation benefits. [*See*

*Defendants' Memo of Law*; fn. 2, citing *Williams v. A.R.L., Inc.*, 133 N.C.App. 625, 629 (1999).

Considering that the Defense Base Act applies only to "employees," the Defendants are

attempting to now categorize the Decedents' as employees of BLACKWATER, and not

independent contractors. [*See Defendants' Memo of Law* fn. 2.] However, for the purpose of the

analysis on the instant motion to dismiss, the court need only consider the allegations contained

in the Complaint, when deemed true, indicate that all of the Decedents signed "Independent

Contractor Service Agreements," and that each of them were independent contractors, and were

---

[2] Although the Plaintiff argues that the Court should <u>only</u> consider those facts contained
in the Complaint [*See Subsection C1-2 below*], to the extent the Court considers outside
materials, such as the Independent Contractor Service Agreements submitted by the Defendants,
it is critical to note that BLACKWATER itself definitively claims in those contracts that the
Decedents were independent contracts, and not employees: "Contractor acknowledges that it is
solely an independent contractor.  Nothing in this Agreement shall be deemed to constitute either
BSC, the Contractor or Customer as an agent, representative, partner, or joint venture or
employee of the other party for any purpose. [ ]  Contractor understands that he is not entitled to
any employee benefits from BSC, including workers' compensation benefits, life insurance, long
term disability, health and dental benefits, participation in 401k plan or any other benefits."
[*Independent Contractor Service Agreements*: ¶ 20.15.]

never employees of BLACKWATER. [*Complaint* ¶31.]

Since the Defense Base Act only applies to employees (similar to most state workers'

compensation acts), and since the Decedents were <u>not</u> employees of BLACKWATER, but

instead were independent contractors, the Defense Base Act simply does not apply to the instant

action. Consequently, the Defendants' Motion to Dismiss, based upon the exclusivity provisions

of the Defense Base Act, should be denied.


### 2.    The Decedents' Employment Does Not Fall Into the Categories Covered by the Defense Base Act.

The Defense Base Act applies to any injury or death of an "employee" engaged in six

specific categories of employment. *See* 42 U.S.C. § 1651(a)(1)-(6). Although the work being

performed by the Decedents, as alleged in the Complaint, does not fall within <u>any</u> of these six

categories of employment, the Defendants argue in their Motion to Dismiss that category four

applies. Section 1651(a)(4) relates to employment "under a contract entered into with the United

States or any executive department, independent establishment, or agency thereof (including any

corporate instrumentality of the United States), or any subcontract, or subordinate contract with

respect to such contract, where such contract is to be performed outside the continental United

States . . . ." 42 U.S.C. §1651(a)(4).

This category of employment under the Defense Base Act does not apply to the instant

case, in that, pursuant to the allegations contained in the Complaint, the Decedents were not

engaged in employment under a contract with the United States. The structure of the contracts

articulated in the Complaint, which are deemed to be true, is extremely clear. A Cyprus

Corporation named ESS entered into a contract with a Kuwaiti Corporation named REGENCY.

REGENCY then entered into a contract with BLACKWATER. [*Complaint*: ¶¶18-22.] The services for which BLACKWATER entered into the contract with REGENCY (and on a higher level ESS) were to provide security services "for ESS's catering operations in the Middle East." [*Complaint*: ¶21.]  In turn, BLACKWATER then entered into the Independent Contractor Service Agreements with the four Decedents. [*Complaint*: ¶31.]

Nowhere within the Complaint are there any allegations whatsoever that the Decedents were working pursuant to a contract with the United States.  Even the Defendants themselves cannot cite this court to any such contract with the United States.  The only mention of such a contract with the United States is defense counsel's conjecture in the Memorandum of Law in support of the Motion to Dismiss. [*Defendants' Memo of Law*: Pg. 2.]

However, even this conjecture misinterprets the allegations contained in Paragraph 18 of the Complaint.  Paragraph 18 indicates that ESS is "a business with two divisions: <u>one which provides catering support services</u> and <u>the other which provides design and building services to U.S. Armed Forces and other U.S. contracting agencies in Iraq and Kuwait</u>." [Emphasis added.] [*Complaint* ¶18.] What is misinterpreted by the Defendants is the fact that the Complaint alleges that BLACKWATER and the Decedents entered into a contract to support ESS's "catering services." [*Complaint*: ¶¶21-22.] However, there are <u>no</u> allegations that indicate BLACKWATER entered into a contract to provide security services for ESS's other division, which provides design and building services to the U.S. Armed Forces.

Nonetheless, the Defendants have attempted to categorize the Decedents' employment as one in which they provided security services for the U.S. Armed Forces, and thus *somehow* had entered into an unidentified contract with the United States.  However, this concept is purely a

17

fiction, and found nowhere in the Complaint.

The only other suggestion that the Defendants make in support of their assertion that the Decedents were working for the U.S. Armed Forces is an allegation in their Motion to Dismiss that the "Decedents were on a security mission to transport trucks within Iraq to U.S. Army Camp Ridgeway." [*Defendants' Memo of Law*: Pg. 2] However, simply because the Decedents were attempting to deliver something to a U.S. Army Camp does not mean that they were working subject to a contract with the United States government. By analogy, simply because an individual delivers a package to a U.S. Post Office does not mean the individual is working subject to a contract with the United States government.

In all, this court will be hard-pressed to find the existence of a contract between the Decedents and the United States government, which would bring their scope of employment within category 4 of Section 1651(a). Thus, not only are the Decedents not employees which would subject them to the provisions of the Defense Base Act, but their employment does not fall within any of the six categories articulated therein. Consequently, the Defense Base Act does not apply to the instant action.

### 3.    Defendants' Intentional Conduct Does Not Fall Within the Defense Base Act.

The Complaint in this matter alleges two intentional torts for wrongful death and fraud. The factual allegations that support both of these causes of action are based exclusively upon intentional conduct: "BLACKWATER intentionally and knowingly failed to provide them with the protection, tools and information that it initially represented." [*Complaint*: ¶15.] "BLACKWATER intentionally and knowingly sent Helvenston, Teague, Zovko and Batalona

into known harm's way without the needed and promised protections." [*Complaint*: ¶15.]

BLACKWATER, JUSTIN McQUOWN and TOM POWELL intentionally, deliberately and with

reckless disregard for their health and safety, sent Helvenston, Teague, Zovko and Batalona, and

each of them, into the very high-risk area of Fallujah, without the required [vehicles, weapons,

intelligence and logistics]." [*Complaint*: ¶69.]

However, the Defense Base Act, and by extension the Longshore and Harbor Workers'

Compensation Act ("LHWCA"), does not apply to intentional conduct, but instead applies only

to accidental or negligent conduct (similar to almost all state workers' compensation acts).  In

*Bowen v. Aetna Life and Casualty Company*, 512 So.2d 248 (1987), the Florida Court of Appeals

found that although the Defense Base Act incorporates the Longshore and Harbor Workers

Compensation Act, the exclusivity provision of these Acts did not bar the Plaintiffs causes of

action for intentional torts.  Relying upon a First Circuit federal court case construing the

Longshoreman's Act, the court in *Bowen* provided, in relevant part:

> The Defense Base Act incorporates the Longshoreman's Act *33 U.S.C. §901*, et
> seq.
> * * *
> On facts similar to those in this case, the court held that the exclusivity provision
> of the Longshoreman and Harbor Worker's Compensation Act is limited to
> accidental injury arising out of and in the course of employment.
> * * *
> A growing number of courts permit workers to penetrate the exclusive remedy
> shield in employment-related injuries where the basis of the action against the
> employer's insurer is an intentional malicious tort. [Citing a long line of federal
> and state cases.] *Id.* at 249-50.

Even the cases cited by the Defendants in support of their motion to dismiss clearly state

that, while negligent conduct falls within the exclusivity provision of the LHWCA, intentional

conduct does not. [*See Defendants' Memo of Law*: Pgs 7-8.] Therefore, in addition to the

Decedents not being "employees" under the Defense Base Act, and considering that the

Decedents were not engaged in the type of employment covered by the Defense Base Act, the

type of conduct alleged in the Complaint [intentional torts] falls outside the exclusivity

provisions of the Defense Base Act and by extension the Longshore and Harbor Workers'

Compensation Act. Consequently, the Defense Base Act and the LHWCA do not apply to this

case, and Defendants' Motion to Dismiss premised upon those acts must be denied.

**C.     The Decedents' Independent Contractor Service Agreements
         Were Induced by Fraud and Are Unenforceable.**

The second basis upon which the Defendants have moved to dismiss the Plaintiff's action

is premised upon the releases, waivers and covenants contained in the Decedents' Independent

Contractor Service Agreements. Ironically, while the Defendants do not want to rely upon the

language in these agreements, which state that the Decedents were independent contractors, the

Defendants attempt to rely upon the language in the agreements which refer to the releases,

waivers and covenants not to sue. Nonetheless, the second cause of action in the Complaint is a

cause of action for rescission of these contracts, in that they were induced by fraud.

For the purpose of the instant motion to dismiss, all of the allegations contained in the

Complaint are deemed true. The Plaintiff has alleged facts that all of the Independent Contractor

Service Agreements were induced by fraud. As such, the Plaintiff is entitled to have these

contracts rescinded. To the extent that the contracts are rescinded, the provisions therein are

unenforceable. More specifically, the releases, waivers and covenants not to sue, upon which the

Defendants' rely, are unenforceable and cannot form a basis for the instant Motion to Dismiss.

Accepting as true the allegations in the Complaint that these contracts were entered into on the

basis of fraud, the contracts are unenforceable, and thus cannot serve as a ground for the

Defendants' Motion to Dismiss.  Consequently, the Motion to Dismiss should be denied.


### 1.    Only Matters Contained in the Complaint Should Be Considered In Connection with the Motion to Dismiss.

"Generally, when deciding a 12(b)(6) motion, courts may not consider documents that the

Plaintiffs have neither attached to nor incorporated by reference in the Complaint." *R.H. Damon*

*& Co., Inc. v Softkey Software Products, Inc.*, 811 F.Supp. 986, 989 (S.D.N.Y. 1993).  "It is

elementary that the district judge, in considering the motions to dismiss the amended complaint,

had no right to consider any facts except those well-pleaded in the amended complaint." *Grand*

*Opera Co. v. Twentieth Century-Fox Film Corp.*, 235 F.2d 303, 307 (7th Cir. 1956).

In the instant case, the Plaintiff has not attached any documents, evidence, or contracts to

the Complaint.  Moreover, the Plaintiff has not expressly incorporated by reference any

documents or contracts into the Complaint.  This is contrary to the Defendants' position in their

Motion to Dismiss, wherein they claim that since the Independent Contractor Service

Agreements were *mentioned* in the Complaint, they must have been incorporated in by reference.

[*Defendants' Memo of Law*: fn 9].  This is simply not true, and Defendants cite no authority for

their proposition that the mention of a contract within a complaint automatically incorporates the

entire contract into the complaint.  In fact, the law is contrary to Defendants' *ipse dixit* logic.

> "A document will not be considered incorporated by reference if only limited
> quotations are used in the Complaint.  In *Berk*, the court held that documents
> attached to Defendant's motion to dismiss were not incorporated by reference
> where the complaint just summarizes the contents of the documents.  In this
> instance, Plaintiff summarized representations made in the documents and only
> makes use of one short quotation from any of the documents attached to the
> defendant's motion.  Thus, the court does not find that the defendant's documents

were incorporated by reference.  Therefore, the court will exercise its discretion and not review the documents offered by the Defendant in ruling on its motion to dismiss." *Friedman v. Landsdale Parking Authority*, 151 F.R.D. 42, 44 (E.D. Pa. 1993); *see also Wood v. Brosse U.S.A., Inc.* 788 F.Supp. 772, 775 (S.D.N.Y. 1992) [Court declined to consider an agreement as incorporated into the complaint where plaintiff did not rely upon it in drafting the complaint.]

Nonetheless, in an effort to rely on some of the provisions in the Independent Contractor Service Agreements (and admittedly not others), the Defendants have attached as exhibits to their Memorandum of Law four Independent Contractor Service Agreements.  However, the Plaintiff had not seen three of the four of these contracts prior to the service of the Defendants' Motion to Dismiss, and did not rely upon any of these three in the drafting of the Complaint.

Furthermore, there is no evidence currently before this court as to the authenticity of these documents.  Considering that the Independent Contractor Service Agreements are not incorporated by reference into the Complaint, were not attached to the Complaint, and since there is no evidence of the authenticity of these documents, the Plaintiff respectfully requests that this court does not consider these matters outside of the pleadings.  Consequently, only the factual allegations contained in the Complaint should be considered in connection with the Motion to Dismiss, which, when deemed true, establish that the contracts were entered into as a result of fraud, and thus are unenforceable and cannot form the basis of the Defendants' Motion to Dismiss.

2.    **The Exception to the General Rule Should Not Be Applied in This Case.**

There is an exception to the general rule that matters outside the complaint should not be considered in connection with a motion to dismiss.  The exception provides that when the court

22

considers matters outside of the pleadings in connection with a motion to dismiss, the motion

must be converted into a motion for summary judgment, and handled pursuant to Federal Rules

of Civil Procedure 56.  This exception is articulated in Rule 12(b), which provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the
> pleading to state a claim upon which relief can be granted, matters outside the
> pleading are presented to and not excluded by the court, the motion should be
> treated as one for summary judgment and disposed of as provided in Rule 56, and
> all parties shall be given reasonable opportunity to present all material made
> pertinent to such a motion by Rule 56. Federal Rules of Civil Procedure 12(b).

However, the court has complete discretion whether to consider matters outside the

pleadings when reviewing a motion to dismiss.  "A court has complete discretion to determine

whether or not to accept any material beyond the pleadings that is offered in conjunction with a

Defendant's Rule 12(b)(6) motion." *Friedman v. Landsdale Parking Authority*, 151 F.R.D. 42,

43 (E.D. Pa. 1993).  "Rule 12(b) gives district courts two options when matters outside the

pleadings are presented in response to a 12(b)(6) motion: The court may exclude the additional

matter and decide the motion on the complaint alone or it may convert the motion into one for

summary judgment under *Fed. R. Civ. P. 56* and afford all parties the opportunity to present

supporting material." *Fonte v. Board of Managers of Continental Towers Condominium*, 848

F.2d 24, 25 (2nd Cir. 1988).

It is respectfully submitted that in the context of the instant action, the court should

exercise its discretion and exclude from its consideration the four Independent Contractor

Service Agreements attached by the Defendants to their motion to dismiss, but not incorporated

into the Complaint.  In further support for this court exercising its discretion to exclude from its

consideration the Independent Contractor Service Agreements, a district court recently held that

if the validity of an outside document submitted by a Defendant in conjunction with a motion to

dismiss is in question, the court should decline to consider the contested document in connection with the motion to dismiss.

> Plaintiff disputes the validity of the Agreement. Given the opportunity for more factual development, he expects to be able to show that he was misled about the contents of the Release and due to his mental health problems, did not have the mental capacity to enter into a contract at the time. Because Defendant supplied the documents and Plaintiff challenges their validity, the court declines to incorporate the Agreement into the Amended Complaint for the purposes of the Motion to Dismiss. *Pouliot v. Town of Fairfield,* 184 F. Supp. 2d 38, 47 (D. Me. 2002).

In the instant case, the Plaintiff has expressly challenged the validity of the Independent Contractor Services Agreements by its Second Cause of Action for fraud in the inducement of said contracts. Considering that the validity of the contracts is a disputed issue in this case, and due to the lack of authenticity of said documents, this court should exercise its discretion in excluding from its consideration the Independent Contract Service Agreements, but instead decide the Motion to Dismiss based upon the allegations contained in the Complaint.

In the event that this court considers the Independent Contractor Service Agreements in connection with the instant Motion to Dismiss, the instant motion must be converted into a motion for summary judgment and handled pursuant to Rule 56. "As a general rule, if materials outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." *Carter v. Baltimore County*, 2002 U.S. App. LEXIS 14452, *4 (4th Cir. 2002).

However, simply by the Defendants having filed a Motion to Dismiss and attaching documents outside the pleadings, the instant Motion to Dismiss is not automatically converted into a Motion for Summary Judgment. Instead, this court must decide whether to consider said

evidence and, if so, issue an order converting the motion as such. *Finley Lines Joint Protective Board Unit 200 v. Norfolk Southern Corporation*, 109 F.3d 993, 995-96 (4th Cir. 1997); and *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991). Furthermore, since a motion for summary judgment pursuant to Rule 56 permits the parties to present evidence to establish controverted material facts, the parties are necessarily permitted the opportunity to conduct discovery. *See Gay v. Wall*, 761 F.2d 175, 178 (4th Cir. 1995) ("Because Gay was not afforded an opportunity for reasonable discovery, the district court's treatment of the motion to dismiss as a motion for summary judgment was an abuse of discretion.").

To the extent that this court considers matters outside the pleadings in connection with the Motion to Dismiss, it will necessarily need to enter an order converting the motion into a motion for summary judgment and permit the parties to conduct discovery. As a practical matter, this process would be less efficient than simply denying the Motion to Dismiss and permitting the Defendants to later move for summary judgment.

In all, the Plaintiff respectfully requests that, if the court considers the Independent Contractor Service Agreements submitted by the Defendants in connection with their Motion to Dismiss, the court enter an order converting the instant motion to a motion to summary judgment, and permit the parties to conduct discovery. However, it is reasonably anticipated that there will exist controverted material facts in this case concerning whether the subject agreements were induced by fraud, which will nonetheless ultimately prohibit the granting of a motion for summary judgment.

**D.    Plaintiff's Fraud Cause of Action is Plead With Sufficient Particularity.**

Defendants' third basis supporting their Motion to Dismiss is premised upon the claim that the Plaintiff's fraud cause of action is not plead with sufficient particularity pursuant to Federal Rules of Civil Procedure 9(b). Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

The Complaint contains 55 paragraphs of detailed factual allegations supporting the Plaintiff's two causes of action. In the Complaint, the Plaintiff twice states with particularity the facts concerning the fraudulent misrepresentations by the Defendants. [*Complaint*: ¶¶13-16 and 85-86.] The Plaintiff has alleged that BLACKWATER made false representations as to material facts [*Complaint*: ¶¶83-86]; that BLACKWATER knew these representations were false, or made them recklessly without any knowledge of their truth or falsity, as a positive assertion [*Complaint*: ¶87], that BLACKWATER made these representations with the intent to induce the Decedents to rely upon them [*Complaint*: ¶88], that the Decedents in fact reasonably relied on these misrepresentations of material facts [*Complaint*: ¶89]; and that the Plaintiff suffered damages as a proximate cause of BLACKWATER's fraudulent misrepresentations [*Complaint*: ¶91]. As such, the Plaintiff has alleged all of the necessary elements to state a cause of action for fraud. *See Howell v. Waters*, 82 N.C.App. 481, 484 (1986).

Nonetheless, the Defendants complain that these detailed factual allegations of fraud do not meet the particularity requirement of Rule 9(b). In doing so, the Defendants' claim that the Complaint lacks particularity with respect to the time and place of the circumstances surrounding these fraudulent misrepresentations, and the identity of the person(s) making them. [*Defendants'*

26

*Memo of Law*: pgs 12-13].  However, the Plaintiff's Complaint <u>does</u> in fact allege this level of particularity with respect to its fraud cause of action.

First, with respect to the time of the alleged misrepresentations, the Complaint clearly alleges the time period in which these fraudulent misrepresentations were made.  Paragraph 30 of the Complaint indicates that the misrepresentations were made prior to the Decedents entering into their Independent Contractor Service Agreements. [*Complaint* ¶ 30.]  Paragraph 31 of the Complaint indicates that the Decedents entered into their Independent Contractor Service Agreements on March 25, 2004. [*Complaint* ¶ 31.]  As such, the Complaint has placed the Defendants on notice of the relevant time period in which the fraudulent misrepresentations were made.

Second, the Plaintiff complains that the identify of the person(s) making the misrepresentations has not been alleged in the Complaint.  However, Paragraph 85 of the Complaint specifically identifies Brian Berrey and Mike Rush, as the Directors of BLACKWATER, who made the fraudulent misrepresentations, as well as a detailed description of the misrepresentations made by them. [*Complaint*: ¶85.]

Therefore, considering the detailed description of the contents of the fraudulent misrepresentations, as well as the time period and the identity of the individuals making the misrepresentations, the Plaintiff's Complaint pleads its second cause of action for fraud with sufficient particularity pursuant to Rule 9(b).

The ***only*** factor that the Defendants complain of which may not be included in the Complaint is with respect to the "place" of the misrepresentations.  However, while courts have held that time, place, contents and identity of speaker are elements *more than* sufficient to meet

the particularity requirement of Rule 9(b), they are not all necessarily needed or required to meet the Rule 9(b) pleading standard. In fact, Rule 9(b) itself does <u>not</u> require that time, place, content and identity of speaker be alleged to state a cause of action for fraud. Instead, Rule 9(b) only requires that the cause of action be stated "with particularity." Federal Rules of Civil Procedure 9(b). "[A]ll that is required is to put the Defendant on sufficient notice of the claims to which a response is necessary. If the Defendant can prepare an adequate answer to the complaint, the requirements of Rule 9(b) have been met." *Republic Envtl. Sys. (PA) v. Reichhold Chems.*, 154 F.R.D. 130, 132 (D.Pa. 1994). The requirement of pleading fraud with particularity pursuant to Rule 9(b) was artfully articulated by the Third Circuit in *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.* 742 F.2d 786, 791 (3rd Cir. 1984).

> We approach this question mindful of our recent admonition that in applying Rule 9(b), focusing exclusively on its particularity language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules. We conclude that the district court subjected [plaintiff's] allegations of fraud to too strict a scrutiny. Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. <u>It is certainly true that the allegations of "date, place or time" fulfill these functions but nothing in the rule requires them.</u> Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud. [Emphasis added.] *Id.* at 791.

In the instant case, the Plaintiff's Complaint alleges in great detail the contents of the fraudulent misrepresentations, the identity of the speakers, and the time period in which they were made. To the extent the Complaint does not allege a particular location, the Defendants have nonetheless been placed on notice of the circumstances surrounding their fraudulent misrepresentations and are clearly able to fashion a response thereto. Also, it is worth noting that the individuals who would ordinarily be able to supply any further particularity with respect to

the fraudulent conduct of the Defendants (which is frankly unnecessary at this pleading stage),

are all deceased. Consequently, the Defendants should not benefit from the deaths of these

individuals, by claiming that further particularity concerning their fraudulent conduct is needed.

Finally, Defendants complain that fraud cannot be alleged against groups of defendants.

However, the cases cited by the defendants refer to different individuals and unrelated corporate

entities. In the instant case, Blackwater Security Consulting, LLC, is a wholly-owned subsidiary

of Blackwater Lodge and Training Center, Inc., who is its sole member/manager.[3]  As such,

considering that one of the BLACKWATER entities is a wholly-owned subsidiary of the other, it

is entirely proper for the allegations of fraud to be alleged against both of these BLACKWATER

Defendants.

Moreover, the allegations in the Complaint allege that the identity of the individuals

making the fraudulent misrepresentations were directors of <u>both</u> BLACKWATER entities.

(*Complaint*: ¶¶ 85 and 7].  Therefore, accepting these allegations as true, to the extent that the

fraudulent misrepresentations were made by Brian Berrey and Mike Rush, in their capacity as

directors of both BLACKWATER entities, the second cause of action for fraud is sufficiently

alleged against both BLACKWATER Defendants.

In sum, the Complaint sets forth 55 paragraphs of detailed factual allegations, specifically

outlining the fraudulent conduct of the Defendants. Not only is the content of the fraudulent

---

[3] Pursuant to Federal Rules Evidence 201, the Plaintiff respectfully requests that this court take judicial notice of the State of North Carolina, Department of the Secretary of State Application for Certificate of Authority for Limited Liability Company, a true and correct copy of which is attached hereto as Exhibit "A", which indicates that Blackwater Security Consulting, LLC, is wholly-owned and managed by Blackwater Lodge and Training Center, Inc. [*See Affidavit of Marc P. Miles*]

misrepresentations sufficiently articulated, but the time period and the identity of the individuals making those representations has also been alleged. In addition, all other elements of a cause of action for fraud have been plead. Consequently, it is respectfully requested that the court deny the Defendants' Motion to Dismiss the second cause of action under Rule 9(b).

## CONCLUSION

Based upon the foregoing, it is respectfully submitted that this court lacks subject matter jurisdiction over this case and must remand it to state court without consideration of the instant motion to dismiss. Alternately, the motion to dismiss should be denied because: (1) the Defense Base Act does not apply to this action; (2) the releases, waivers and covenants in the Independent Contractor Service Agreements are unenforceable because they were induced by fraud; and (3) the Complaint pleads the circumstances surrounding the Defendants' fraud with sufficient particularity to permit them to fashion a response.

This _21st_ day of February 2005.

CALLAHAN & BLAINE, APLC

By:

DANIEL J. CALLAHAN (Cal. Bar No. 91490)
BRIAN J. McCORMACK (Cal. Bar No. 167547)
MARC P. MILES (Cal. Bar No. 197741)
3 Hutton Centre Drive, Suite 900
Santa Ana, California 92707
(714) 241-4444
Fax: (714) 241-4445
Attorneys for Plaintiff
RICHARD P. NORDAN, as the Ancillary
Administrator of the separate Estates of STEPHEN
S. HELVENSTON, MIKE R. TEAGUE, JERKO
GERALD ZOVKO and WESLEY J.K.
BATALONA

**KIRBY & HOLT, LLP**

By: _____

DAVID F. KIRBY (N.C. Bar No. 7841)
WILLIAM B. BYSTRYNSKI (N.C. Bar No. 20883)
P.O. Box 31665
Raleigh, North Carolina 27622
(919) 881-2111
Fax: (919) 781-8630
Attorneys for Plaintiff
RICHARD P. NORDAN, as the Ancillary
Administrator of the separate Estates of STEPHEN
S. HELVENSTON, MIKE R. TEAGUE, JERKO
GERALD ZOVKO and WESLEY J.K.
BATALONA

G:\2525\2525-02\Pleadings\Federal\Oppo Mtn to Dismiss BW.wpd

SOSID: 692831
Date Filed: 9/29/2003 3:41:00 PM
Elaine F. Marshall
North Carolina Secretary of State
C200326800054

**State of North Carolina
Department of the Secretary of State**

## APPLICATION FOR CERTIFICATE OF AUTHORITY
## FOR LIMITED LIABILITY COMPANY

Pursuant to §57C-7-04 of the General Statutes of North Carolina, the undersigned limited liability company hereby applies for a Certificate of Authority to transact business in the State of North Carolina, and for that purpose submits the following:

1. The name of the limited liability company is __Blackwater Security Consulting LLC__ ;

   and if the limited liability company name is unavailable for use in the State of North Carolina, the name the limited

   liability company wishes to use is _____

2. The state or country under whose laws the limited liability company was formed is: __Delaware__

3. The date of formation was __01/28/02__ ; its period of duration is: __perpetual__

4. Principal office information:  (*Select either a or b.*)

   a. [X] The limited liability company has a principal office.

      The street address and county of the principal office of the limited liability company is:

      Number and Street __850 Puddin Ridge Road__
      City, State, Zip Code __Moyock, NC  27958__          County __CAMDEN__

      The mailing address, *if different from the street address*, of the principal office of the corporation is:
      _____

   b. [ ] The limited liability company does not have a principal office.

5. The street address and county of the registered office in the State of North Carolina is:

   Number and Street __850 Puddin Ridge Road__

   City, State, Zip Code __Moyock, NC  27958__          County __CAMDEN__

6. The mailing address, *if different from the street address,* of the registered office in the State of North Carolina is:
   _____

7. The name of the registered agent in the State of North Carolina is: __Gary Jackson__

CORPORATIONS DIVISION          P. O. BOX 29622          RALEIGH, NC 27626-0622

*(Revised January 2002)*                                    *(Form L-09)*

**APPLICATION FOR CERTIFICATE OF AUTHORITY**
Page 2

8. The names, titles, and usual business addresses of the current managers of the limited liability company are:
   (use attachment if necessary)

| *Name* | *Business Address* |
|---|---|
| Blackwater Lodge and Training Center, Inc. (sole Member & Manager) | 850 Puddin Ridge Rd; Moyock NC 27958 |

9. Attached is a certificate of existence (or document of similar import), duly authenticated by the secretary of state or other official having custody of limited liability company records in the state or country of formation. **The Certificate of Existence must be less than six months old. A photocopy of the certification cannot be accepted.**

10. If the limited liability company is required to use a fictitious name in order to transact business in this State, a copy of the resolution of its managers adopting the fictitious name is attached.

11. This application will be effective upon filing, unless a delayed date and/or time is specified: _____

This the 17th day of September, 2003

Blackwater Security Consulting LLC
(by its sole member/mgr. Blackwater Lodge & Training Center, Inc.)
*Name of Limited Liability Company*

_____
*Signature of Manager*

Steven F. Capace (secretary of Manager)
*Type or Print Name*

Notes:
1. **Filing fee is $250.** This document must be filed with the Secretary of State.

CORPORATIONS DIVISION          P. O. BOX 29622          RALEIGH, NC 27626-0622

*(Revised January 2002)*                                          *(Form L-09)*

# Delaware

PAGE   1

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "BLACKWATER SECURITY CONSULTING LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE THIRD DAY OF SEPTEMBER, A.D. 2003.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE BEEN PAID TO DATE.



3482975   8300

030569264

Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 2613700

DATE: 09-03-03

## CERTIFICATE OF SERVICE

    This is to certify that the undersigned has this day served the foregoing **Plaintiff's Memorandum of Law in Opposition to the Blackwater Defendants' Motion to Dismiss** in the above-entitled action on all of parties to this cause by depositing a copy, postage prepaid, in the United States Mail, addressed as follows:

Fred F. Fielding
Margaret A. Ryan
*Attorneys for Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc.*
Wiley Rein & Fielding LLP
1776 K Street, NW
Washington, DC  20006

Kirk G. Warner
Mark A. Ash
*Attorneys for Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc.*
Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP
P. O. Box 2611
Raleigh, NC  27602

Ralph J. Caccia
William C. Crenshaw
Don R. Berthiaume
*Attorneys for Justin L. McQuown*
Powell Goldstein, LLP
901 New York Avenue, NW, 3rd Floor
Washington, DC  20001

Patricia L. Holland
Rachel Esposito
*Attorneys for Justin L. McQuown*
Cranfill, Sumner & Hartzog, L.L.P.
P. O. Box 27808
Raleigh, NC  27611-7808

This is 22nd day of February, 2005.

William B. Bystrynski
Kirby & Holt, L.L.P.