## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
## NO. 5:05-CV-48 FL (1)



| | |
|---|---|
| RICHARD P. NORDAN, as Ancillary Administrator for the separate Estates of STEPHEN S. HELVENSTON, MIKE R. TEAGUE, JERKO GERALD ZOVKO and WESLEY J.K. BATALONA, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited Liability Company; BLACKWATER LODGE AND TRAINING CENTER, INC., a Delaware Corporation, JUSTIN L. MCQUOWN, an individual; and THOMAS POWELL, an individual, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT JUSTIN L. McQUOWN'S MOTION TO DISMISS**

**COMES NOW** the Plaintiff in the above-entitled action, and hereby submits the

following response to Defendant Justin L. McQuown's Motion to Dismiss, filed pursuant to

Federal Rules of Civil Procedure Rules 12(b)(6).

### INTRODUCTION

The Plaintiff in this case has brought two state court causes of action for Wrongful Death

and Fraud on behalf of the estates of four individuals killed in Fallujah, Iraq, on March 31, 2004.

The Defendants improperly removed this case to federal court, under the premise that there exists

1

Dockets.Justia.com

federal subject matter jurisdiction based upon their anticipated defenses.

Defendant Justin L. McQuown filed a Motion to Dismiss, claiming that the Complaint fails to state a claim upon which relief may be granted, pursuant to Federal Rules of Civil Procedure 12(b)(6), on the sole ground that Section 33(I) of the Longshore and Harbor Workers' Compensation Act [33 U.S.C. § 933(I)] affords him immunity from suit for his intentional misconduct which caused the deaths of Scott S. Helvenston, Mike R. Teague, Jerko Geraldo Zovko and Wesley J.K. Batalona ("Decedents"). In support thereof, Defendant McQuown attempts to incorporate into his opposition, the entire opposition filed by the BLACKWATER Defendants relating to the Defense Base Act. Plaintiff respectfully submits that such incorporation in not proper, and hereby objects to this Defendant's attempted incorporation.

Defendant McQuown's Motion to Dismiss must be denied for the following reasons:

1.    This court lacks federal subject matter jurisdiction over this case, in that none of the claims contained in the Plaintiff's Complaint "arise under" the Constitution, laws or treaties of the United States, and the Defendants' anticipated defenses cannot form the basis of federal subject matter jurisdiction.[1]

2.    The Defense Base Act does not apply to this action for several reasons.

      a.    The Defense Base Act only applies to "employees," and does not apply to independent contractors, such as the Decedents in this case.

---

[1] Plaintiff filed a Motion for Remand on February 11, 2005, which should be decided prior to ruling on the instant Motion to Dismiss. *See Michael v. Bayer Corporation*, 203 U.S. Dist. LEXIS 860, *6 ("However, before this Court can consider Defendants' Motions to Dismiss a determination must be made as to whether the court has jurisdiction over this action and, thus, whether removal was proper.").

b. The Defense Base Act only applies to six specific categories of work, none of which the Decedents were engaged in at the time of their deaths.

c. The Defense Base Act, and its extension of the Longshore and Harbor Workers Compensation Act, only applies to accidental or negligent conduct, and does not apply to the intentional conduct alleged in the Complaint.

In all, this court lacks federal subject matter jurisdiction over the case, and should decline to rule on this Motion to Dismiss, but instead should remand the matter back to state court, pursuant to the Plaintiff's pending Motion for Remand, filed on February 11, 2005. Alternatively, the motion to dismiss should be denied for the numerous reasons set forth herein.

## STATEMENT OF FACTS

On January 5, 2005, Plaintiff Richard P. Nordan, as Ancillary Administrator for the separate Estates of Scott S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley J.K. Batalona, filed a Complaint in North Carolina Superior Court, Wake County, alleging a state court causes of action for wrongful death against all defendants. The Complaint alleges a very detailed set of facts regarding Defendant McQuown's intentional conduct in causing the deaths of the Decedents.

In addition to the multitude of facts concerning the Defendant's wrongful, intentional conduct, the Complaint also alleges facts concerning certain contracts under which the Decedents were performing work for BLACKWATER. More specifically, there are contractual relationships alleged between three separate companies. One company is a Cyprus Corporation

named ESS Support Services Worldwide, Eucharist Support Services International, LTD. ("ESS"). ESS is a business with two divisions, the most relevant of which provides catering support services. [*Complaint*: ¶18.] The other division provides design and building services to U.S. Armed Forces and other U.S. contracting agencies in Iraq and Kuwait. [*Id.*] It is worth noting that the allegations contained in the Complaint related to ESS's "catering support services," and <u>not</u> the other division of ESS which provides services to the "U.S. Armed Forces and other U.S. contracting agencies in Iraq and Kuwait." [*Id.*]

The second company about which there are factual allegations in the Complaint is a Kuwaiti company named Regency Hotel and Hospital Company ("REGENCY"). [*Complaint*: ¶19.] The third company described in the Complaint is collectively referred to as "BLACKWATER," which consists of Blackwater Security Consulting, LLC, a Delaware Limited Liability Company, and Blackwater Lodge and Training Center, Inc., a Delaware Corporation. [*Complaint*: ¶¶5-7].

The Complaint specifically alleges that BLACKWATER and REGENCY joined forces to submit a bid to ESS to be "the provider of security services for the food convoys." [*Complaint*: ¶21.] For the purpose of analyzing the instant motion to dismiss for failure to state a claim upon which relief may be granted, these are the relevant facts concerning the contractual arrangements between these three companies. **There are absolutely <u>no</u> allegations contained anywhere in the Complaint that indicate that BLACKWATER was a subcontractor to the U.S. Armed Forces or that the Decedents were working for the U.S. government. Such allegations are exclusively a creation of the Defendants' Motion to Dismiss.** [*See Defendants' Memo of Law*: Page 1].

When the Decedents were hired by BLACKWATER, they were hired as "independent contractors." As alleged in the Complaint, the Decedents were not "employees" of BLACKWATER, but instead were independent contractors: "Helvenston, Teague, Zovko and Batalona, and each of them, were hired by BLACKWATER as independent contractors, and were at no relevant time employees of BLACKWATER." [*Complaint* ¶31.]

The factual allegations actually contained in the Complaint give rise to a state law causes of action for wrongful death Defendant McQuown. Prior to the commencement of the ESS contract, Defendant McQuown made hasty preparations to become operational as the security detail in advance of the April 2, 2004 start date, while at the same time intentionally refusing to allow the security contractors that had arrived in Kuwait to learn the routes from Control Risk Group ("CRG"). In doing so, he jeopardized the training, intelligence and protections needed for Decedents to perform their jobs. [*Complaint*: ¶¶ 34 and 37.]

The contractors never had an opportunity to test, fire or sight their weapons before their security details. Defendant McQuown told them that there was no time for them to be able to shoot their weapons to determine their accuracy and make necessary adjustments. [*Complaint*: ¶ 39.]

Defendant McQuown harbored extreme animosity toward Scott Helvenston relating to Helvenston's superior credentials, abilities, training, education, experience and knowledge. This animosity dated back to the training program at BLACKWATER's facility in North Carolina, prior to their deployment under the ESS project. [*Complaint*: ¶¶ 40-41.] When Defendant McQuown was promoted to the Program Manager of the ESS project, he found himself in a position to act on his animosity toward Scott Helvenston. [*Complaint*: ¶ 42.]

When Helvenston originally arrived in Kuwait on or about March 18, 2004, he was placed on a six (6) man security detail team. On or about March 27, 2004, Helvenston and his team were advised that they would be leaving in two days for Baghdad to start their first mission. However, on March 28, 2004, at approximately 10:00 p.m. that evening, while Helvenston and other teammates were at dinner in a local restaurant, Defendant McQuown called Helvenston and informed him that he needed to pack up immediately and that he would be leaving at 5:00 a.m. the next morning on a security mission to Baghdad with a different team, with which he had no prior experience or training. [*Complaint*: ¶ 43.]

At that time, Helvenston was feeling physically ill and informed Defendant McQuown that he was not in a condition to be able to leave early the following morning. Helvenston discussed the situation with his teammates at dinner, and another Blackwater contractor, Chris Wyse, who had been operating in the Middle East for some time, offered to take Helvenston's place on the mission the next morning. [*Complaint*: ¶ 44.]

Helvenston and his teammates then returned to their rooms as Helvenston was feeling physically ill. Shortly thereafter, Defendant McQuown burst into Helvenston's bedroom and aggressively approached Helvenston while he was lying in his bed. While it appeared that Defendant McQuown was going to physically attack Helvenston, he did not, but instead screamed at and berated him—calling Helvenston a "coward" and other demeaning and derogatory names. Defendant McQuown then threatened to fire Helvenston if he did not leave early the next morning with the new team. [*Complaint*: ¶ 45.]

Helvenston reiterated that he was physically ill and was simply not able to leave on his first mission into Iraq in his present condition. At that time, yet another Blackwater contractor

6

offered to replace Helvenston in the following day's mission. However, due to Defendant

McQuown's animosity toward Helvenston, he refused to replace him with any other contractor,

despite these two willing offers. [*Complaint*: ¶ 46.]

Eventually, Helvenston was forced to defend himself as Defendant McQuown became

more hostile and combatant toward him, which culminated in Helvenston chasing Defendant

McQuown out of his bedroom. As Defendant McQuown was leaving, he told Helvenston that he

was fired. [*Complaint*: ¶ 47.]

Shortly thereafter, Defendant McQuown returned to Helvenston's bedroom and

confiscated his weapons. At that time, Defendant McQuown also told Helvenston that he would

still be leaving at 5:00 a.m. the following morning with a new team to go to Baghdad.

Helvenston had never met any of these team members, did not know where he was going, was

physically ill and tired, and did not have his bags prepared to be leaving early the following

morning. It was virtually unheard of to take a single person, like Scott Helvenston, and place

him on a different group with whom he had never trained or even met. [*Complaint*: ¶ 48.]

In Bagdad, Defendant Tom Powell had six (6) Blackwater contractors to perform the

security detail which was required by ESS. However, at the direction of Defendant McQuown,

Defendant Powell sent only four contractors on the security detail, in direct violation of all of

BLACKWATER's policies and agreements. Those four security contractors were Scott

Helvenston, Mike Teague, Jerry Zovko and Wesley Batalona. The other two contractors were

kept behind at the team house to perform menial, clerical work. [*Complaint*: ¶ 51.]

Defendant McQuown knew that sending Scott Helvenston and the three other team

members out on a mission into Fallujah in this condition—without a six-member team, without

armored vehicles, and without directions or maps—could result in death to the entire team. [*Complaint*: ¶ 56.]

On March 30, 2004, Defendant McQuown sent this team out, without the required six-members, without armored vehicles and without even a map for directions, to escort three ESS flatbed trucks from the City of Taji to a U.S. Army base in Iraq, commonly referred to as Camp Ridgeway. Because this team was not given the time to properly prepare, was not able to plot out the route and destination and was denied the opportunity to even see maps of the area, they became lost during their transport of these ESS trucks. [*Complaint*: ¶ 57.]

As the Decedents were lost, they were ambushed by insurgents in Fallujah, who were able to literally walk up behind the vehicles and shoot all four men with small arms at close range. [*Complaint*: ¶ 61.] Their bodies were pulled into the streets, burned and their charred remains were beaten and dismembered. Ultimately, two of the burnt bodies were strung up from a bridge over the Euphrates River. [*Id.*]

In sum, the factual allegations contained in the Complaint do <u>not</u> allege that the Decedents were working subject to a contract with the U.S. Armed Forces. Instead, the Complaint alleges a contractual relationship between ESS (a Cyprus company), REGENCY (a Kuwaiti company), and BLACKWATER (a pair of related Delaware companies). The Decedents were all hire by BLACKWATER as independent contractors and were never employees. The Complaint further alleges that Defendant McQuown engaged in intentional conduct which caused the death of the Decedents. The First Cause of Action against Defendant McQuown for Wrongful Death is not premised upon negligence or accidental conduct.

Based upon the factual allegations contained in the Complaint, the Defense Base Act does not apply to the instant case, and Defendant McQuown is not immune from liability under the Longshore and Harbor Workers Compensation Act. Hence, if this court finds federal subject matter jurisdiction, the instant motion should be denied on its merits.

## STATEMENT OF LAW

### A.    This Court Lacks Federal Subject Matter Jurisdiction.

On January 24, 2005, the Defendants removed the instant action from North Carolina state court to the instant federal court. On February 11, 2005, the Plaintiff filed a Motion for Remand, in that the claims contained in the Complaint do not "arise under" the Constitution, laws or treaties of the United States, and the Defendants' anticipated defenses, *including federal preemption*, do not give rise to federal subject mater jurisdiction. [*See Motion for Remand*]

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 376 (1994). "Accordingly, the propriety of removal depends on whether the case falls within the provisions of *28 U.S.C. §1331*: 'The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Mulcahey v. Columbia Organic Chemicals Company, Inc.*, 29 F.3d 148, 151 (4th Cir. 1994).

> [Whether] a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, . . . must be determined from what necessarily appears in the Plaintiff's statement of his own claim in the bill or declaration, <u>unaided by anything alleged in anticipation of avoidance of defenses which it is thought the Defendant may interpose.</u> [Emphasis added.]
> *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 43 U.S. 1, 9 (1983).

"Federal pre-emption is ordinarily a federal defense to the Plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63 (1987). **"Thus, it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, <u>including the defense of preemption</u>, even if the defense is anticipated in the Plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue. [Italics in original.] [Emphasis added.]"** *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987); *see also Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 472 (1998); and *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6 (2003).

In the instant case, the Defendants' Notice of Removal based upon the alleged existence of federal jurisdiction is premised *exclusively* upon their claim that the Plaintiff's action is preempted by federal law (i.e., The Defense Base Act). However, the century-old rule of law concerning removal jurisdiction clearly mandates that federal jurisdiction must be derived from the claims contained in the Plaintiff's Complaint. An anticipated defense to the Plaintiff's Complaint, including a defense involving federal preemption, does not serve as a basis for federal subject matter jurisdiction for the purpose of removal. Thus, this court lacks subject mater jurisdiction over this case to be able to rule on the instant motion to dismiss.

Moreover, there is no "complete preemption" in this matter by the defense of the Defense Base Act or the LHWCA. In *Aaron v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania*, 867 F.2d 1157 (5th Cir. 1989), the Fifth Circuit analyzed a case on point with the instant action. In *Aaron*, the survivors of a longshoreman brought a wrongful death action in state court. The defendants removed the case to federal court, based upon their anticipated

defense of the exclusivity provisions of the Longshore and Harbor Workers Compensation Act

("LHWCA"). The Defendants then filed a motion to dismiss. In return, the plaintiffs filed a

motion to remand for lack of subject matter jurisdiction. The District Court agreed with the

defendants, and dismissed the action. *Id.* at 1159.

On appeal, the Fifth Circuit reversed the dismissal. In doing so, it analyzed the case with

respect to the well-pleaded complaint rule, which prohibits the removal of an action to federal

court based upon an anticipated defense. In addition, the court analyzed the exception to this

general rule, which permits removal of an action if federal law completely preempts an entire

area of state law, pursuant to the U.S. Supreme Court's decision in *Avco Corp. v. Aero Lodge No.*

*735*, 390 U.S. 557 (1968). ("*Avco* Exception"). After analyzing *Avco* and its progeny, the court

expressly found that there is no complete preemption under the LHWCA, which would permit

removal of an action based upon said anticipated defense.

> In the case before us, neither party argues that the plaintiffs could have brought
> the wrongful death action in the federal court. The LHWCA contains no civil
> enforcement provision akin to that of Section 301 of the LMRA. No specific
> federal cause of action is set forth in the statute that would be available to the
> plaintiffs in this case. Thus, the LHWCA does not serve to "create" a cause of
> action in either state or federal court in the circumstances before us. *Id.* at 1164.

Nonetheless, the defendants in *Aaron* argued that the LHWCA expressly denies the cause

of action in favor of the Plaintiffs, and thus there exists completely preemption. However, the

Fifth Circuit rejected this argument and found that no complete preemption exists.

> However, the "express denial" of a cause of action will always be present where
> federal law preempts state law. Every time federal preemption is asserted as a
> defense, and the defendant seeks to use that defense as a basis for removal
> jurisdiction, the defendant can assert that the "express denial" language of
> *Franchise Tax* is satisfied. Something more must therefore be required to create
> removal jurisdiction if the well-pleaded complaint rule is to have continued
> vitality, a result clearly indicated by the cases. *Id.* at 1165.

11

Recognizing that there exists complete preemption with respect to ERISA and LMRA, the court found that the LHWCA is not akin to those statutes, and does not create federal subject matter jurisdiction. *See Id.* at 1165. "The argument that the LHWCA is among the few statutes to which the *Avco* exception will apply must therefore fail. [ ] The LHWCA is, in this case, nothing more than a statutory defense to a state-court cause of action -- the classic circumstance of non-removability." *Id.* at 1165-66. Hence, the court reversed the order dismissing the action, and instructed the District Court to remanded it to state court.

When the removal of an action to federal court has been challenged and a motion to dismiss is concurrently pending, it is most prudent for the court to resolve the issue of jurisdiction prior to ruling on the motion to dismiss. Such is obviously the case because if the court grants the motion to remand for want of jurisdiction, it should not rule on the pending motion to dismiss. This issue was recently addressed by the U.S. District Court for the Middle District of North Carolina. In *Michael v. Bayer Corporation*, 2003 U.S. Dist. LEXIS 806, the court was faced with the issue of whether removal to its federal court was proper, while a motion to dismiss was pending. The court decided: **"However, before this Court can consider the Defendants' Motions to Dismiss a determination must be made as to whether the court has jurisdiction over this action and, thus, whether removal was proper."** *Id.* at *6.

Finding that the removal was improper, the court remanded the action to the North Carolina state court and ruled: "As such, the Court is without jurisdiction to decide the issues raised by the Defendants' Motions to Dismiss beyond the question of whether the Court has proper jurisdiction over this matter." *Id.* at *12.

In the instant matter, this court is without subject jurisdiction over this action, and thus the case should be remanded to state court, without ruling on the instant Motion to Dismiss.

## B.    Motions to Dismiss under Rule 12(b)(6) are Strongly Disfavored.

The standard for evaluating a motion to dismiss was articulated by the U.S. Supreme Court in *Conely v. Gibson*, 355 U.S. 41 (1957): "In appraising the sufficiency of the Complaint we follow, of course, the accepted rule that a Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 46. In expanding upon this rule, the Supreme Court noted that "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the Defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." *Id.* at 47. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate the proper decision on the merits." *Id.* at 48.

The Fourth Circuit has similarly stated that a motion to dismiss should be denied, unless there is a <u>certainty</u> that the Plaintiff can in no way prevail. "We have long held that a motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the Plaintiff would be entitled to no relief under any state of facts which could be proved in support of its claim." *Rogers v. Jefferson-Pilot Life Insurance Company*, 883 F.2d 324, 325 (4th Cir. 1989).

"The function of a motion to dismiss for failure to state a claim is to test the legal

sufficiency of the complaint and not the facts that support it." *Neitzeke v. Williams*, 490 U.S.

319, 326-27 (1989).  In considering the legal sufficiency of the Complaint, all of the allegations

contained in the Complaint must be deemed true and all reasonable inferences must be viewed in

favor of the Plaintiff:

> [A] *Rule 12 (b)(6)* motion should only be granted if, after accepting all well-
> pleaded allegations in the Plaintiff's Complaint as true and drawing all reasonable
> factual inferences from those facts in the Plaintiff's favor, it appears certain that
> the Plaintiff cannot prove any set of facts in support of his claim entitling him to
> relief. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

In fact, courts have traditionally held that, due to the standard of review for a motion to

dismiss for failure to state a claim upon which relief can be granted, said motions are <u>disfavored</u>.

*See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991)

["Because a dismissal under Rule 12(b)(6) is accorded res judicata effect, such dismissals are

generally disfavored by the courts."] Recognizing the strong public policy that cases should be

decided on their merits and not merely upon their pleadings, the Fifth Circuit has instructed that

"final disposition of a civil action on the basis of bare bones pleadings is torturous thing.  How a

standard so simply expressed, so often repeated, is apparently so often overlooked without even

so much as a deferential mention of it is hard to understand." *Arthur H. Richland Co. v. Harper*,

302 F.2d 324, 325 (5th Cir. 1962).

Courts are cautious in dealing with motions to dismiss for failure to state a claim upon

which relief can be granted, particularly where to grant the motion would terminate litigation

before parties have had their day in court. *See Gaine v. Brotherhood of R.&S.S. Clerks, etc.*, 177

F.Supp. 421, 430 (D. Pa. 1959), *aff'd* 275 F.2d 342 (3rd Cir. 1960).  "The issue is not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Desardouin v. United Parcel Service, Inc.*, 285 F.Supp.2d 153, 157 (D.Ct. 2003).

In fact, since a Rule 12(b)(6) motion tests the sufficiency of the allegations contained in the Complaint, which must all be deemed true and in favor of the Plaintiff, <u>a Rule 12(b)(6) motion should not be used to test the applicability of any of the Defendants' defenses</u>. "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, **or the applicability of defenses.**" [Emphasis added.] *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

### C.     The Defense Base Act Does Not Apply to the Instant Action.

Keeping in the forefront of the court's analysis the principle that all of the facts contained within the Plaintiff's Complaint are deemed true, this case simply does not give rise to the application of the Defense Base Act. First, the Defense Base Act applies to "employees" and not "independent contractors." Second, the Defense Base Act applies only to six limited categories of employment, none of which encompass the Decedents' work as articulated in the Complaint. Third, the Defense Base Act and the Longshore and Harbor Workers' Compensation Act apply only to negligent or accidental conduct, and do not apply to the intentional torts alleged in the Plaintiff's Complaint. As described in further detail below, assuming all of the allegations contained in the Plaintiff's Complaint are true, the Defense Base Act simply does not apply, and thus its exclusivity provision cannot bar the Plaintiff's action.

1.    **The Defense Base Act Applies Only to Employees and Not
Independent Contractors.**

The Defense Base Act is articulated in 42 U.S.C. § 1651, *et seq.* More specifically,

Section 1651(a) provides, in relevant part: "[T]he Longshoreman's and Harbor Workers'

Compensation Act . . . shall apply in respect to the injury or death of any <u>employee</u> engaged in

any employment --" within six specific categories of work. [Emphasis added.] 42 U.S.C.

§1651(a). In addition to the plain language of the statute case law across the country discussing

the Defense Base Act exclusively applies its provisions to "employees" engaged in the six

categories of work described in Section 1651(a).

However, the Decedents in the instant case were not "employees" of BLACKWATER,

but instead were independent contractors. The allegations in the Plaintiff's Complaint, which

must be deemed true for the purpose of the instant motion to dismiss, specifically state as

follows: **"Helvenston, Teague, Zovko and Batalona, and each of them, were hired by**

**BLACKWATER as independent contractors, and were at no relevant time employees of**

**BLACKWATER."** [*Complaint* ¶31.] Furthermore, it is alleged that each of them entered into

Independent Contractor Service Agreements. [*Complaint* ¶ 31.]

It has long been held in American jurisprudence that there exists a substantial legal

distinction between employees and independent contractors. *See Williams v. A.R.L., Inc.*, 133

N.C.App. 625, 629 (1999) (Court draws a distinction between independent contractors and

employees for the purpose of recovering workers compensation benefits.). Defendant cannot

attempt to unilaterally categorize the Decedents' as employees of BLACKWATER, and not

independent contractors, in an effort to escape liability. For the purpose of the analysis on the

instant motion to dismiss, the court need only consider the allegations contained in the

16

Complaint, which when deemed true, indicate that all of the Decedents signed "Independent Contractor Service Agreements," and that each of them were independent contractors, and were never employees of BLACKWATER. [*Complaint* ¶31.]

Since the Defense Base Act only applies to employees (similar to most state workers' compensation acts), and since the Decedents were <u>not</u> employees of BLACKWATER, but instead were independent contractors, the Defense Base Act simply does not apply to the instant action. Consequently, the Defendant's Motion to Dismiss, based upon the exclusivity provisions of the LHWCA, through extension by the Defense Base Act, should be denied.

### 2.    <u>The Decedents' Employment Does Not Fall Into the Categories Covered by the Defense Base Act.</u>

The Defense Base Act applies to any injury or death of an "employee" engaged in six specific categories of employment. *See* 42 U.S.C. § 1651(a)(1)-(6). The work being performed by the Decedents, as alleged in the Complaint, does not fall within <u>any</u> of these six categories of employment. To the extent that Defendant McQuown is able to incorporate Defendant BLACKWATER's arguments in their motion to dismiss, category four of the Act does not apply. Section 1651(a)(4) relates to employment "under a contract entered into with the United States or any executive department, independent establishment, or agency thereof (including any corporate instrumentality of the United States), or any subcontract, or subordinate contract with respect to such contract, where such contract is to be performed outside the continental United States . . . ." 42 U.S.C. §1651(a)(4).

This category of employment under the Defense Base Act does not apply to the instant case, in that, per to the allegations contained in the Complaint, the Decedents were not engaged

in employment pursuant to a contract with the United States.  The structure of the contracts

articulated in the Complaint, which are deemed to be true, is extremely clear.  A Cyprus

Corporation named ESS entered into a contract with a Kuwaiti Corporation named REGENCY.

REGENCY then entered into a contract with BLACKWATER. [*Complaint*: ¶¶18-22.] The

services for which BLACKWATER entered into the contract with REGENCY (and on a higher

level ESS) were to provide security services "for ESS's catering operations in the Middle East."

[*Complaint*: ¶21.]   In turn, BLACKWATER then entered into the Independent Contractor

Service Agreements with the four Decedents. [*Complaint*: ¶31.]

Nowhere within the Complaint are there any allegations whatsoever that the Decedents

were working pursuant to a contract with the United States.  Even the Defendant himself cannot

cite this court to any such contract with the United States.  The only mention of such a contract

with the United States is defense counsel's conjecture in his Memorandum of Law in support of

the Motion to Dismiss. [*See Memo of Law*: Page 2.]

However, even this conjecture misinterprets the allegations contained in Paragraph 18 of

the Complaint.  Paragraph 18 indicates that ESS is "a business with two divisions: <u>one which</u>

<u>provides catering support services</u> and <u>the other which provides design and building services to</u>

<u>U.S. Armed Forces and other U.S. contracting agencies in Iraq and Kuwait.</u>" [Emphasis added.]

[*Complaint* ¶18.] What is misinterpreted by the Defendant is the fact that the Complaint alleges

that BLACKWATER and the Decedents entered into a contract to support ESS's "catering

services."  [*Complaint*: ¶¶21-22.] However, there are <u>no</u> allegations that indicate

BLACKWATER entered into a contract to provide security services for ESS's other division,

which provides design and building services to the U.S. Armed Forces.

Nonetheless, the Defendant has attempted to categorize the Decedents' employment as one in which they provided security services for the U.S. Armed Forces, and thus *somehow* had entered into an unidentified contract with the United States. However, this concept is purely a fiction, and found nowhere in the Complaint.

The only other suggestion that the BLACKWATER Defendants make in support of their assertion that the Decedents were working for the U.S. Armed Forces is an allegation in their Motion to Dismiss that the "Decedents were on a security mission to transport trucks within Iraq to U.S. Army Camp Ridgeway." [*BLACKWATER Defendants' Memo of Law*: Pg. 2] However, simply because the Decedents were attempting to deliver something to a U.S. Army Camp does not mean that they were working subject to a contract with the United States government. By analogy, simply because an individual delivers a package to a U.S. Post Office does not mean the individual is working subject to a contract with the United States government.

In all, this court will be hard-pressed to find the existence of a contract between the Decedents and the United States government, which would bring their scope of employment within category 4 of Section 1651(a). Thus, not only are the Decedents not employees which would subject them to the provisions of the Defense Base Act, but their employment does not fall within any of the six categories articulated therein. Consequently, the Defense Base Act does not apply to the instant action.

### 3.     Defendant's Intentional Conduct Does Not Fall Within the Defense Base Act.

The Complaint in this matter alleges an intentional tort for wrongful death against Defendant McQuown. The factual allegations that support this cause of action are based

exclusively upon intentional conduct: "JUSTIN MCQUOWN and TOM POWELL knew that sending Scott Helvenston and the three other team members out on a mission into Fallujah in this condition—without a six-member team, without armored vehicles, and without directions or maps—could result in death to the entire team." [*Complaint*: ¶ 56.] "On March 30, 2004, JUSTIN MCQUOWN and TOM POWELL sent this team out, without the required six-members, without armored vehicles and without even a map for directions . . . ." [*Complaint*: ¶ 57.] "[A]t the direction of JUSTIN MCQUOWN, TOM POWELL sent only four contractors on the security detail, in direct violation of all of BLACKWATER's policies and agreements. [*Complaint*: ¶ 51.] "JUSTIN McQUOWN . . . intentionally, deliberately and with reckless disregard for their health and safety, sent Helvenston, Teague, Zovko and Batalona, and each of them, into the very high-risk area of Fallujah, without the required [vehicles, weapons, intelligence and logistics]." [*Complaint*: ¶69.]

However, the Defense Base Act, and by extension the Longshore and Harbor Workers' Compensation Act ("LHWCA"), does not apply to intentional conduct, but instead applies only to accidental or negligent conduct (similar to almost all state workers' compensation acts). In *Bowen v. Aetna Life and Casualty Company*, 512 So.2d 248 (1987), the Florida Court of Appeals found that although the Defense Base Act incorporates the Longshore and Harbor Workers Compensation Act, the exclusivity provision of these Acts did not bar the Plaintiffs causes of action for intentional torts. Relying upon a First Circuit federal court case construing the Longshoreman's Act, the court in *Bowen* provided, in relevant part:

> The Defense Base Act incorporates the Longshoreman's Act *33 U.S.C. §901*, et seq.
>
> * * *

> On facts similar to those in this case, the court held that the exclusivity provision of the Longshoreman and Harbor Worker's Compensation Act is limited to accidental injury arising out of and in the course of employment.
> * * *
> A growing number of courts permit workers to penetrate the exclusive remedy shield in employment-related injuries where the basis of the action against the employer's insurer is an intentional malicious tort. [Citing a long line of federal and state cases.] *Id.* at 249-50.

Even the cases cited by the BLACKWATER Defendants in support of their motion to dismiss clearly state that, while negligent conduct falls within the exclusivity provision of the LHWCA, intentional conduct does not. [*See Defendants' Memo of Law*: Pgs 7-8.]

Nonetheless, Defendant McQuown attempts to argue that the immunity provision of the LHWCA for fellow employees encompasses intentional conduct. In support thereof, Defendant McQuown relies almost exclusively upon a twenty year-old decision by the U.S. District Court for the Western District of Louisiana [*Sharp v. Elkins*, 616 F.Supp. 1561 (W.D. La. 1985)], which he claims is the "leading case." However, the decision is an anomaly, and more recently has been criticized and declined to follow by other courts.

For example, in *Malbrough v. Halliburton*, 710 So.2d 1149 (1998), the court held that the LHWCA applies only to negligent conduct, and "the LHWCA does not preclude an employee from asserting a cause of action based upon an intentional tort." *Id.* at 1150. In articulating the distinction between negligent and intentional conduct, the court recognized that "Congress intended to immunize fellow workers from <u>negligent</u> acts. Accordingly, the federal court have held that actions against fellow employees based upon <u>negligence</u> are barred by § 933(I)." [Emphasis added.] *Id.* at 1151-52. However, the LHWCA does **not** bar actions against fellow employees for intentional torts:

We find no logical reason to bar a LHWCA covered employee from bringing a state tort suit against a fellow employee whose intentional injury caused him damage. Based on the federal cases discussing § 905(a) immunity, and the comments to § 933(I) in which Congress expressly indicated that it was immunizing fellow employees from damage suits arising because of their negligent acts, we conclude that the LHWCA does not immunize an employee from a tort suit arising from an intentionally inflicted injury. *Id.* at 1152.

This holding is consistent with the majority of the decisions in the country which recognize that intentional conduct by a fellow employee is not barred by workers' compensation law. *See 3-111 Larson's Workers' Compensation - Desk Edition* § 111.03 ("The great majority of state and the Longshore Act now exclude co-employees from the category of 'third persons.' * * * Exceptions to the co-employee immunity for intentional wrongs now exist in 34 states.").

Consequently, the ruling by the District Court in Louisiana in *Sharp* is a true anomaly, has been expressly criticized and declined to follow by other courts, and is contrary to the majority of the decisions nation-wide. The Defendant's exclusive reliance upon this ruling should be view with skepticism.

Therefore, in addition to the Decedents not being "employees" under the Defense Base Act, and considering that the Decedents were not engaged in the type of employment covered by the Defense Base Act, the type of conduct alleged in the Complaint [an intentional tort] falls outside the exclusivity provisions of the Defense Base Act and by extension the Longshore and Harbor Workers' Compensation Act. Hence, the Defense Base Act and the LHWCA do not apply to this case, and Defendant's Motion to Dismiss premised upon those acts must be denied.

## CONCLUSION

Based upon the foregoing, it is respectfully submitted that this court lacks subject matter jurisdiction over this case, and must remand it to state court without consideration of the instant motion to dismiss. Alternately, the motion to dismiss should be denied because: (1) the Defense Base Act, and by extension the Longshore and Harbor Workers Compensation Act, do not apply to this action.

This _21st_ day of February 2005.

                            **CALLAHAN & BLAINE, APLC**

By: _____

DANIEL J. CALLAHAN (Cal. Bar No. 91490)
BRIAN J. McCORMACK (Cal. Bar No. 167547)
MARC P. MILES (Cal. Bar No. 197741)
3 Hutton Centre Drive, Suite 900
Santa Ana, California 92707
(714) 241-4444
Fax: (714) 241-4445
Attorneys for Plaintiff
RICHARD P. NORDAN, as the Ancillary
Administrator of the separate Estates of STEPHEN
S. HELVENSTON, MIKE R. TEAGUE, JERKO
GERALD ZOVKO and WESLEY J.K.
BATALONA

                            **KIRBY & HOLT, LLP**

By: _____

DAVID F. KIRBY (N.C. Bar No. 7841)
WILLIAM B. BYSTRYNSKI (N.C. Bar No. 20883)
P.O. Box 31665
Raleigh, North Carolina 27622
(919) 881-2111
Fax: (919) 781-8630
Attorneys for Plaintiff

23

RICHARD P. NORDAN, as the Ancillary
Administrator of the separate Estates of STEPHEN
S. HELVENSTON, MIKE R. TEAGUE, JERKO
GERALD ZOVKO and WESLEY J.K.
BATALONA

G:\2525\2525-02\Pleadings\Federal\Oppo Mtn to Dismiss JM.wpd

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served the foregoing **Plaintiff's Memorandum of Law in Opposition to the Defendant Justin L. McQuown's Motion to Dismiss** in the above-entitled action on all of parties to this cause by depositing a copy, postage prepaid, in the United States Mail, addressed as follows:

Fred F. Fielding
Margaret A. Ryan
*Attorneys for Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc.*
Wiley Rein & Fielding LLP
1776 K Street, NW
Washington, DC 20006

Kirk G. Warner
Mark A. Ash
*Attorneys for Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc.*
Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP
P. O. Box 2611
Raleigh, NC 27602

Ralph J. Caccia
William C. Crenshaw
Don R. Berthiaume
*Attorneys for Justin L. McQuown*
Powell Goldstein, LLP
901 New York Avenue, NW, 3rd Floor
Washington, DC 20001

Patricia L. Holland
Rachel Esposito
*Attorneys for Justin L. McQuown*
Cranfill, Sumner & Hartzog, L.L.P.
P. O. Box 27808
Raleigh, NC 27611-7808

This is __ day of February, 2005.

William B. Bystrynski
Kirby & Holt, L.L.P.