

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. <u>5:05-CV-48-FL(1)</u>

Richard P. Nordan, as Ancillary          )
Administrator for the separate Estates of )
STEPHEN H. HELVENSTON, MIKE R.           )
TEAGUE, JERKO GERALD ZOVKO and           )
WESLEY J. K. BATALONA,                   )
                                         )
            Plaintiff,                   )      **DEFENDANT JUSTIN L.**
                                         )      **MCQUOWN'S MEMORANDUM**
                                         )      **OF LAW IN OPPOSITION TO**
            v.                           )      **PLAINTIFF'S MOTION TO**
                                         )      **REMAND**
BLACKWATER SECURITY                      )
CONSULTING, LLC, a Delaware Limited      )
Liability Company; BLACKWATER           )
LODGE AND TRAINING CENTER, INC.          )
a Delaware Corporation, JUSTIN L.        )
McQUOWN, an individual; and THOMAS       )
POWELL, an individual,                   )
                                         )
            Defendants.                  )
_____)

## DEFENDANT JUSTIN L. MCQUOWN'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Defendant, Justin L. McQuown, files the following Memorandum of Law in Opposition to the Motion to Remand filed by Plaintiff, pursuant to Local Civil Rule 7.1(e), EDNC.

## BACKGROUND

Plaintiff, Richard P. Nordan, as Ancillary Administrator of the Estates of Stephen H. Helvenston, Michael R. Teague, Jerko Gerald Zovko, and Wesley J.K. Batalona (collectively, "Decedents"), filed suit in the Superior Court of Wake County against Defendants, Blackwater Security Consulting, LLC, Blackwater Lodge and Training

Dockets.Justia.com

Center, Inc. (collectively, "Blackwater"), Justin L. McQuown ("McQuown"), and Thomas Powell ("Powell"). The Complaint purports to allege state law claims against Defendants as a result of Decedents' murder by Iraqi insurgents in Fallujah, Iraq.

Blackwater filed a Notice of Removal removing the case to this Court, in which McQuown and Powell joined. Plaintiff has moved to remand the case to state court pursuant to 28 U.S.C. § 1447(c). This Memorandum of Law is filed in opposition to that motion.

The Motion to Remand characterizes the removal as being premised on an anticipated federal defense and going beyond the allegations of the Complaint. In making this argument, Plaintiff fails to recognize both the preemptive effect and overriding federal interest of the Defense Base Act, 42 U.S.C. § 1651 *et seq.* (the "DBA"). Instead, Plaintiff attempts to avoid the DBA's applicability by contorting his own allegations in the Complaint, ignoring the artful pleading rule and misapplying the applicable case law. Accordingly, this Defendant respectfully contends that this Court should deny the Motion for Remand.

## LEGAL ARGUMENT[1]

Defendant McQuown respectfully submits that the Motion for Remand presents two issues for consideration by the Court:

(1)    Does the DBA apply; and

(2)    If so, does the DBA provide a sufficient basis to invoke federal court jurisdiction.[2]

---

[1]  Given that the facts are intertwined with the legal issues, the discussion of the facts is encompassed within the legal argument.

## I.    THE DBA APPLIES TO THE FACTS AS ALLEGED BY PLAINTIFF.

Plaintiff has advanced two arguments in support of its position that the DBA does not apply to this action: (a) Decedents were independent contractors, not employees of Blackwater; and (b) Decedents were not performing the type of work encompassed by the DBA.  Contrary to Plaintiff's implications, a fair reading of the Complaint establishes that the DBA applies.

Preliminarily, Defendant McQuown notes that the Department of Labor has already determined that the DBA applies to Decedents Teague and Zovko.  *In re Teague*, Dept. of Labor Informal Conference, Case No. 02-135368 (Feb. 25, 2005); *Zovko v. Blackwater Security Consulting*, Dept. of Labor Case No. 02-135369 (Oct. 8, 2004) (finding that "claimant, while performing service as an employee for the employer, sustained injuries resulting in his death and that such death comes within the purview of the [DBA]").[3]  Two of the other Decedents' families have applied for, and are receiving DBA benefits.  Under the circumstances, it is difficult to understand the basis for Plaintiff's contention that the DBA does not apply.

Moreover, Plaintiff's premise that the Court is limited to the allegations of the Complaint in determining whether the Complaint is removable is simply wrong.  In fact, the Court has an obligation to "look behind a complaint to determine whether a plaintiff is attempting to conceal the federal nature of his claim...."  *Murray v. Motorola, Inc.*, 327

---

[2]  Although Defendant McQuown respectfully submits that the answer to both these questions is in the affirmative, in the event the Court rules to the contrary, a third question arises as to the propriety of awarding Plaintiff attorney's fees in connection with the Motion to Remand.

[3]  Blackwater has requested, and McQuown joins in the request, that the Court take judicial notice of the prior administrative hearings and compensation orders.  *See* Fed. R. Evid. 201.

F. Supp. 2d 554, 563 (D. Md. 2004). Nevertheless, Defendant McQuown submits that even based on Plaintiff's own allegations contained in the Complaint, the DBA applies to this action for the reasons discussed below.

A.    *Decedents were employees of Blackwater for purposes of the DBA.*

Regardless of whether Decedents' contracts with Blackwater referred to them as "independent contractors," the facts alleged in the Complaint establish that Decedents were employees of Blackwater.[4]    The relevant allegations of the Complaint[5] are as follows:

> 13.    When these four individuals [*i.e.*, Decedents] signed on with BLACKWATER to be security contractors in Iraq, they did so with the understanding that BLACKWATER would provide them with certain protections, tools and information to allow them to perform their job.
>
>> a.    They were told that each security mission would be handled by a team of no less than six (6) members.
>>
>> b.    They were told that each security mission would be performed in armored vehicles.
>>
>> c.    They were told that these security teams would be comprised of at least two armored vehicles, with at least three security contractors in each vehicle, which would provide for a driver, a navigator, and a rear-gunner.
>>
>> d.    They were told that the rear-gunner would have a heavy automatic weapon, such as a "SAW Mach 46," which could fire up to 850 rounds per minute, allowing the gunner to fight off any attacks from the rear.
>>
>> e.    They were told that they would be given at least 24-hours notice prior to any security mission.
>>
>> f.    They were told that each security detail mission would be subject to a Risk Assessment completed prior to the mission, and that if the threat

---

[4] The characterization of the parties' relationship in the contract as an independent contractor is not determinative. *Burbank v. K.G.S., Inc.*, 12 BRBS 776 (1980); *Johnson v. The News & Observer Publishing Co.*, 604 S.E.2d 344, 347 (N.C. Ct. App. 2004).

[5] By referencing various allegations in the Complaint, Defendant McQuown is in no way acknowledging their accuracy.

level was too high, they would have the option of not performing the mission.

g.   They were told that they would be afforded the opportunity to review the travel routes, gather intelligence about each mission, do a pre-trip inspection of the route and determine the proper logistics to carry out the security detail.

h.   They were told that they would arrive in the Middle East and have at least 21 days prior to any operations to become acclimated to the area, learn the lay of the land, gather intelligence, and learn safe routes through the area."

. . . .

15.   On March 30, 2004, Helvenston, Teague, Zovko and Batalona were sent out on a security mission by BLACKWATER.   However, BLACKWATER intentionally and knowingly failed to provide them with the protections, tools and information that it initially represented.

a.   BLACKWATER did not provide them with the minimum number of a six (6) members on the security detail team.

b.   BLACKWATER did not provide them with armored vehicles.

c.   BLACKWATER did not permit them to have three team members in each vehicle, which resulted in each vehicle containing only a driver and a navigator, but no rear-gunner to quell any attacks.

d.   BLACKWATER did not provide them with heavy automatic machine guns, but instead merely with semi-automatic rifles (which had not even been tested or sighted).

e.   BLACKWATER did not provide them with 24-hours notice of the security mission.

f.   BLACKWATER did not conduct a Risk Assessment prior to the March 30, 2004 security mission, and the Plaintiff is informed and believes and thereon alleges that it actually created one after these four Americans were killed.

g.   BLACKWATER did not provide them with the opportunity to gather intelligence concerning the travel route, do pre-route inspection, and even refused to give them maps of the area.

h.   BLACKWATER did not send them to the Middle East 21 days prior to any operations to become acclimated to the area, learn the lay of the land, gather intelligence, and learn safe routes through

Iraq, but instead they were sent over only a few days before they became operational.

16.     As such, BLACKWATER intentionally and knowingly sent Helvenston, Teague, Zovko and Batalona into known harm's way without the needed and promised protections.

In analyzing whether a relationship is one of employer-employee or that of an independent contractor for purposes of the LHWCA and the DBA, federal courts look primarily to the "nature of the work test" and the "control" test. [6] *Marinelli v. American Stevedoring*, Dept. of Labor BRB No. 99-1135 (Aug. 1, 2000). Based on the allegations in the Complaint, Decedents were employees of Blackwater under either standard. [7]

According to Plaintiff:

- Blackwater was to provide Decedents with protections, tools and information. Complaint, ¶ 13.

- Blackwater determined the number of team members for each mission. Complaint, ¶¶ 13a., 15a.

- Blackwater determined what type of vehicles would be used in the mission. Complaint, ¶¶ 13b., 15b.

---

[6] North Carolina courts are in accord. *McCown v. Hines,* 353 N.C. 683, 687, 549 S.E.2d 175, 177-178 (N.C. 2001) (an employer-employee relationship exists where the party for whom the work is being done retains the right to control and direct the manner in which the details of the work are to be executed); *Youngblood v. North State Ford Truck Sales,* 321 N.C. 380, 384, 364 S.E.2d 433, 437 (N.C. 1988) ("…[a]n independent contractor is defined at common law as one who exercises an independent employment and contracts to do certain work according to his own judgment and method, without being subject to his employer except as to the result of his work.")

[7] The determination of whether the relationship is an employer-employee or an independent contractor is a question of law. *Farlow v. Wachovia Bank,* 259 F.3d 309, 313 (4th Cir. 2001) (quoting *Cilecek v. Inova Health Systems Servs.,* 115 F.3d 256, 261 (4th Cir. 1997). The "nature of the work" test analyzes both the nature of the work performed and its relationship to the alleged employer's regular business. *American Stevedoring Ltd. v. Marinelli,* 248 F.3d 54, 62-63 (2d Cir. 2001) (quoting *Oilfield Safety and Mach. Specialties, Inc. v. Harman Unlimited,* 625 F.2d 1248, 1253 (5th Cir. 1980)). The "control" test analyzes "'who has the power to control and direct the servants in the performance of their work.'" *White v. Bethlehem Steel Corp.,* 222 F.3d 146, 149 (4th Cir. 2000) (quoting *Standard Oil Co. v. Anderson,* 212 U.S. 215, 221-22 (1909)).

- Blackwater determined the composition of the security teams. Complaint, ¶¶ 13c., 15c.

- Blackwater determined the type of weapons to be used. Complaint, ¶¶13d., 15d.

- Blackwater determined the amount of notice that would be given prior to any security mission. Complaint, ¶¶ 13e., 15e.

- Blackwater determined whether the threat level was too high to perform the mission. Complaint, ¶¶ 13f., 15f.

- Blackwater determined the logistics to carry out the security detail. Complaint, ¶¶ 13g., 15g.

- Blackwater determined the amount of time available to Decedents to become acclimated to the area, learn the lay of the land, gather intelligence, and learn safe routes through the area. Complaint, ¶¶ 13h., 15h.

Plaintiff's allegations in the Complaint belie any claim that Decedents were independent contractors. Plaintiff alleges Decedents did not control the details of the mission and relied on Blackwater to make all pre-mission decisions. The nature of the work reflects that Decedents were carrying out Blackwater's primary business – providing security services. According to Plaintiff, Blackwater had the power to control and direct Decedents in the performance of their work. This type of relationship is no different than a typical employer-employee relationship.

In fact, if Decedents were to be considered independent contractors, Plaintiff's claims would be nonsensical. The Complaint is premised upon Blackwater having made a series of representations to Decedents to, among other things, "provide them with certain protections, tools, and information to allow [Decedents] to perform their job." Complaint, ¶ 13. If Decedents were truly independent contractors, they would be responsible for providing their own "protections, tools, and information," not Blackwater.

Thus, based on Plaintiff's own allegations in the Complaint, Decedents were employees of Blackwater for purposes of the DBA, not independent contractors.

B.   *Decedents Were Performing Work Encompassed by the DBA.*

Decedents are within the coverage of the DBA, 42 U.S.C. § 1651(a)(4), which provides, in pertinent part:

**§ 1651.  Compensation authorized**

**(a) Places of Employment**

> Except as herein modified, the Longshore and Harbor Workers' Compensation Act... shall apply in respect to the injury or death of any employee engaged in any employment –
>
> ....
>
> **(4)** Under a contract entered into with the United States or any ... agency thereof ... or any subcontract, or subordinate contract with respect to such contract, where such contract is to be performed outside the continental United States and at places not within the areas described in subparagraph (1)-(3) of the subdivision, for the purpose of engaging in public work...

"Public work" is defined in 42 U.S.C. §1651(b)(1) as follows:

> **(1)** the term "public work" means any fixed improvement, or any project, whether or not fixed, involving construction, alteration, removal or repair for the public use of the United States or its allies, including but not limited to projects or operations under service contracts and projects in connection with the national defense or with war activities...

Having established that Decedents were employees of Blackwater, the questions become:  (1) whether Decedents were performing work on a subordinate contract with respect to a contract with an agency of the United States, and (2) if so, was the work "public work."  Based on the allegations of the Complaint, the answer to both questions is in the affirmative.

*1.    Decedents were performing work on a subordinate federal contract.*

The relevant allegations in the Complaint in this regard are as follows:

18.    ESS Support Services Worldwide, Eurest Support Systems (Cypress) International Ltd. ("ESS") is a business with two divisions: one which provides catering support services and the other which provides design and building services to U.S. Armed Forces and other U.S. contracting agencies in Iraq and Kuwait.

19.    Regency Hotel and Hospital Company ("REGENCY") is a Kuwaiti company that entered into an agreement with ESS to support its services in the Middle East....

21.    .... BLACKWATER AND REGENCY join[ed] forces and submit[ted] a bid to replace CRG as the provider of security services for the food convoys. REGENCY and BLACKWATER prevailed on their bid to ESS, and were awarded the security contract for ESS's catering operations in the Middle East.

57.    On March 30, 2004, JUSTIN MCQUOWN and THOMAS POWELL sent this team out, without the required six-members, without armored vehicles and without even a map for directions to escort three ESS flatbed trucks from the City of Taji to a U.S. Army base in Iraq, commonly referred to as Camp Ridgeway.

A fair reading of paragraph 18 of the Complaint is that both ESS divisions provide services to U.S. Armed Forces and other U.S. contracting agencies in Iraq and Kuwait. This is confirmed by the allegations contained in paragraph 57 describing an escort mission to a U.S. Army base in Iraq. Plaintiff would have the Court contort Plaintiff's own allegations to conclude that the catering services provided by ESS were wholly unrelated to the services provided to the U.S. Armed Forces. In the context of the Complaint, such an interpretation is unreasonable.[8]  Thus, the contract under which

---

[8] Although Defendant McQuown submits that a fair reading of the allegations of the Complaint establishes the applicability of the DBA, the artful pleading rule prevents Plaintiff from defeating federal jurisdiction by failing to make necessary allegations. *See Spaulding v. Mingo Cty. Bd. of Educ.*, 897 F.Supp. 284, 288 (S.D. W.Va. 1995)(under the artful pleading doctrine, a plaintiff cannot defeat removal by omitting an essential federal

Decedents performed services was a subordinate contract with respect to a contract with an agency of the United States.

    2.    *Decedents were performing "public work."*

As the case law makes clear, Decedents were engaged in "public work," as defined in 42 U.S.C. §1651(b)(1). According to the Complaint, Decedents were escorting trucks to a U.S. Army base in Iraq. Complaint, ¶ 57. By definition, this work was in support of a military purpose. Under the DBA, "any military purpose is a public use no matter how accomplished." *Berven v. Fluor Corp.,* 171 F. Supp. 89 (S.D.N.Y. 1959). As such, the work qualifies as "public work" under the DBA. *See, e.g., Flying Tiger Lines, Inc. v. Landy,* 370 F.2d 46 (9th Cir. 1966) (contract for transportation of military personnel is public work); *Employers' Mutual Liability Insurance Co. v. McLellan,* 304 F. Supp. 321 (S.D.N.Y. 1969) (transportation of cargo and passengers to military air base is public work); *Alaska Airlines, Inc. v. O'Leary,* 216 F. Supp. 540 (W.D. Wash. 1963) (transportation of government material to an air force base is a public work).

Thus, Defendant McQuown contends that the DBA applies here: (1) as the result of the findings previously made by the Department of Labor; and (2) based upon Plaintiff's own allegations contained in the Complaint.

---

question from the complaint). Thus, if the Court deems it necessary to do so, it can consider matters beyond the Complaint in determining federal pre-emption. *See id.; see also Scott v. Greiner,* 858 F.Supp. 607, 609 n.1 (S.D. W.Va. 1994)(where the plaintiff seeks to conceal the true federal nature of his claim through "artful pleading," the court will look beyond the complaint to determine whether a federal question persists precluding remand). As noted by Blackwater in its Memorandum of Law in Opposition to Plaintiff's Motion to Remand, the terms of the contract between Regency and Blackwater make it clear that the services in question were being provided to U.S. Armed Forces and other U.S. contracting agencies in Iraq and Kuwait. See Blackwater's *Memorandum of Law in Opposition to Plaintiff's Motion to Remand* at 16.

## II.   THE DBA PROVIDES A SUFFICIENT BASIS FOR FEDERAL COURT JURISDICTION.

Assuming, as established above, that the DBA applies to the facts alleged by Plaintiff, the question becomes whether the DBA provides a sufficient basis to sustain federal jurisdiction.   Defendant McQuown acknowledges that typically removal is determined based on the allegations of a plaintiff's well-pleaded complaint. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58 (1987).  However, the Supreme Court also has held that a plaintiff cannot avoid federal jurisdiction by failing to plead a necessary federal question. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22 (1983).

The Fourth Circuit has recognized that, notwithstanding the allegations contained in a plaintiff's complaint, a defendant can establish federal jurisdiction if it establishes that either: (1) federal law completely preempts Plaintiff's asserted state law claims; or (2) the case presents issues of unique federal interest so that federal common law supplants state law.  *Caudill v. Blue Cross and Blue Shield,* 999 F.2d 74 (4th Cir. 1993) (holding that although claims under the Federal Employees Health Benefit Act did not completely preempt state law claims, compelling federal interests caused federal law to supplant state law claims).  Defendants meet both standards here.

A.    *The DBA Completely Preempts Plaintiff's Claims.*

The Supreme Court has held that complete preemption exists with regard to ERISA claims, claims under the Labor Management Relations Act, and state law usury claims against national banks.  *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 64 (1987) (ERISA); *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557 (1968) (LMRA); *Beneficial National Bank v. Anderson,* 539 U.S. 1, 8-10 (2003) (National Bank Act).

In addition to these three examples, various circuit courts have recognized complete preemption with respect to other federal acts. For example, several cases have recognized that the Railway Labor Act completely preempts state law. *See, e.g., Graf v. Elgin, Joliet & Eastern Railway Co.,* 790 F.2d 1341, 1346 (7th Cir. 1986) (Railway Labor Act); *Schroeder v. Transworld Airlines, Inc.,* 702 F.2d 189, 191 (9th Cir. 1983) (Railway Labor Act); *McKinney v. International Association of Machinists and Aerospace Workers,* 624 F.2d 745, 747 (6th Cir. 1980) (Railway Labor Act). The Fourth Circuit reached a similar conclusion holding that a state law computer copying claim was preempted by the Copyright Act. *Rosciszewski v. Arete Associates, Inc.,* 1 F.3d 225, 231 (4th Cir. 1993).

In analyzing whether a federal statutory scheme results in complete preemption, courts start by analyzing the statute in question and discerning Congressional intent. *Id.* at 231-32. The DBA incorporates the Longshoremen's and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.* (except as otherwise provided in the DBA). 42 U.S.C. § 1651(a). An analysis of the DBA, the LHWCA and their legislative history leads to the conclusion that the DBA preempts state law claims.

The LHWCA was enacted to satisfy the need for a "uniform compensation statute" for affected workers. S. Rep. No. 973, at 16 (1926). Legislation amending the DBA in 1958 recognized the need to "provide[] a standardized scope of benefits [and] an orderly economical procedure for awarding those benefits" in order to prevent "chaotic and unfair compensation situations result with substantial cost to the Government." S. Rep. No. 1886, at 3322 (1958). In 1983, the LHWCA was amended to prevent "the courts [from] seriously undermining one of the cornerstones of worker's compensation

law – that it should be an exclusive remedy against employers for work-related injuries and death." S. Rep. No. 98-81, at 19 (1983).

In an effort to support his Motion to Remand, Plaintiff relies on various state law cases in which courts allowed a workers' compensation claim to be pursued in state court, notwithstanding the applicability of the LHWCA. *See, e.g., Logan v. Louisiana Dock Co.*, 541 So.2d 182 (La. 1989). Although true, it is irrelevant to this case that employees covered by the LHWCA are entitled to seek compensation under state workers' compensation systems. *See Lee v. Boeing Co., Inc.*, 7 F.Supp.2d 617, 622 (D. Md. 1998). Decedents are not LHWCA employees, nor are they seeking compensation under a state workers' compensation statute. Rather, Decedents are DBA employees and Plaintiff has alleged state tort claims that are inconsistent with, and preempted by, the federal statutory scheme. Plaintiff's argument that its' tort claims are not preempted simply because state workers' compensation claims are not preempted by the LHWCA is unavailing, and specifically precluded by the language of the DBA, which expressly limits the claims available to DBA employees against their employer. *See* 42 U.S.C. § 1651(c) (discussed below).

The Fourth Circuit has specifically held that the: "question of whether the LHWCA applies to a work-related injury is exclusively a federal question which Congress never intended for state courts to resolve." *Shives v. CSX Transp., Inc.*, 151 F.3d 164, 171 (4th Cir. 1998).

Defendant McQuown respectfully submits that the Fourth Circuit's decision in *Shives* controls the outcome here. In *Shives*, the plaintiff railroad employee was injured at a marine terminal. The plaintiff sued the defendant railroad in state court, asserting a

Federal Employers' Liability Act (FELA) claim.  The defendant removed the case to federal court on the basis that the LHWCA applied.  The district court remanded the case to state court, finding that the employee was not covered by the LHWCA.  On appeal, the Fourth Circuit  concluded that plaintiff's claim, even though *couched* as an FELA claim, in reality was a claim under the LHWCA, because the plaintiff was covered under that statute.  Moreover, the court concluded "[t]his LHWCA coverage is exclusive and precludes [plaintiff] from pursuing an FELA claim."  151 F. 3d at 171.  Having found LHWCA coverage, the Fourth Circuit then concluded that under 33 U.S.C. § 910(a) an LHWCA claim must be filed with the Department of Labor, and accordingly dismissed the case for lack of subject matter jurisdiction.[9] *Id.*

Having established that the DBA applies here, and given the fact that the DBA incorporates the LHWCA, pursuant to the Fourth Circuit's decision in *Shives*,  Defendant McQuown respectfully contends that the Court should deny the Motion to Remand and dismiss the case. *See also Zapata Haynie Corp. v. Barnard*, 933 F.2d 256, 258 (4th Cir. 1992) (responsibility for interpretation of the LHWCA lies with the federal executive and federal courts).

In the event that there is any doubt about this result, the DBA contains additional provisions beyond those in the LHWCA that further compel the conclusion that federal jurisdiction of DBA claims is exclusive.  Although the LHWCA, 33 U.S.C. § 903(e), allows a party to pursue state law workers' compensation claims and only limits a party's

---

[9] The court found that remanding the case to state court would not be proper because state courts do not have jurisdiction over LHWCA cases. 151 F.3d at 164.

ability to double-recover under the state and federal systems, the DBA precludes *any* liability under state workers' compensation law:[10]

### (c) Liability as exclusive

The liability of an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor) under this chapter shall be exclusive and in place of all other liability of such employer, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) coming within the purview of this chapter under the workmen's compensation law of any State, Territory or other jurisdiction, irrespective of the place where the contract of hire of any such employee may have been made or entered into.

42 U.S.C. § 1651(c).[11]

Numerous cases have applied this exclusivity provision. *See, e.g., Flying Tiger Lines, Inc. v. Landy*, 370 F.2d 46, 52 (9th Cir. 1966) (coverage provisions of the DBA clearly evidence the intent that the Act shall afford the *sole* remedy for injuries or death suffered by employees in the course of their employment which fall within its scope); *Colon Colon v. United States Dept. of Navy*, 223 F.Supp.2d 368 (D.P.R. 2002) (dismissing complaint containing tort claims because DBA provided exclusive remedy for the plaintiff's injuries); *Carr v. Lockheed Martin Technical Services, Inc.*, No. Civ. SA-97-CA-1408-OG, 1999 WL 33290613 (W.D. Tex. Feb. 8, 1999) (state law claims for breach of contract and negligence preempted by DBA); *Berven v. Fluor Corp.*, 171 F. Supp. 89 (S.D.N.Y. 1959) (the DBA provides "that the Compensation Act remedy shall be exclusive. It is thus the public policy of the United States that the rights of plaintiff and defendant in this case shall be determined by that Act."); *Commercial Ins. Co. v. Superior Court*, 77 Cal. Rptr. 769 (Cal. Ct. App. 1st Dist. 1969) (state court had no

---

[10] *See Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715 (1980).

[11] 33 U.S.C. § 933(i) extends this exclusive liability protection to co-employees such as Defendant McQuown.

jurisdiction over subject matter of action where employee's remedy was exclusively federal under the DBA; it was the clear intent of Congress to limit the liability of an employer under the DBA and the LHWCA to the coverages provided therein, and that federal jurisdiction be paramount and exclusive).

Furthermore, the DBA establishes a comprehensive federal system for compensating claimants. *See* 33 U.S.C. § 919 (procedure regarding claims), 921 (review of compensation orders) and 42 U.S.C. § 1653 (DBA compensation districts and judicial proceedings). The fact that a statute grants exclusive jurisdiction to the federal courts is strong evidence of an intent to preempt state law claims. *Rosciszewski v. Arete Associates, Inc.,* 1 F.3d 225, 232 (4th Cir. 1993). It is this type of pervasive federal plan that led the Fourth Circuit in *Rosciszewski* to conclude that the Copyright Act preempts state law computer copying claims. Defendant McQuown respectfully submits that the Court should reach a similar result here.

B.    *The DBA Constitutes A Unique Federal Interest That Supplants State Common Law.*

In addition to complete preemption supporting federal jurisdiction here, federal jurisdiction also is appropriate because of the unique federal interest reflected by the DBA. *See, e.g., Caudill v. Blue Cross and Blue Shield,* 999 F.2d 74 (4th Cir. 1993). In *Caudill,* the plaintiff-appellant sued the defendant federal health care plan administrator to attempt to obtain insurance coverage for a particular form of cancer treatment. Defendant removed the case to federal court. The district court denied the plaintiff's motion to remand and entered summary judgment in the defendant's favor.

On appeal, the Fourth Circuit declined to conclude that claims under the Federal Employees Health Benefit Act completely preempt state law claims, but held that

compelling federal interests resulted in federal law supplanting the plaintiff's state law claims. 999 F.2d at 77. In reaching this conclusion, the court held in order for a federal interest to supplant a state law claim, a two part test had to be satisfied: (1) "the matter must involve a uniquely federal interest"; and (2) "a 'significant conflict' must exist between the federal interest or policy and the effect of the state law, 'or the application of state law [must] "frustrate specific policy objectives" of federal legislation'" *Id.* at 77, 78, quoting *Boyle v. United Tech. Corp.,* 487 U.S. 500, 507 (1988). Both prongs of this test are satisfied here.

      1.    *The DBA involves a unique federal interest.*

First, the DBA advances a unique federal interest. The DBA was enacted to provide uniformity and certainty in the availability of compensation of injured non-military employees working on military bases (or otherwise performing public work). *See Davila-Perez v. Lockheed Martin Corp.,* 202 F.3d 464 (1st Cir. 2000). To insure that uniformity, as noted above, the DBA incorporates the provisions of the LHWCA, and provides that the "liability of an employer...under this chapter shall be exclusive...." 42 U.S.C. § 1651(c). *See Smither & Co. v. Coles*, 242 F.2d 220, 223 (D.C. Cir. 1957) ("anything that tends to erode the exclusiveness of either the liability of the recovery strikes at the very foundation of statutory schemes of this kind.")

In *Caudill*, the Court applied the rationale of the Supreme Court in *Boyle, supra,* to conclude that there was a unique federal interest. In *Boyle,* the plaintiff's son, a U.S. Marine, died as a result of a Marine helicopter crash. The plaintiff brought a wrongful death action against a government helicopter manufacturer and obtained a jury verdict in his favor. The Supreme Court remanded the case for a determination of whether the

defendant had a government contractor defense entitling it to judgment as a matter of law. The Court concluded that federal common law displaced state law because the government would be adversely affected by imposition of liability on a government contractor, stating that:

> The imposition of liability on Government contractors will directly affect the terms of Government contracts: either the contractor will decline to manufacture the design specified by the government, or it will raise its price. Either way, the interests of the United States will be directly affected.

487 U.S. at 507.

The Fourth Circuit in *Caudill* concluded that the Supreme Court's decision in *Boyle* required that the issue of the availability of federal health benefits were uniquely federal. 999 F.2d at 78. The *Caudill* Court noted that, as in *Boyle*, imposition of state law liability would affect both the government's ability to enter into other contracts, and the cost of such contracts. *Id.*

The same analysis applies here. One of the obvious purposes of the DBA is to cap the liability of a government contractor consistent with the provisions of the LHWCA. In essence, Plaintiff would have this Court ignore that statutory scheme in order to allow Plaintiff to impose a completely separate level of unknown liability, notwithstanding the clear provisions of the DBA and the LHWCA to the contrary. Were Plaintiff to be successful in such an effort, in addition to violating the statutory scheme, the Government would be adversely affected. Just as the Supreme Court found in *Boyle*, Government contractors would be reluctant to provide such services, and those that did inevitably would factor such additional risk into their contracts, thereby increasing the cost to the Government.

By enacting the DBA, Congress made a fundamental policy decision that it was preferable for parties protected by the DBA to have defined benefits -- and for the employer to have defined liabilities. Plaintiff here seeks to circumvent that clear Congressional intent.

    2. *Application of state law would conflict with and frustrate the objectives of the DBA.*

The second part of the significant federal interest test requires that there be a conflict between federal and state law, or that application of state law would frustrate specific policy objectives of federal law. The conflict between the DBA and state law, and the frustration of the DBA's policy objectives, is clear. The DBA expressly insulates employers from liability by providing that it provides the exclusive remedy against employers and contractors. 42 U.S.C. § 1651(c). Any state claim made in contravention of this critical provision creates a significant conflict and would frustrate the specific policy objectives of the DBA.

Accordingly, this Court has federal jurisdiction both as a result of complete preemption and the unique federal interest present here. For these reasons, Defendant McQuown respectfully contends that this Court should deny Plaintiff's Motion to Remand.

## III.    EVEN IF THE COURT WERE TO GRANT THE MOTION TO REMAND, NO ATTORNEYS' FEES SHOULD BE AWARDED

Plaintiff seeks recovery of attorneys' fees pursuant to 28 U.S.C. § 1447(c). The award of attorneys' fees under that statute is discretionary, and courts award such fees only when a party has submitted a baseless claim wherein a "cursory examination . . . would have revealed a lack of federal jurisdiction." *In re Lowe*, 102 F.3d 731, 733 n.2

(4th Cir. 1996) (internal quotation marks and citation omitted); *see, e.g., Parker v. Johnny Tart Enterprises, Inc.*, 104 F. Supp. 2d 581 (M.D.N.C. 1999).   Given the significant federal issues involved, Defendant McQuown respectfully submits that an award of attorney's fees is not appropriate even if the Court were to determine that the Motion to Remand should be granted.[12]

## CONCLUSION

For the reasons stated above, Defendant McQuown respectfully contends that the Court should deny Plaintiff's Motion to Remand.

---

[12] Moreover, an award against Defendant McQuown, individually, would be particularly inappropriate given the fact that he merely joined in the removal.

This the 7th day of March, 2005.

Respectfully submitted,

**POWELL GOLDSTEIN LLP**

Ralph J. Caccia
DC Bar No. 412557
William C. Crenshaw
DC Bar No. 968545
901 New York Ave., N.W.
Third Floor
Washington, D.C.  20001
202-624-7380 (phone)
202-624-7222 (fax)

**Cranfill, Sumner & Hartzog, LLP**

Patricia L. Holland
Post Office Box 27808
Raleigh, North Carolina  27611-7808
Telephone:  (919) 828-5100
Facsimile:  (919) 828-2277
State Bar No. 8816
LR 83.1 Counsel

ATTORNEYS FOR JUSTIN L. MCQUOWN

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served the foregoing MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO REMAND of Defendant Justin L. McQuown in the above-entitled action on all of the parties to this cause by:

_____    Hand delivering a copy hereof to the attorney for each said party addressed as follows:

X    Depositing a copy hereof, postage prepaid, in the United States Mail, addressed to the attorney for each said party as follows:

_____    Depositing a copy hereof with a nationally recognized overnight courier service, for overnight delivery, addressed to the attorney for each said party as follows:

_____    Telecopying a copy hereof to the attorney for each said party as follows:

David F. Kirby, Esq.
William B. Bystrynski, Esq.
Kirby & Holt, LLP
Post Office Box 31665
Raleigh, North Carolina 27622
*Attorneys for Plaintiff*

Daniel J. Callahan, Esq.
Brian J. McCormack, Esq.
Marc P. Miles, Esq.
Callahan & Blaine, APLC
3 Hutton Centre Dr., Ste. 900
Santa Ana, California 92707
*Attorneys for Plaintiff*

Fred F. Fielding, Esq.
Margaret A. Ryan, Esq.
WILEY REIN & FIELDING, LLP
1776 K Street NW
Washington, DC 20006

Mark A. Ash, Esq.
Kirk G. Warner, Esq.
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602
*Attorneys for Blackwater Lodge and Training Center, Inc., and Blackwater Security Consulting, LLC*

This the 7th day of March, 2005.

#346682 v4 - defendant mcquown memorandum of law

22