# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
### CIVIL ACTION NO. 5:05-CV-48-FL(1)

RICHARD P. NORDAN, as Ancillary )
Administrator for the separate Estates of )
STEPHEN S. HELVENSTON, MIKE R. )
TEAGUE, JERKO GERALD ZOVKO and )
WESLEY J. K. BATALONA, )
  )
                            Plaintiff, )
  )
       v. )
  )
BLACKWATER SECURITY )
CONSULTING, LLC, a Delaware Limited )
Liability Company; BLACKWATER )
LODGE AND TRAINING CENTER, INC., )
a Delaware Corporation, JUSTIN L. )
McQUOWN, an individual; and THOMAS )
POWELL, an individual, )
  )
                       Defendants. )
_____ )



## BLACKWATER DEFENDANTS'
## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR REMAND

Dockets.Justia.com

# TABLE OF CONTENTS

Page

I.      Summary of Argument ................................................................................. 2

II.     To Evaluate Preemption, the Courts Look Behind Artful Pleadings to Uncover a
        Federal Cause of Action............................................................................... 5

III.    The DBA Provides the Exclusive Remedy Here and Completely Preempts
        Plaintiff's Claims ........................................................................................ 6

        A.      The DBA Provides the Exclusive Civil Enforcement Remedy for
                Plaintiff's Claims. ........................................................................... 7

        B.      The Legislative History of the DBA and the LHWCA Further Illustrates
                Congressional Intent that the DBA Completely Preempts State Claims. ............. 9

        C.      DBA Meets the Supreme Court's Exclusive Remedy Test for Complete
                Preemption. ................................................................................... 10

        D.      Binding Precedent Precludes a Remand of This Case ....................................... 12

IV.     Decedents Are Covered by the DBA ............................................................. 13

V.      Federal Courts Have Jurisdiction Over Causes of Action that Implicate and
        Potentially Frustrate Significant Federal Interests...................................... 16

        A.      The Issue of Private Contractor Support of Military Operations Uniquely
                Touches on the Rights And Duties of the United States..................................... 17

        B.      The United States Has an Interest In Maintaining a Uniform
                Compensation System  for Contractors Supporting United States Efforts
                Overseas. ...................................................................................... 20

VI.     Conclusion....................................................................................21

# INDEX TO EXHIBITS

**Tab**        **Document**

1.        Declaration of Gary C. Jackson and Attachment

2.        Declaration of Keith Flicker and Attachments A through G

3.        *Shives v. CSX Transp., Inc.,* No. S-97-1611, Notice of Removal
          (D. Md. May 15, 1997)

4.        *Burbank v. K.G.S., Inc.*, 12 BRBS 776 (1980)

5.        *Marinelli v. American Stevedoring*, Dept. of Labor BRB No. 99-1135
          (Aug. 1, 2000)

6.        Declaration of David V. Jackson and Attachments A and B

7.        Peter W. Singer, *Should Humanitarians Use Privatized Military Services?*,
          Humanitarian Aff. Rev. (Summer 2004)

8.        Peter W. Singer, *Outsourcing War*, 84 Foreign Aff. 119 (2005)

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aaron v. National Union Fire Insurance Co.*,
876 F.2d 1157 (5th Cir. 1989) ...........................................................................7

*Aetna Health Inc. v. Davila*,
124 S. Ct. 2488 (2004) .......................................................................................5

*Anderson v. H & R Block, Inc.*,
287 F.3d 1038 (11th Cir. 2002) .........................................................................7

*Andrews v. Louisville & Nashville Railroad Co.*,
406 U.S. 320 (1972) ..........................................................................................11

*Arizmendi v. Lawson*,
914 F. Supp. 1157 (E.D. Pa. 1996) ..................................................................14

*Artis v. Norfolk & Western Railway*,
204 F.3d 141 (4th Cir. 2000) ...........................................................................10

*Avco Corp. v. Machinists*,
390 U.S. 557 (1968) ..........................................................................................11

*Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003) ............................................. *passim*

*Boyle v. United Technologies Corp.*,
487 U.S. 500 (1988) ..........................................................................................17

*Briggs v. Newberry County School District*,
838 F. Supp. 232 (D.S.C. 1992) ......................................................................14

*Caudill v. Blue Cross & Blue Shield*,
999 F.2d 74 (4th Cir. 1993) ................................................................17, 18, 20

*Chesapeake & Ohio Railway Co. v. Schwalb*,
493 U.S. 40 (1989) ...........................................................................................10

*Clark v. BASF Salaried Employees' Pension Plan*,
329 F. Supp. 2d 694 (W.D.N.C. 2004) ...........................................................14

*Colon v. United States Department of Navy*,
223 F. Supp. 2d 368 (D. P.R. 2002).............................................................9, 14

*Custer v. Sweeney*, 89 F.3d 1156 (4th Cir. 1996) ..........................................................5

*Davila-Perez v. Lockheed Martin Corp.*, 202 F.3d 464 (1st Cir. 2000) ...................4, 8, 10, 14

*Deford v. Soo Line Railroad Co.*, 867 F.2d 1080 (8th Cir. 1989) ...........................................11

*Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*,
213 F.3d 175 (4th Cir. 2000) ....................................................................................3

*Employers' Mutual Liability Insurance Co. v. McLellan*,
304 F. Supp. 321 (S.D.N.Y. 1969)..........................................................................16

*Farlow v. Wachovia Bank*, 259 F.3d 309 (4th Cir. 2001).........................................................15

*Franchise Tax Board v. Construction Laborers Vacation Trust*,
463 U.S. 1 (1983).....................................................................................................17

*Griffin v. Holmes*, 843 F. Supp. 81 (E.D.N.C. 1993)..............................................................21

*Husk v. E.I. Du Pont De Nemours & Co.*,
842 F. Supp. 895 (S.D.W.Va. 1994).......................................................................21

*In re Lowe*,
102 F.3d 731 (4th Cir. 1996) ...................................................................................21

*Krispin v. May Department Stores Co.*,
218 F.3d 919 (8th Cir. 2000) .....................................................................................7

*Logan v. Louisiana Dock Company*,
541 So. 2d 182 (La. 1989) .........................................................................................4

*Marler v. Amoco Oil Co.*,
793 F. Supp. 656 (E.D.N.C. 1992)...........................................................................21

*Merrell Dow Pharmaceuticals, Inc. v. Thompson*,
478 U.S. 804 (1986)................................................................................................17

*Metropolitan Life Insurance Co. v. Taylor*,
481 U.S. 58 (1987)..............................................................................................5, 11

*Moore v. Phillips Petroleum Co.*,
912 F.2d 789 (5th Cir. 1990) ...................................................................................14

*Murray v. City of Augusta*,
394 A.2d 1171 (Me. 1978).........................................................................................4

*Page Communications Engineers, Inc. v. Arrien*,
315 F. Supp. 569 (E.D. Pa. 1970) ...................................................................16

*Peters v. Union Pacific Railroad Co.*,
80 F.3d 257 (8th Cir. 1996) ...................................................................4, 11

*Rosciszewski v. Arete Associates, Inc.*,
1 F.3d 225 (4th Cir. 1993) ............................................................... *passim*

*Schroeder v. Trans World Airlines, Inc.*,
702 F.2d 189 (9th Cir. 1983) ...................................................................11

*Shrives v. CSX Transportation, Inc.*,
151 F.3d 164 (4th Cir. 1998) ........................................................... *passim*

*Smither & Co. v. Coles*,
242 F.2d 220 (D.C. Cir. 1957) .............................................................10, 20

*Sun Ship, Inc. v. Pennsylvania*,
447 U.S. 715 (1980) ...................................................................................4

*Trans World Airlines, Inc. v. Mattox*,
897 F.2d 773 (5th Cir. 1990) ...................................................................11

*United States Aviation Underwriters, Inc. v. Yellow Freight System, Inc.*,
296 F. Supp. 2d 1322 (S.D.Ala. 2003)...................................................11

*Vogelsang v. Western Maryland Railway Co.*,
531 F. Supp. 11 (D. Md. 1981) ...............................................................9

*In re Wireless Telegraph Radio Frequency Emissions Products Liability
Litigation*, 327 F. Supp. 2d 554 (D. Md. 2004) ......................................6

*Zapata Haynie Corp. v. Barnard*,
933 F.2d 256 (4th Cir. 1991) .......................................................8, 12, 13

<u>Federal Statutes</u>

U.S. Const. art. I sec. 2 ...........................................................................18

U.S. Const. art. II sec. 8 ..........................................................................18

28 U.S.C. § 1331 ......................................................................................1

28 U.S.C. § 1447(c) ................................................................................21

33 U.S.C. § 901 ...................................................................................................3

33 U.S.C. § 903(e) ..............................................................................................4

33 U.S.C. § 905(a) ...........................................................................................1, 3

33 U.S.C. § 919 ...................................................................................................8

33 U.S.C. § 921 .............................................................................................12, 13

33 U.S.C. § 921(b) ..............................................................................................8

33 U.S.C. § 921(c) ..............................................................................................8

33 U.S.C. § 921(d) ..............................................................................................8

33 U.S.C. § 933(i) ...............................................................................................8

Defense Base Act, 42 U.S.C. § 1651 *et seq* .....................................................1

42 U.S.C. §§ 1651(a) ...............................................................................1, 3, 4, 15

42 U.S.C. §§ 1651(a)(4) ........................................................................3, 7, 8, 16

42 U.S.C. § 1653 (b) ....................................................................................4, 8, 13

42 U.S.C. § 1651(b)(1) ......................................................................................16

42 U.S.C. § 1651(c) ..........................................................................................4, 7

Federal Employers Liability Act, 45 U.S.C. § 51 *et. seq* .................................6

Legislative Materials

S. Rep. No. 98-81  (1983) ...............................................................................9, 10

S. Rep. No. 973  (1926) ......................................................................................9

S. Rep. No. 1886 (1958) .....................................................................................9

Miscellaneous

*Burbank v. K.G.S., Inc.*,
12 BRBS 776 (1980) .........................................................................................14

Charles Alan Wright & Arthur R. Miller,

*Federal Practice & Procedure*, § 3722 (Supp. 2004) ............................................................17

*Marinelli v. American Stevedoring, Ltd.*,
BRB No. 99-1135 (Dep't of Labor Aug. 1, 2000) (*per curiam*) ............................................15

Peter W. Singer, *Should Humanitarians Use Privatized Military Services?*,
Humanitarian Aff. Rev. (Summer 2004) ................................................................................19

Peter W. Singer, *Outsourcing War*, 84 Foreign Aff. 119 (2005)............................................19

Report to Congress, United States Special Inspector General for Iraq Reconstruction
(Jan. 30, 2005), *available at* http://www.cpa-ig.com/reports_congress.html
(last accessed Mar. 6, 2005)....................................................................................................19

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
## CIVIL ACTION NO. 5:05-CV-48-FL(1)

RICHARD P. NORDAN, as Ancillary )
Administrator for the separate Estates of )
STEPHEN S. HELVENSTON, MIKE R. )
TEAGUE, JERKO GERALD ZOVKO and )
WESLEY J. K. BATALONA, )
                        )
              Plaintiff, )
                        )
          v. )
                        )
BLACKWATER SECURITY )
CONSULTING, LLC, a Delaware Limited )
Liability Company; BLACKWATER )
LODGE AND TRAINING CENTER, INC., )
a Delaware Corporation, JUSTIN L. )
McQUOWN, an individual; and THOMAS )
POWELL, an individual, )
                        )
            Defendants. )

**MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND**

Pursuant to 28 U.S.C. §§ 1331 and 1367 and E.D.N.C. Local Rule 7.1(e), Defendants Blackwater Security Consulting, LLC, and Blackwater Lodge and Training Center, Inc. ("Blackwater") submit this Memorandum of Law in Opposition to Plaintiff's Motion to Remand.

Plaintiff does not dispute that the Defense Base Act, 42 U.S.C. § 1651 *et seq.* ("DBA") provides the exclusive means by which "an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor)" may be held liable for injuries or death arising out of employment covered under the Act. 42 U.S.C. §§ 1651(a), (c); 33 U.S.C. § 905(a). Plaintiff also does not contest that there is a paramount federal interest in the utilization of and reliance on contractors and subcontractors who support the United States

Armed Forces and other United States agencies in a foreign war zone.[1] Rather, Plaintiff alleges: (1) that it can avoid exclusive federal jurisdiction by choosing not to raise DBA coverage in its Complaint; and (2) that the exclusive DBA remedy does not apply, even when statutory beneficiaries are receiving DBA benefits and after the Department of Labor ("DOL") already affirmed that Decedents are entitled to such benefits. The law and the facts are to the contrary, and Plaintiff's Motion should be denied.

I.    **Summary of Argument.**

This Court has exclusive jurisdiction over the instant matter because: (1) Congress intended for the DBA to provide the exclusive remedy for the Plaintiff's common law claims; and (2) unique federal interests—namely, the United States government's significant reliance on private contractors to support its efforts in Iraq and other overseas locations—warrant a uniform and consistent interpretation and application of the DBA's provisions. Only by ignoring Fourth Circuit precedent in *Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225, 232 (4th Cir. 1993) and *Shives v. CSX Transportation, Inc.* 151 F.3d 164, 171 (4th Cir. 1998), and by mischaracterizing the Supreme Court's *holdings* on artful pleading can Plaintiff conclude that its claims may be raised in state court.

Plaintiff alleges that Blackwater is liable for the murders of Messrs. Helvenston, Teague, Zovko, and Batalona (collectively "Decedents") by Iraqi insurgents while the Decedents provided security services in support of Blackwater's contract with Regency. Compl. ¶¶ 16-17. By that contract's terms, Blackwater functioned as a subcontractor in support of the U.S. military effort in Iraq by "providing catering support services and design and build services to US Armed Forces and other US contracting agencies in Iraq and Kuwait." Mar. 12, 2004 Blackwater-

---

[1] *See* Blackwater Jan. 24, 2005 Notice of Removal ¶¶ 36-44 ("Removal").

Regency Contract ("Regency Contract"), Ex. 1 (Decl. of Gary Jackson), Attach. at Intro.[2]  The

subcontract also required Blackwater to purchase DBA insurance, and no party contests that

Blackwater in fact purchased DBA insurance covering the Decedents.  *Id.* ¶ 6.1.2.

The DBA extends the Longshoremen's and Harbor Workers' Compensation Act

("LHWCA"), 42 U.S.C. § 1651 *et seq.*, to provide an exclusive and comprehensive scheme of

compensation and claim oversight for

> the injury and death of any employee engaged . . . under a contract entered
> into with the United States or any executive department, independent
> establishment, or agency thereof (including any corporate instrumentality
> of the United States), or any subcontract, or subordinate contract with
> respect to such contract, where such contract is to be performed outside
> the continental United States . . . for the purpose of engaging in public
> work . . . .

42 U.S.C. § 1651(a)(4), among other types of work.  *Id.* at 1651 (a)(1)-(3) and (5)-(6).  The

LHWCA serves as a floor for the DBA in terms if its preemptive effect.  It provides that:

> The liability of an employer prescribed . . . shall be exclusive and in place
> of all other liability of such employer to the employee, his legal
> representative, husband or wife, parents, dependents, next of kin, and
> anyone otherwise entitled to recover damages from such employer at law
> or in admiralty on account of such injury or death.

33 U.S.C. § 905(a).  Except as modified within the DBA, the provisions of the LHWCA, as

amended, 33 U.S.C. § 901 *et seq.*, "shall apply." 42 U.S.C. § 1651(a).

---

[2] Plaintiff seeks to avoid Blackwater's contractual relationship with the United States by asserting that the
Blackwater subcontract with Regency Hotel and Hospital Company ("Regency") to provide security for
ESS Support Services Worldwide ("ESS") was not related to ESS catering services for the United States
Armed Forces and other United States contracting agencies in Iraq and Kuwait.  Compl. ¶18; Remand
Mem. at 3.  Plaintiff's reading of the Regency contract language, which clearly indicates that
Blackwater's subcontracted security services were in support of ESS's catering services and design and
build services performed on behalf of U.S. Armed Forces and other United States contracting agencies, is
facially unreasonable.  *Id.*; Compl. ¶18; Ex. 1, Attach. at Intro.  "While [the Court] must take the facts in
the light most favorable to the plaintiff, [it] need not accept the legal conclusions drawn from the facts.
Similarly, [it] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."
*Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'shp*, 213 F.3d 175, 180 (4th Cir. 2000) (internal citations
omitted).

The DBA exclusivity provision, 42 U.S.C. § 1651(c), is even more stringent than that contained within the LHWCA, in that it completely precludes even claims arising out of State workmen's compensation law.[3] *See also Davila-Perez v. Lockheed Martin Corp.*, 202 F.3d 464, 468 (1st Cir. 2000) (holding that the DBA entitles employer "to immunity from tort claims" from survivors). The DBA also mandates that all "[j]udicial proceedings . . . in respect to a [DBA] compensation order . . . shall be instituted in the United States district court . . . ." 42 U.S.C. § 1653(b).

As the Supreme Court recently confirmed, when Congress provides an exclusive federal remedy, and particularly when it "also set[s] forth procedures and remedies governing that cause of action," that remedy cannot be circumvented by artful pleading. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7-9 & n.5 (2003) (finding complete preemption of National Bank Act over Plaintiff's state causes of action and acknowledging that the "proper inquiry [for motions to remand] focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable"); *accord Rosciszewski,* 1 F.3d at 232 (finding complete preemption and upholding removal against Plaintiff's attempt to plead around Copyright Act due to the Act's "exclusive [federal] jurisdiction" and "preemptive force"); *Peters v. Union Pac. R.R.*, 80 F.3d 257, 260-62 (8th Cir. 1996) (completely preempting state common law actions under Federal Railroad Safety Act).

---

[3] While the LHWCA preempts any state law tort cause of action for injury or death, it does not prevent workers from proceeding under state worker's compensation regimes. *See, e.g., Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 719-20 (1980). However, it does prevent a party from reaping a double recovery from both state and federal regimes. 33 U.S.C. § 903(e). The DBA incorporates the exclusivity language of the LHWCA and, in addition, *expressly prohibits* recourse to state worker's compensation regimes. 42 U.S.C. §§ 1651(a) and 1651(c). Consequently, Plaintiff's citations to LHWCA cases that address worker's compensation, including *Sun Ship, Logan v. Louisiana Dock Co.*, 541 So. 2d 182 (La. 1989), and *Murray v. City of Augusta*, 394 A.2d 1171 (Me. 1978), are inapposite. Remand Mem. at 18-20.

Even before *Beneficial* was decided, the Fourth Circuit determined that "LHWCA coverage is exclusive and preempts [Plaintiff] from pursuing" all other claims. *Shives*, 151 F.3d at 171. Accordingly, state courts "do not have jurisdiction over LHWCA cases." *Id.* Thus, the DBA not only provides the exclusive remedy and liability here by preempting any and all other causes of action against Blackwater or its employees, but also precludes state court jurisdiction.

Plaintiff cannot sustain the charge that the DBA does not apply to the Decedents in this case. The circumstances of Decedents' murders and Blackwater's status as a subordinate contractor to the United States mandate DBA coverage. Moreover, in arguing against coverage, Plaintiff ignores the DOL's explicit findings that Messrs. Teague and Zovko fall squarely within the DBA. *See, e.g.*, Ex. 2 (Decl. of Keith Flicker), and Attachs. A-B.

Finally, Plaintiff ignores the critical federal interests that its Complaint implicates and does not address Blackwater's second ground for removing this action to federal court.

II.   **To Evaluate Preemption, the Courts Look Behind Artful Pleadings To Uncover a Federal Cause of Action.**

Plaintiff selectively quotes Supreme Court cases to suggest that it can avoid the jurisdiction of this Court by not directly alleging a DBA claim on the face of the Complaint. In those same cases, however, the Supreme Court has acknowledged that although "determining whether a particular case arises under federal law turns on the well-pleaded complaint rule . . . [W]hen 'a federal statute wholly displaces the state-law cause of action through complete preemption,' the state claim can be removed." *Aetna Health Inc. v. Davila*, 124 S. Ct. 2488, 2494-95 (2004) (quoting *Beneficial Nat'l Bank*, 539 U.S. at 8).[4] If the rule were otherwise, a Plaintiff

---

[4] "The complete preemption doctrine . . . is 'an independent corollary of the well-pleaded complaint rule,' *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22 [] (1983), and trumps [P]laintiff's characterization of his claim by 'convert[ing] an ordinary state common law complaint into one stating a federal claim.'" *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir. 1996) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Plaintiff's decision to consume a large portion of its motion to

could, through artful pleading, thwart Congressional intent by committing to a state court matters that Congress intended to lie within the exclusive jurisdiction of the federal courts.

Contrary to Plaintiff's assertions, *see, e.g.*, Remand Mem. at 15-16, in order to evaluate federal preemption arguments, a court must necessarily "look behind a complaint to determine whether a plaintiff is attempting to conceal the federal nature of his claim[.]" *In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.*, 327 F. Supp. 2d 554, 563 (D. Md. 2004) ("[A]rtful pleading is not a separate removal doctrine, but rather refers to the manner in which some plaintiffs manage to plead claims that are actually federal (because they are either completely preempted, or based entirely on substantial federal questions) under state law."). In *Shives*, for example, the Court looked beyond pleadings that omitted any discussion of the LHWCA and determined that the LHWCA completely preempted competing claims under the FELA.[5] *See Shives*, 151 F.3d at 171; *see also Rosciszewski*, 1 F.3d at 232 (looking beyond pleading of state counts to uphold removal under the Copyright Act).

III.    **The DBA Provides the Exclusive Remedy Here and Completely Preempts Plaintiff's Claims.**

In determining whether a federal statute completely preempts state law claims, the proper inquiry is "whether Congress intended the federal cause of action to be [the] exclusive" cause of

---

remand with the unremarkable proposition that a party may not ordinarily remove an action to federal court based on a defense is puzzling. Remand Mem. at 2, 7-12.

[5] In *Shives*, the plaintiff filed suit in state court and asserted a claim based entirely on the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 *et. seq*. The Defendant asserted that the LHWCA provided a ground for relief and maintained that the court could "look beyond the face of the Plaintiff's Complaint to determine whether removal is proper." Ex. 3, *Shives v. CSX Transp., Inc.*, No. S-97-1611, Notice of Removal at 3 n.1 (D. Md. May 15, 1997) (citing *Baccus v. Parrish*, 45 F.3d 958 (5th Cir. 1995)). This Circuit held that remand to state court was improper, considered whether the LHWCA applied, and concluded not only that "LHWCA coverage is exclusive and preempts Shives from pursuing an FELA claim," *Shives*, 151 F.3d at 171, but also that the question of LHWCA coverage was not one over which the state court had jurisdiction. *Id.*

action for the type of claim brought by a plaintiff. *Beneficial Nat'l Bank*, 539 U.S. at 9 n.5. The issue is not, for example, whether Congress evidenced specific intent that "the cause of action be removable." *Id.*; *see also Rosciszewski*, 1 F.3d at 231-32 ("'The Supreme Court gives great weight to the intent of Congress' resolving whether the complete preemption doctrine applies.'") (quoting 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3566 (Supp. 1993)).[6] In determining whether a federal statute completely preempts state law claims, courts look to the statute's text and, if necessary, other indicia of Congressional intent.

### A. The DBA Provides the Exclusive Civil Enforcement Remedy for Plaintiff's Claims.

The DBA explicitly provides the *exclusive liability* "of an employer, contractor (or any subcontractor or subordinate contractor with respect to the contract of such contractor)," 42 U.S.C. § 1651(c), for the "injury or death of any employee engaged in the employment . . . under a contract entered into with the United States or any executive department, independent establishment, or agency thereof . . . or any subcontract, or subordinate contract with respect to such contract, where such contract is to be performed outside the continental United States." *Id.* § 1651(a)(4). This exclusivity extends further to injuries or death alleged to be attributed to "the negligence or wrong of any other person or persons in the same employ." 33 U.S.C. § 933(i).

---

[6]   In placing the focus of the complete preemption inquiry on exclusivity of remedy and not on removal, and by eliminating any requirement of intent of the latter, the Supreme Court resolved a circuit split in favor of the broader preemption standard advanced by the Eighth and Fourth Circuits and against the more restrictive standards of the Eleventh and Fifth Circuits. *Compare, e.g., Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 922-23 (8th Cir. 2000) (finding complete preemption based on exclusivity of National Bank Act's remedy); *Rosciszewski*, 1 F.3d at 230-32 (same), *with, Anderson v. H & R Block, Inc.*, 287 F.3d 1038, 1048 (11th Cir. 2002) (holding that there must be "a clear congressional intent to permit removal" for complete preemption), *rev'd sub nom., Beneficial Nat'l Bank*, 539 U.S. 1 (2003); *Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157, 1165 n.15 (5th Cir. 1989) (denying complete preemption of LHWCA because "the import of *Franchise Tax* and *Taylor* is that a clear indication of legislative intent to create removal jurisdiction [under LHWCA] . . . as a defense is required"). Plaintiff's reliance on *Aaron* in additional briefing of the removal question provided in its Feb. 22, 2005 Opposition to Blackwater's Motion to Dismiss is therefore misguided and out of step with binding precedent of the Supreme Court and this Circuit. *See Shives*, 151 F.3d at 171 (precluding LHWCA remand).

The DBA also provides a comprehensive *federal* framework for obtaining or contesting compensation for death and injury arising out of employment covered under the DBA. A compensation award under the DBA is exclusively committed to the federal Executive branch. 33 U.S.C. § 919. Appeal of any such award is committed exclusively to the federal Benefits Review Board, 33 U.S.C. § 921(b), and is reviewable only in a United States Court of Appeals. *Id.* § 921(c). Federal district courts have exclusive jurisdiction to hear proceedings either to: (a) compel enforcement of a Compensation Order, *id.* at § 921(d); or (b) enjoin a compensation order made pursuant to the DBA. 42 U.S.C. § 1653(b). Like the LHWCA, the DBA is a matter exclusively for the federal executive and federal courts and may not be committed to the state court.[7] *See Shives*, 151 F.3d at 171; *Zapata Haynie Corp. v. Barnard*, 933 F.2d 256, 258 (4th Cir. 1991) ("The Board's adjudicatory interpretation of the LHWCA . . . is subject to [U.S. Courts of Appeal] independent review.").

Therefore, because the DBA "provid[es] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action," *Beneficial Nat'l Bank*, 539 U.S. at 8, it completely preempts common law causes of action that stem from the circumstances presented in the Complaint. "[T]here is, in short, no such thing as a state-law claim," *id.* at 11, for "injury or death" of any person engaged in support of a "subcontract, or subordinate contract" with the United States Government for "public work" outside of the continental United States. 42 U.S.C. § 1651(a)(4); *see also Davila-Perez*, 202 F.3d at 468 (holding that there is no other cause of action against employer where DBA applies); *Colon Colon v. United States Dep't of Navy*, 223 F. Supp. 2d 368, 370 (D. P.R. 2002) (same);

---

[7] Tellingly, the Fourth Circuit has viewed the naming of a federal forum as an indication of Congressional intent to preempt. *See Rosciszewski*, 1 F.3d at 232 ("the grant of exclusive jurisdiction to the federal district courts . . . combined with the preemptive force of [the Copyright Act] compels the conclusion that Congress intended" to preempt state law actions).

*Vogelsang v. W. Md. Ry. Co.*, 531 F. Supp. 11, 13 (D. Md. 1981), *aff'd*, 670 F.2d 1347, 1348 (4th Cir. 1982) (holding the same with respect to the LHWCA).    Consequently, "[e]ven though the complaint makes no mention of federal law . . . [t]his cause of action . . . only arises under federal law and [can], therefore, be removed under § 1441." *Beneficial Nat'l Bank*, 539 U.S. at 11(finding that the National Bank Act completely preempts state usury claims).

B.    **The Legislative History of the DBA and the LHWCA Further Illustrates Congressional Intent that the DBA Completely Preempts State Claims.**

While precedent of this Circuit and the plain language of the statute control, the legislative histories accompanying the passage of both the LHWCA and the DBA confirm that Congress intended the DBA to serve as an exclusive, uniform, and consistent federal remedy.

When the Senate initially contemplated passing the LHWCA, it recognized that it needed to "enact[] a uniform compensation statute." S. Rep. No. 69-973, at 16 (1926). Congress's 1958 DBA amendments again emphasized that the legislation should "provide[] a standardized scale of benefits [and] an orderly economical procedure for awarding those benefits." S. Rep. No. 85-1886, at 3322 (1958). The Senate stated that the "standardized" and "orderly" process that the legislation created eliminated uncertainty: "Without such legislation chaotic and unfair compensation situations result with substantial cost to the Government." *Id.* Congress subsequently amended the LHWCA to prevent "the courts [from] seriously undermining one of the *cornerstones of worker's compensation law* – that it should be an *exclusive remedy against employers* for work-related injuries and death." S. Rep. No. 98-81, at 19 (1983) (emphasis added).

To accomplish the ends of uniformity, standardization, and orderliness and to limit "chaotic and unfair compensation situations," *id.*, it is axiomatic that all proceedings relating to the DBA be committed to federal jurisdiction. *See Davila*, 202 F.3d at 468 (holding that the

"purpose of the [DBA] is to provide uniformity and certainty in availability of compensation for injured employees on military bases outside the United States"); *Smither & Co. v. Coles*, 242 F.2d 220, 222 (D.C. Cir. 1957) (dismissing beneficiaries' tort actions against employer and stating the purpose of the LHWCA is to provide "'not only for employees a remedy which is both expeditious and independent of proof of fault, but also for *employers a liability which is limited and determinative'* . . . anything that tends to erode the exclusiveness of either the liability or the recovery strikes at the very foundation of statutory schemes of this kind.") (emphasis added) (quoting *Bradford Electric Co. v. Clapper*, 286 U.S. 145, 159 (1932)). Both the statutory scheme and the Fourth Circuit confirm that parties may not raise causes of action preempted by the DBA in state courts in an effort to avoid this exclusivity. *See Shives*, 151 F.3d at 171.[8]

C.    **The DBA Meets the Supreme Court's Exclusive Remedy Test for Complete Preemption.**

Plaintiff has no wrongful death claim because of DBA preemption and cannot proceed in state court. Complete preemption occurs if "Congress intended [the DBA] to provide the exclusive cause of action for [injury and death] claims against [employers]." *Beneficial Nat'l Bank*, 539 U.S. at 9 & n.5; *accord Rosciszewski*, 1 F.3d at 232 (examining an Act's preemptive force and exclusive jurisdiction over actions arising under Act). This Circuit has already acknowledged both the exclusivity of the LHWCA (DBA) remedy ("LHWCA coverage is exclusive and preempts [plaintiff] from pursuing" a state claim, *Shives*, 151 F.3d at 171), and the exclusivity of the federal "procedures and remedies governing" this remedy. *Beneficial Nat'l*

---

[8] *See also Artis v. Norfolk & Western Ry.*, 204 F.3d 141, 144 (4th Cir. 2000) ("The law is that if a claimant is a maritime worker, then his exclusive remedy is under LHWCA . . . . Conversely, if a worker is not a maritime worker, then his remedy must be provided by another statute or the common law."). The Supreme Court has similarly noted that if a party's "injuries are covered by the [LHWCA,] the remedy provided by that Act is exclusive[.]" *Chesapeake & Ohio Ry. Co. v. Schwalb*, 493 U.S. 40, 42 (1989).

*Bank*, 539 U.S. at 8; *see Shives*, 151 F.3d at 171 ("State courts . . . do not have jurisdiction over LHWCA cases.").

Plaintiff wrongly contends that the universe of complete preemption begins and ends with three statutes—the Labor Management Relations Act,[9] the Employee Retirement Income Security Act of 1974 ("ERISA"),[10] and the National Bank Act ("NBA").[11]  The Supreme Court has never so limited complete preemption.  Rather, it has analyzed each Act's preemptive force independently.  As with, for example, the NBA, the Court examined the remedies and review procedures of the Act and determined that "Congress intended [the NBA] to provide the exclusive cause of action for usury claims against national banks." *Beneficial Nat'l Bank*, 539 U.S. at 9.  On that basis, it concluded that the Act completely preempted state law claims. *Id.* Not surprisingly, in addition to the Fourth Circuit expressly acknowledging that state courts have no jurisdiction to interpret, or even determine the applicability of the LHWCA and, by extension the DBA, *see infra* at 12-13, other courts—including the Fourth Circuit—have found complete preemption in other contexts. *See Rosciszewski*, 1 F.3d at 230-32 (Copyright Act);[12] *Peters*, 80 F.3d at 261  (Federal Railroad Safety Act).[13]

---

[9]  *Avco Corp. v. Machinists*, 390 U.S. 557 (1968).

[10]  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987).

[11]  *Beneficial Nat'l Bank*, 539 U.S. at 9.

[12]  "Accordingly, we hold that the preemptive force of § 301(a) of the Copyright Act transforms a state-law complaint asserting claims that are preempted by§ 301(a) into a complaint stating a federal claim for purposes of the well-pleaded complaint rule." *Rosciewski*, 1 F.3d at 232-33.

[13]  *See also Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 787 (5th Cir. 1990) (finding congressional intent to create complete preemption under Federal Aviation Act based on Congress's desire to maintain uniformity in the law and to "avoid the confusion and burdens that would result if interstate and international airlines were required to respond to standards of individual states") *aff'd, sub nom and rev'd in part on other grounds*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992); *Deford v. Soo Line R. Co.*, 867 F.2d 1080, 1085 (8th Cir. 1989) (same); *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191-92 (9th Cir. 1983) (Railway Labor Act precludes state tort claims since it "'makes the federal administrative remedy exclusive'") (quoting *Andrews v. Louisville & Nashville R. Co.*, 406 U.S. 320, 323

D.    **Binding Precedent Precludes a Remand of This Case.**

As noted *supra* at 3-4 & n.3, the DBA, while more exclusive than the LHWCA, incorporates the vast majority of that Act's provisions.    In this Circuit, interpretation and coverage questions related to either Act are not only federal questions, but federal questions over which state courts have no jurisdiction.    *Shives* confirmed that interpretation of the LHWCA is a matter for the federal executive and federal courts.    151 F.3d at 168 (citing *Zapata*, 933 F.2d at 258).    The Fourth Circuit declined to submit even the antecedent and contested issue of LHWCA *coverage* to a state court for consideration: "While [we might] remand this case to the state court to decide the coverage question, if we were to do so, we would be committing the federal question of LHWCA coverage to the state court when Congress intended that it be decided exclusively in federal court."    *Id.* at 171.    Thus, under no circumstances can this case be remanded to state court.

As explained *infra* at 13-14, the DOL has already resolved the issue of DBA coverage with respect to two of the decedents.    Even if a contested issue existed with respect to coverage for the other two Decedents as to whom DOL has not yet made an affirmative determination, Plaintiff may not detour to State court but rather must first exhaust any coverage question before the DOL.    *Shives*, 151 F.3d at 167 ("The question of whether the LHWCA applies to a work-related injury is exclusively a federal question which Congress never intended for state courts to resolve." (citing 33 U.S.C. § 921 and *Zapata*, 933 F.2d at 258)).    This Circuit has taken care to avoid "commit[ting] to the state courts the decision of whether the LHWCA provided coverage to the employee.    To follow that course would thus deprive the federal courts of their proper role

---

(1972)); *United States Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc.*, 296 F. Supp. 2d 1322, 1338 (S.D. Ala. 2003) ("*Beneficial* removes all reasonable question as to whether complete preemption applies in a Carmack Amendment [Interstate Commerce Act] context.").

in resolving this important issue[.]" *Id.* Instead, the Court has upheld "Congress' intent that LHWCA coverage issues be resolved *in the first instance by the Department of Labor*[.]" *Id.* (emphasis added).[14]   Consequently, even if DBA coverage were at issue, this Court cannot remand to state court but must dismiss the case for further resolution at the DOL. *Id.* at 171.

IV.    **Decedents Are Covered by the DBA**

Rather than grapple squarely with the binding precedent of this Circuit and relevant portions of recent Supreme Court precedent, Plaintiff devotes a significant portion of its Motion to Remand to questions of coverage.   Specifically, Plaintiff argues that Decedents acted as independent contractors rather than employees, that the Decedents did not perform work that fell under the DBA, and that, as a result, the DBA does not apply.  Remand Mem. at 16.  Thus, as in *Shives,* Plaintiff "hop[es] that the LHWCA does not cover him because of his expectation of realizing a more beneficial recovery" through another cause of action.  151 F.3d at 170.

This Court need not make any coverage determination here: the DOL has already determined that two Decedents qualify as employees and are entitled to DBA benefits, and the Plaintiff's Complaint does not distinguish between Decedents with respect to the alleged facts underlying the causes of action in the Complaint.[15]  *See* Ex. 2, Attachs. B (*In re Teague*, Dept. of Labor Informal Conference, Case No. 02-135368 (Feb. 25, 2005) (finding that Mr. Teague died while working for Blackwater under circumstances bringing the death "within the purview of the LHWC Act . .  or an extension thereof" as antecedent jurisdictional threshold to resolving payments to natural son)) and A (*Zovko v. Blackwater Security Consulting*, Dept. of Labor Case

---

[14] The statute establishes the forum, timing, and procedures to challenge DOL decisions.  33 U.S.C. § 921; 42 U.S.C. § 1653(b).

[15] In the unlikely event that this Court deems additional coverage questions exist with respect to any Decedent, the case must be dismissed for those questions to be answered in the first instance by the DOL. *See Shives*, 151 F.3d at 167, 171.

No. 02-135369 (Oct. 18, 2004) Compensation Order (finding that "claimant, while performing service as an employee for the employer, sustained injuries resulting in his death and that such death comes within the purview of the" DBA)).[16]

Moreover, while Plaintiff says for purposes of this litigation that the DBA does not apply, the dependents of Messrs. Helvenston and Batalona applied to receive DBA benefits and, in fact, the dependents of all Decedents are receiving such benefits. Ex. 2, Attachs. C through G. "The courts that have reviewed this issue have uniformly held that an employer that secures insurance coverage for its employees as required by the DBA is entitled to immunity under the LHWCA." *Colon*, 223 F. Supp. 2d at 370 (citing *Davila-Perez*, 202 F.3d at 468-69); *see also Moore v. Phillips Petroleum Co.*, 912 F.2d 789, 791 (5th Cir. 1990) (compensation under the LHWCA is "an employee's exclusive remedy against the employer in its capacity as an employer").

But even if the Court needed to determine DBA coverage in order to rule that the state court may not have jurisdiction over this case, Plaintiff's assertions regarding coverage are demonstrably lacking in support. As an initial matter, the sole basis for Plaintiff's contention that Decedents are not employees is the service contracts. But the designation in a contract does not determine an employer's obligation to purchase DBA liability insurance and does not invalidate the Department of Labor's determination that an individual is a statutory employee. *See, e.g.*, Ex. 4, *Burbank v. K.G.S., Inc.*, 12 BRBS 776 (1980) (noting that employment

---

[16] Blackwater again requests that the Court take judicial notice of the prior administrative hearings and compensation orders. *See* Fed. R. Evid. 201; *cf. Clark v. BASF Salaried Employees' Pension Plan*, 329 F. Supp. 2d 694, 697 (W.D.N.C. 2004) ("[T]he district court may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment") (internal quotation marks and citation omitted); *Briggs v. Newberry County Sch. Dist.*, 838 F. Supp. 232, 234 (D.S.C. 1992) (considering and taking notice of, as part of a Rule 12(b)(6) motion to dismiss, the record of a prior administrative hearing), *aff'd*, 989 F.2d 491 (4th Cir. 1993); *Arizmendi v. Lawson*, 914 F. Supp. 1157, 1160-61 (E.D. Pa. 1996) ("[A] court may properly look beyond the complaint to matters of public record including court files, records and letters of official actions or decisions of government agencies and administrative bodies.") (citing cases).

relationship is a legal question and that the actual relationship for purposes of compensation does not turn on the parties' designation in a contract).  Furthermore, based on either of the primary legal tests that the Department of Labor actually employs to determine whether "an employer-employee relationship exists within the meaning of the [DBA,]" the Decedents are employees as a matter of law.[17]  Ex. 5, *Marinelli v. American Stevedoring, Ltd.*, BRB No. 99-1135 (Dep't of Labor Aug. 1, 2000) (*per curiam*).[18]

Plaintiff's allegation that Decedents did not perform work covered by the DBA is equally flawed.  In essence, Plaintiff claims that because it did not specifically allege that Regency and Blackwater carried out subordinate contracts on behalf of the United States, Decedents' work does not fall under 42 U.S.C. § 1651(a).  Remand Mem. at 16-17.[19]

Among other circumstances, the DBA covers injury or death:

under a contract entered into with the United States or any executive department, independent establishment, or agency thereof (including any corporate instrumentality of the United States), or any subcontract, or subordinate contract with respect to such contract, where such contract is to be performed outside the continental United States . . . for the purpose of engaging in public work . . . .

42 U.S.C. § 1651(a)(4).  The term "public work" includes "projects or operations under service contracts and projects in connection with the *national defense or with war activities* . . . ." *Id.*  §

---

[17] As a general rule, the "[r]esolution of factors as 'to whether an employment relationship or an independent contractor relationship was created' is 'a question of law.'" *Farlow v. Wachovia Bank*, 259 F.3d 309, 313 (4th Cir. 2001) (quoting *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 261 (4th Cir. 1997)) (considering question of employee status in a Title VII discrimination suit).  Consequently, Plaintiff's characterization of the relationship as an independent contractor relationship—*see* Remand Mem. at 16—does not constitute a factual allegation and certainly does not bind this Court in any way.

[18] The two primary tests include the "nature of the work test" and the "control" test.  *Marinelli, supra.*  Based solely on the agreements the Decedents signed, Ex. 6 (Decl. of David V. Jackson). Attach. A, and Plaintiff's Complaint, Decedents qualify as employees for purposes of the DBA as a matter of law under either standard.  *See also* Justin McQuown's Opposition to Plaintiff's Remand Motion at 6-8.

[19] Plaintiff constructs a straw man by assuming that Blackwater would argue DBA coverage only pursuant to § 1651(a)(6).  In its Notice of Removal, however, Blackwater *has already asserted DBA coverage pursuant to another subsection*—§ 1651(a)(4), which applies by its terms.  Notice of Removal ¶ 22.

1651(b)(1) (emphasis added); *see, e.g., Employers' Mut. Liab. Ins. Co. v. McLellan*, 304 F. Supp. 321, 323 (S.D.N.Y. 1969) (holding that transporting cargo and passengers to an overseas base was public work covered by DBA). Indeed, any "death in a war zone area . . . is sufficient to bring a claimant within the coverage provided by the [DBA]." *Page Communications Eng'rs, Inc. v. Arrien*, 315 F. Supp. 569, 571 (E.D. Pa. 1970).

The contract between Regency and Blackwater – by its terms a subcontract of the Regency-ESS contract – states that ESS provides "catering support services and design and build services *to US Armed Forces and other US contracting agencies in Iraq and Kuwait*." Ex. 1, Attach. at Intro. (emphasis added).[20]    Additionally, the Department of Defense agreed that the Decedents performed work in support of the United States by issuing travel orders to Helvenston and Teague "to provide services to the Coalition Provisional Authority." Ex. 6, Attach. B. Finally, the Complaint itself references Decedents traveling to escort three ESS flatbed trucks from U.S. Marine Base Camp Fallujah to U.S. Army Base Camp Ridgeway. Compl. ¶¶ 57-59. For all of the above reasons, among others, Decedents performed work covered by the DBA.

V.    **Federal Courts Have Jurisdiction Over Causes of Action that Implicate and Potentially Frustrate Significant Federal Interests.**

Notably, Plaintiffs do not even contest Blackwater's second ground for removal—that providing a stable and uniform construction of the DBA as the exclusive remedy for injury or death while working under federal prime, subcontracts, and subordinate contracts in support of national defense or other federal efforts overseas—represents a substantial federal interest and mandates federal jurisdiction.

---

[20] Again, the artful pleading doctrine allows the court to consider matters beyond the pleadings to determine federal jurisdiction. *Supra* Part II

In addition to complete preemption, "federal-question jurisdiction is appropriate when 'it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims.'" *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983)). The *Merrell Dow* Court noted that "[s]everal commentators have suggested that our § 1331 decisions can best be understood as an evaluation of the *nature* of the federal interest at stake." *Id.* at 814 n.12 (emphasis added).[21]  The Court eventually stated that "we have held that a few areas, involving uniquely federal interests . . . are so committed by the Constitution and laws of the United States to federal control that state law is pre-empted and replaced[.]" *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) (internal quotation marks and citation omitted).

In applying *Boyle*, courts have adopted a two-part analysis.  "First, the matter must involve a uniquely federal interest.  Determination of whether a significant federal interest exists in a dispute requires the court to ascertain whether the dispute touches the rights and duties of the United States." *Caudill v. Blue Cross & Blue Shield*, 999 F.2d 74, 78 (4th Cir. 1993).  Second, a "'significant conflict' must exist between the federal interest or policy and the effect of the state law, 'or the application of state law [must] frustrate specific policy objectives of federal legislation.'" *Id.* (quoting *Boyle*, 487 U.S. at 507) (internal quotation marks omitted) (alteration in original).

A.     **The Issue of Private Contractor Support of Military Operations Uniquely Touches on the Rights and Duties of the United States.**

With respect to the first prong, the United States' unique federal interest in the remedies available to individuals killed or injured working under federal prime, subcontracts, and

---

[21] *See also* 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 3722 (Supp. 2004) ("[T]he Court suggested that removal would continue to be proper . . . if [the plaintiff's] causes of action turned on . . . important federal issues.").

subordinate contracts in support of national defense or war zone efforts is both paramount and conspicuous. National defense and foreign affairs are not areas over which the states have authority or responsibility. U.S. Const. art. I, sec. 8; art. 2, sec. 2. The United States' reliance on private contractors such as Blackwater to support national defense efforts overseas is well publicized. Even prior to the current efforts in Iraq, the United States frequently utilized private contractors to provide security and support services in a variety of settings. "From 1994-2002, the US Defense Department entered into over 3,000 contracts with US-based firms, estimated at a contract value of more than $300bn." Ex. 7, Peter W. Singer, *Should Humanitarians Use Privatized Military Services?*, Humanitarian Aff. Rev. at 15 (Summer 2004). Given the reduction of the active duty military, federal contractors have become a critical and major component of National defense and foreign affairs.

In Iraq, for example, the United States utilizes private contractors in direct support of both military and diplomatic operations. "Private military employees handled everything from feeding and housing coalition troops to maintaining the US's most sophisticated weapons systems, like the B-2 stealth bomber. [The contractors] play even wider roles in the current occupation period, guarding key facilities and staff from terrorist and guerilla strikes and training the post-Saddam army, paramilitary, and police." *Id.* "More than 60 firms currently employ more than 20,000 private personnel [in Iraq] to carry out military functions . . . roughly the same number as are provided by all of the United States' coalition partners combined." Ex. 8, Peter W. Singer, *Outsourcing War*, 84 Foreign Aff. 119, 122 (2005).

The report of the Special Inspector General ("SIGIR") highlights the risk of injury or death to the numerous individuals working in support of United States efforts under federal prime or subcontracts:

Iraq's unsettled security environment continues to present grave risks for contractors and employees. As of December 31, 2004, 232 civilians working on U.S. contracts in Iraq have been killed, according to the Department of Labor. The challenging security environment hinders the ability of contractors to perform daily work and complete projects on time . . . . Attacks on sites, employees, and convoys related to IRRF reconstruction projects averaged 22 per week in this reporting period ending January 3, 2005.

Report to Congress, United States Special Inspector General for Iraq Reconstruction, at 52 (Jan. 30, 2005), *available at* http://www.cpa-ig.com/reports_congress.html (last accessed Mar. 6, 2005). The increased deaths have led to a dramatic increase in the number of claims filed to recover DBA benefits. "Since the SIGIR's October 30, 2004 Report, *the number of death claims filed has increased by over 93%.*" *Id.* at 2 (emphasis added).

Congress legislated the exclusive remedies available for such injuries or death, which Plaintiff seeks to circumvent through its state law claims. The United States itself recognizes the important federal interests in contractor support of its overseas efforts and need for uniformity in interpretation and application of the DBA. "[I]n response to congressional interest related to the reliance of the U.S. government and its contractors on private security contractors (PSCs) to provide security in the U.S. Central Command's area of responsibility, including Iraq[,]" the Government Accountability Office has undertaken an extensive and ongoing audit. *Id.* at 22. The risks inherent in government contracting in Iraq led the SIGIR to emphasize the "need for . . . personal protection[,] project site security[, and] *enforcement of legal requirements for workers' compensation insurance for those employed directly and indirectly by U.S. funds.*" *Id.* at 52 (emphasis added). As the Report discusses at 52-53, the DBA provides those legal requirements.

B.    **The United States Has an Interest In Maintaining a Uniform Compensation System  For Contractors Supporting United States Efforts Overseas.**

The second prong of *Caudill*, wherein the state law or its application must frustrate or conflict with the federal interest, is satisfied by the real possibility that contractors and their employees will be subjected to unpredictable and uncertain treatment in myriad state courts that have no jurisdiction over the interpretation or resolution of DBA issues: these courts may overlook, or even disregard, the exclusivity provisions of the DBA. *Caudill*, 999 F.2d at 79 (holding that "the mere possibility of conflict and any attendant damage to federal interests is sufficient to allow the federal common law to displace state law.").[22]   As the D.C. Circuit recognized many years ago, the purpose of the LHWCA, and by extension the DBA, was to provide "not only for employees a remedy which is expeditious and independent of proof of fault, but also for employers a liability which is limited and determinative.  Thus, anything that tends to erode the exclusiveness of either the liability of the recovery strikes at the very foundation of statutory schemes of this kind." *Coles*, 242 F.2d at 223.

As part of an analogous preemption analysis, the Supreme Court has discussed broader federal interests regarding consistency and the need to limit unpredictable state interference. *Beneficial Nat'l Bank*, 539 U.S. 1.  In finding that the National Bank Act completely preempted state usury actions, the Supreme Court considered the "special nature of federally chartered banks." *Id.* at 10 ("In addition to this Court's longstanding and consistent construction of the National Bank Act as providing an exclusive federal cause of action for usury against national banks, this Court has also recognized the special nature of federally chartered banks.").

---

[22] While Blackwater does not have to assert an immediate conflict to satisfy the second *Caudill* prong, the specter of state courts overlooking or disregarding Congressional intent with respect to the DBA by permitting state causes of action against military contractors—the very reason Plaintiff seeks to return to state court—is sufficient.

Specifically, the Court emphasized the need for uniformity and for state governments and courts not to interfere with the operation of federally-chartered banks. *Id.* at 10-11 ("Uniform rules limiting the liability of national banks and prescribing exclusive remedies for their overcharges are an integral part of a banking system that needed protection from 'possible unfriendly State legislation.'") (quoting *Tiffany v. National Bank of Mo.*, 18 Wall. 409, 412 (1874)). These concerns are all the more pressing when applied to the issues of foreign policy and national defense.[23]

All such overseas contracts in hostile areas rely on the current DBA system. Allowing state courts the opportunity to impose unpredictable and inconsistent liabilities on such private contractors would significantly undermine the government's interest in maintaining a uniform system of remedy and liability and render private contracts for work in Iraq cost prohibitive. Absent the certain and exclusive application of the DBA, Blackwater, as well as other contractors supplying similar services in war zones, would be forced either to discontinue providing such services or to increase prohibitively the cost of such contracts to the Government.

**VI.    Conclusion.**

For the aforementioned reasons, the Plaintiff's motion to remand and request for attorney's fees should be DENIED.[24]

---

[23] Even prior to *Beneficial*, the Court applied the federal interest analysis to conclude that the liability of "contractors performing work for the Federal Government, like the liability of federal officials, is an area of uniquely federal interest." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 505 n.1 (1988).

[24] Even if this Court were to grant Plaintiff's motion to remand, Plaintiff's claim for recovery of attorney's fees under 28 U.S.C. § 1447(c) is baseless. Recovery of costs, including attorney's fees, is appropriate only in cases of bad faith or where a "cursory examination" would have indicated the absence of federal jurisdiction. *In re Lowe*, 102 F.3d 731, 733 n.2 (4th Cir. 1996) (quoting *Husk v. E.I. Du Pont De Nemours & Co.*, 842 F. Supp. 895, 899 (S.D. W.Va. 1994)). As set forth above, Blackwater's argument in favor of removal is dictated by binding authority and is more than reasonable, particularly in light of *Beneficial*. Thus, in removing this case to federal court, Blackwater has "acted in apparent good faith on a colorable claim of removal," making an award of attorney's fees improper. *Griffin v. Holmes*,

This the 7th day of March, 2005.

WILEY REIN & FIELDING LLP

By: _____
Fred. F. Fielding
D.C. Bar No. 099296
Margaret A. Ryan
CO Bar No. 034687
1776 K Street NW
Washington, DC  20006
(202) 719-7000 (O)
(202) 719-7049 (F)


SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP

By: _____
Kirk G. Warner
N.C. State Bar No. 16238
Mark A. Ash
N.C. State Bar No. 13967
P.O. Box 2611
Raleigh, North Carolina 27602
(919) 821-1220 (O)
(919) 821-6800 (F)


*Attorneys for Blackwater Security
Consulting, LLC and Blackwater Lodge
and Training Center, Inc.*

---

843 F. Supp. 81, 88 (E.D.N.C. 1993); *accord Marler v. Amoco Oil Co.*, 793 F. Supp. 656, 660 (E.D.N.C. 1992).

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served the foregoing in the above-entitled action upon all other parties to this cause as follows:

Hand Delivered
David F. Kirby
William B. Bystrynski
Kirby & Holt, LLP
3201 Glenwood Avenue
Suite 100
Raleigh, North Carolina  27612
Attorneys for Plaintiff

U.S. Mail
Daniel J. Callahan
Brian J. McCormack
Marc P. Miles
Callahan & Blaine, APLC
3 Hutton Centre Drive, Suite 900
Santa Ana, California  92707
Attorneys for Plaintiff

U.S. Mail
Patricia L. Holland
Rachel Esposito
Cranfill, Sumner & Hartzog, LLP
P.O. Box 27808
Raleigh, NC  27611-7808
Attorney for Defendant Justin McQuown

U.S. Mail
Ralph J. Caccia
William C. Crenshaw
Don R. Berthiaume
Powell & Goldstein, LLP
901 New York Avenue, NW
Third Floor
Washington, DC  20001-4413
Attorney for Defendant Justin McQuown

This the 7th day of March, 2005.

Kirk G. Warner