IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO. 5:05-CV-48-FL(1)



| | | |
|---|---|---|
| RICHARD P. NORDAN, as Ancillary Administrator for the separate Estates of STEPHEN S. HELVENSTON, MIKE R. TEAGUE, JERKO GERALD ZOVKO and WESLEY J. K. BATALONA, | ) ) ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) ) | |
| | ) | MEMORANDUM OF LAW IN REPLY |
| BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited Liability Company; BLACKWATER LODGE AND TRAINING CENTER, INC., a Delaware Corporation, JUSTIN L. McQUOWN, an individual; and THOMAS POWELL, an individual, | ) ) ) ) ) ) ) ) | TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS |
| | ) | |
| Defendants. | ) ) | |

      Pursuant to Federal Rules 12(b)(6) and 9(b), as well as E.D.N.C. Local Rule 7.1(e), Defendants

Blackwater Security Consulting, LLC, and Blackwater Lodge and Training Center, Inc. ("Blackwater")

submit this Memorandum of Law in Reply to Plaintiff's Opposition to the Motion to Dismiss.

      The Plaintiff's Opposition ("Opp.") seeks to evade the import of its Complaint and the operative

documents upon which the Complaint rests, ignores binding precedent that the case must be dismissed,

and provides the Court with no basis to deny Blackwater's Motion. For the reasons set forth below and as

detailed in Blackwater's Memorandum in Support of Motion to Dismiss ("Mem. to Dismiss") and

Opposition to Plaintiff's Motion to Remand ("Remand Opp."), Plaintiffs' Complaint must be dismissed. [1]

---

[1] To the extent that Plaintiff disputes the applicability of the Defense Base Act, dismissal by this Court is nonetheless mandated since Plaintiff may not deviate to State court, but rather must first exhaust any coverage question before the DOL. *See Shives v. CSX Transp., Inc.* 151 F.3d 164, 171 (4th Cir. 1998).

Dockets.Justia.com

**I.    The Court Must Consider the Contracts Upon Which the Complaint Relies.**

The Complaint and the contracts cited therein establish that Plaintiff claims relief for "injury or death" of persons engaged in support of a "subcontract, or subordinate contract" with the United States Government for "public work" outside of the continental United States. 42 U.S.C. § 1651(a)(4).  Compl. ¶¶ 12, 18-22, 30-32, 68-79.  Claims for injury or death arising out of DBA covered employment warrant dismissal. *See* Mem. to Dismiss at 6-8; Remand Opp. at 12-13.[2]

Plaintiff's Opposition suggests that the Court must accept its legal conclusion that the DBA does not apply by making unreasonable inferences from the facts in its Complaint.  Plaintiff also argues that the Court may not consider the specific language of the contracts upon which its Complaint rests without converting the Motion to Dismiss into a Motion for Summary Judgment.  Plaintiff misapprehends the law.

**A.    A Court Need Not Accept Legal Conclusions or Unreasonable Inferences.**

As Blackwater stated in its Mem. to Dismiss at 4-12, the Complaint fails to state a claim upon which relief may be granted, and dismissal under 12(b)(6) is warranted.  Plaintiff cites *Rogers v. Jefferson-Pilot Life Insurance Co.*, 883 F.2d 324, 325 (4th Cir. 1989), to assert that a court should not grant a Rule 12(b)(6) motion unless "there is a certainty that the Plaintiff can in no way prevail."  Opp. at 12.  While a court must "accept[] as true all *well-pleaded* allegations," *N.C. Motorcoach Ass'n v. Guilford County Bd. of Educ.*, 315 F. Supp. 2d 784, 800 (M.D.N.C. 2004) (emphasis added), "a court cannot be shackled from granting a motion to dismiss merely because [Plaintiff] propounds a legal conclusion, where the defects of that conclusion are conspicuous from the facts asserted." *Faulkner Adver. Assoc.,*

---

[2] *See, e.g., Shives*, 151 F.3d at 171 (dismissing action for administrative resolution); *Vogelsang v. Western Md. Ry. Co.*, 670 F.2d 1347, 1348 (4th Cir. 1982) (*per curiam*) (affirming district court's dismissal of Plaintiff's alternative FELA claim against employer because of LHWCA exclusivity); *Davila-Perez v. Lockheed Martin Corp.*, 202 F.3d 464, 467-68 (1st Cir. 2000) (holding that the DBA entitles employer "to immunity from tort claims" from survivors); *Ocean-Drilling & Exploration Co. v. Berry Bros. Oilfield Serv. Inc.*, 377 F.2d 511, 514-15 (5th Cir. 1967) (affirming dismissal of tort claims under LHWCA); *Pulley v. Peter Kiewit Son's Co.*, 223 F.2d 191, 193-94 (7th Cir. 1955) (affirming DBA dismissal of tort claims).

*Inc. v. Nissan Motor Corp.*, 945 F.2d 694, 695 (4th Cir. 1991) (per curiam).[3]   To survive a 12(b)(6)

motion, the pled facts have to "'support [Plaintiff's] claim and . . . entitle it to relief.'"  *Sheaffer v. County*

*of Chatham*, 337 F. Supp. 2d 709, 717 (M.D.N.C. 2004) (quoting *Mylan Labs. Inc. v. Matkari*, 7 F.3d

1130, 1134 (4th Cir. 1993)).   The pled facts here support DBA preemption and express contractual

waiver.  Plaintiff may not circumvent the plain language of the contract via unwarranted inferences and

legal conclusions.

### B.    Plaintiff Cannot Avoid Dismissal by Failing To Append Operative Documents.

Plaintiff requests that the Court ignore the contracts that are the heart of its Complaint and that

also constitute the very agreements it attempts to rescind.[4]  Opp. at 20-23.  Alternatively, Plaintiff argues

that consideration of such documents converts the motion to dismiss into one for summary judgment.  *Id.*

at 23-25.  The law provides that the Court should consider the contracts in ruling on this motion to

dismiss.

"[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, *but the*

*document is referred to in the complaint and is central to the plaintiff's claim*, a defendant may submit an

indisputably authentic copy to the court to be considered on a motion to dismiss."  *Synergy Fin., L.L.C. v.*

*Zarro*, 329 F. Supp. 2d 701, 704 (W.D.N.C. 2004) (quoting *GFF Corp. v. Associated Wholesale Grocers,*

*Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997)) (emphasis added).  This exception prevents "a plaintiff

with a legally deficient claim [from] surviv[ing] a motion to dismiss simply by failing to attach a

dispositive document [on] which [it] relied."  *GFF Corp.*, 130 F.3d at 1385.[5]

---

[3] "While [the Court] must take the facts in the light most favorable to the plaintiff, [it] need not accept the legal conclusions drawn from the facts . . . [nor] accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'shp*, 213 F.3d 175, 180 (4th Cir. 2000) (internal citations omitted).

[4] Authenticated copies of the operative contracts are attached as exhibits to the Declarations of Gary Jackson and David V. Jackson (filed Mar. 7, 2005) to address Plaintiff's technical objection.

[5] "When a complaint *relies on a document* [], the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished."  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*  998 F.2d 1192, 1196-97 (3d Cir. 1993) (emphasis added); *see also Am.*

The subcontracts and service agreements are central to Plaintiff's claims. Moreover, Plaintiff not only relies on alleged misrepresentations regarding the contracts as the basis for its allegations but also attempts to rescind the very service contracts it asks the Court not to consider.[6] *See* Opp. at 24. The Court must reject this request. "Plaintiff['s] failure to include matters of which as pleaders [it] had notice and which were integral to [its] claim – and that it apparently most wanted to avoid — may not serve as a means of forestalling the district court's decision on the motion." *Cortec Indus., Inc. v. Sun Holding L.P.,* 949 F.2d 42, 44 (2d Cir. 1992); *see also GFF Corp.,* 130 F.3d at 1385 ("When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and [the] rationale for conversion to summary judgment dissipates."); *In re FAC Realty Secs. Litig.* 990 F. Supp. 416, 420 (E.D.N.C. 1997) (holding that documents not attached or incorporated by reference but whose alleged contents are relied on to establish fraud should be considered under Rule 12).[7]

## II.    Plaintiff's Legal Conclusion that the DBA Does Not Apply Is Belied by Facts in Its Complaint and by the Operative Documents Cited Therein.

The effect and force of the DBA are covered in depth in prior pleadings. *See* Remand Opp. at 2-13; Mem. to Dismiss at 4-8. Plaintiff, "hoping that the [DBA] does not cover him because of his expectation of realizing a more beneficial recovery" through another cause of action, *Shives,* 151 F.3d at 170, argues that that the Decedents did not perform work that fell under the DBA, that Decedents acted as independent contractors rather than employees, and that, as a result, the DBA does not apply. Opp. at 14-

---

*Chiropractic Ass'n v. Trigon Healthcare, Inc.* 367 F.3d 212, 234 (4th Cir. 2004) (considering contract explicitly referred to in the complaint and used to support fraud claims).

[6] *See, e.g.,* Compl. ¶¶ 18-32, 81-83.

[7] Neither Plaintiff's Opposition brief nor its Evidentiary Objection *disputes* the "authenticity" of the attached contracts. *See* Opp. at 22; Pl. Evid. Obj. at 2. They merely raise technical evidentiary objections, which have been addressed. *See* Decls. of Gary Jackson and David V. Jackson (filed Mar. 7, 2005). The Court should consider these documents in ruling on the motion to dismiss.

18. However, the DOL has already determined that two Decedents are entitled to DBA benefits. *See* Remand Opp. at 14 n. 16.[8]

### A.    The DBA Applies to the Decedents' Work.

The term "public work" includes "projects or operations under service contracts and projects in connection with the *national defense or with war activities* . . . ." 47 U.S.C. § 165(b)(1) (emphasis added). Consistent with the Supreme Court's "expansive view of the extended coverage," *see Shives*, 151 F.3d at 169, any "death in a war zone area . . . is sufficient to bring a claimant within the coverage provided by the [DBA]." *Page Communications Eng'rs, Inc. v. Arrien*, 315 F. Supp. 569, 571 (E.D. Pa. 1970). Based on the allegations in the Complaint, Decedents died under precisely such circumstances.

The Complaint itself describes how the Decedents escorted three ESS flatbed trucks from U.S. Marine Base Camp Fallujah to U.S. Army Base Camp Ridgeway in Iraq. Compl. ¶¶ 57-59. The only reasonable inference from the facts set forth in the Complaint and the operative contracts on which the Complaint relies is that Decedents were providing security services to ESS on behalf of an ESS government subcontract or subordinate contract in support of the United States.[9] Indeed, the subcontract between Blackwater and Regency to provide security services to ESS explicitly states that ESS provides "catering support services and design and build services *to US Armed Forces and other US contracting agencies in Iraq and Kuwait.*" Decl. of Gary Jackson (filed Mar. 7, 2005) (emphasis added).

### B.    Decedents Were Employees for Purposes of DBA Coverage.

Plaintiff's legal conclusion that Decedents are not statutory employees is based solely on the designation in the very service contracts it asks the Court not to consider. Neither Plaintiff's legal

---

[8] *See also* Decl. of Keith Flicker (filed Mar. 7, 2005), Attachs. A and B. Even if a contested issue existed with respect to coverage for the two Decedents as to whom DOL has not yet made an affirmative determination, Plaintiff must first exhaust any coverage question before the DOL. *Shives*, 151 F.3d at 167, 171. In either event, dismissal is warranted.

[9] Escorting essential support equipment between military bases in a war zone and driving to the Post Office in New Bern, North Carolina, are logically distinct activities and carry vastly different implications. *See Eastern Shore Mkts.*, 213 F.3d at 180 (stating that a court does not have to "accept as true unwarranted inferences, unreasonable conclusions, or arguments" when evaluating a Rule 12(b)(6) motion) (internal citations omitted); Opp. at 16-17; Decl. of Gary Jackson (filed Mar. 7, 2005).

conclusion nor the designation in a service contract—both contrary to the determination by DOL—bind this Court. Remand Opp. at 15 n.17.

The two primary legal tests employed by the DOL to determine whether "an employer-employee relationship exists within meaning of the [DBA,]" are the "nature of the work" test and the "control" test. Ex. 1, *Marinelli v. American Stevedoring, Ltd.*, BRB No. 99-1135 (Dep't of Labor Aug. 1, 2000) (per curiam). Whether by reference to the Complaint, *see* Justin McQuown Remand Opp. at 6-8, or to the service contracts themselves, Decedents were employees as a matter of law under either test; the DOL's conclusion was inescapable.[10]

### C.    Allegations of Willful and Wanton Misconduct Do Not Circumvent the DBA.

*Contra* Plaintiff, Opp. at 18-20, the DBA is the exclusive remedy for injuries resulting from "gross, *wanton*, *willful*, deliberate, *intentional*, *reckless*, culpable, or malicious *negligence*, breach of statute, or *other misconduct* of the employer short of genuine intentional injury." *Austin v. Johns-Manville Sales Corp.*, 508 F. Supp. 313, 316 (D. Me. 1981) (citing 2A Larson, *Workmen's Compensation Law* § 68.13 at 13-5 & n.11 (1976)) (emphasis added). The Complaint does not allege intentional *injury*, but rather reckless, "intentional, willful and wanton *conduct*, and/or negligence[.]" Compl. ¶ 71 (emphasis added). Insertion of the adjective "intentional," read in the context of the Complaint, neither alleges nor raises the reasonable inference that Defendants acted with the specific intent *to kill* Decedents. Rather, the Complaint alleges that "Iraqi insurgents" intended to and did murder Decedents, *id.* ¶ 12, and

---

[10] The "control" test considers "'who has the power to control and direct the servants in the performance of their work.'" *White v. Bethlehem Steel Corp.*, 222 F.3d 146, 149 (4th Cir. 2000) (quoting *Standard Oil Co. v. Anderson*, 212 U.S. 215, 221-22 (1909)). *See, e.g., Decl. of David V. Jackson*, Attach. A (Service Agreements) ¶ 16.1 ("BSC may terminate this Agreement . . . without notice at any time with or without cause without advance notice for any reason or no reason whatsoever."); *id.* ¶ 3.2 (stating that Blackwater "will provide certain equipment and weapons in connection with the Engagement."); *id.* ¶ 6 ("Work hours . . . will be scheduled at the sole discretion of BSC . . . ."). Relatedly, the "nature of the work" test considers "two distinct areas: the nature of the claimant's work and the relation of that work to the alleged employer's regular business." *American Stevedoring Ltd. v. Marinelli*, 248 F.3d 54, 62-63 (2d Cir. 2001). Blackwater regularly provides the exact kind of work the Decedents performed at the time of their death, namely security services in support of the U.S. military and other U.S. government agencies.

that Blackwater *intentionally disregarded* the health and safety of the Decedents by sending them into an area of "very high-risk . . . without adequate protection." *Id.* ¶¶ 69-71.

The "overwhelming weight of authority" precludes designation of these allegations in the complaint as "intentional" killing. *Austin*, 508 F. Supp. at 316; *see also Sample v. Johnson*, 771 F.2d 1335, 1346 (9th Cir. 1985) (recognizing that the "term 'intentional' is construed very strictly where a workers' compensation statute exists [and] cannot . . . be stretched" to include "intentional" or "willful" misconduct or disregard) (citing 2A Larson, § 68.13 at 13-8–13-9) (1984)); *Roy ex rel. of Charlot v. Bethlehem Steel Corp.* 838 F. Supp. 312, 316 (E.D. Tex. 1993) (holding that gross or reckless misconduct "cannot extrapolate [employer's] actions into intent, [absent] . . . evidence that [employer] *intentionally injured or killed* [employee]") (emphasis added).

Plaintiff provides no relevant precedent to puncture DBA exclusivity. Opp. at 19. Plaintiff's reference to *Bowen*, and the cases cited therein, are inapposite. They involve employee suits against their employers' *insurers* for *intentional termination of DBA benefits*. *See Bowen v. Aetna Life and Casualty Co.*, 512 So. 2d 248, 249 (Fla. App. 1987). Plaintiff makes no allegation in its Complaint that DBA benefits, which are being paid to all dependents, have been terminated. *See* Remand Opp. at 13-14; Decl. of Keith Flicker (filed Mar. 7, 2005), Attachs. C-G.

## III. The Service Contracts Preclude the Claims Alleged Here.

Plaintiff concedes that Decedents' service contracts with Blackwater identified the inherent dangers, assumed the risk, released Blackwater "from any and all claims," and covenanted not to file any claims with respect to injury or death arising out of the performance of services. *See* Mem. to Dismiss at 9-12. As discussed *supra* at 2-4, Plaintiff cannot avoid these express contractual terms by refusing to attach the service contracts to its Complaint. Furthermore, Plaintiff has failed to plead fraud in the inducement under North Carolina law as acknowledged by this Circuit, and has failed to meet this Circuit's basic standards of particularity in fraud pleading. *Infra* at 8-10. Therefore, this Court should consider the express waivers and provisions set forth in the Contract and dismiss this case under Rule 12(b)(6). *In re FAC Realty Sec. Litig.*, 990 F. Supp. at 420.

**IV.    Plaintiff Does Not Address the Deficiencies of Its Fraud in the Inducement Claim.**

Not only did the Decedents sign contracts that waived the right to bring fraudulent inducement claims, but Plaintiff fails to satisfy North Carolina's "narrow scope" and "heightened pleading requirements" for fraud in the inducement. *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 594 (M.D.N.C. 2003) (dismissing fraudulent inducement claim) (citations omitted).  The mere fact that there are fifty-five paragraphs of general allegations has no bearing on the elements and particularity requirements of fraud pleading.  Opp. at 26.

**A.    The Alleged Failure To Honor Obligations Does Not State Fraud in the Inducement.**

Plaintiff completely ignores Blackwater's point that the law of this circuit precludes a fraudulent inducement claim that simply "assert[s] that [a defendant] never intended to honor its obligations." *Strum v. Exxon Co., U.S.A.*, 15 F.3d 327, 331 (4th Cir. 1994).  Plaintiff alleges that the Defendants failed to honor promises made to Decedents. Compl. ¶¶ 85-86.  However, "[t]he mere failure to carry out a promise in contract" cannot support a fraud action under North Carolina law. *Strum*, 15 F.3d at 331.

As the United States District Court for the Western District of North Carolina recently explained:

> [W]here a plaintiff does "nothing more than assert that [a promissor] never intended to honor its obligations under [an] agreement," dismissal as a matter of law is appropriate. [F]raud is a much overused and misused cause of action. Its abuse has been fueled by the access it provides to otherwise unavailable discovery and to punitive damages. Its misuse has been exacerbated by [the] embrace of the "promissory" form of fraud whereby a promise made with no intent to perform is deemed actionable as fraud.

*Norman*, 286 F. Supp. 2d at 594 (citations omitted).

Contrary to Plaintiff's representation, the Complaint has not adequately stated a cause of action for fraudulent inducement.  The Complaint outlines a series of alleged verbal promises regarding security protections made to Decedents during service contract negotiations and merely claims that Blackwater "had no intention of and would not provide [them these] protections, tools, and information." Compl. ¶¶ 84-85.  The Complaint supports this assertion of fraudulent inducement with a corresponding outline of Blackwater's supposed failure to follow through on each of these assurances. *Id.* ¶ 86 ("Blackwater failed to provide . . .").  "Such an argument misses the crucial point, that in order to be liable for fraud, the

promissor must do something *more* than just disregard or break its promises . . . ." *Norman*, 286 F. Supp. 2d at 595; *see also* Ex. 2, *American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, No. 03-10179, 2004 WL 2297150, at *4 (5th Cir. 2004) (holding that alleged false representations made during negotiations "do[ not] set forth any 'specific facts' to support the inference of fraud"). Plaintiff has not alleged any facts that, even if accepted as true, allow the inference that *any* alleged promissor had a specific intent to break *any* alleged promise at the time it was made. *Id.*[11] Accordingly, Count Two must also be dismissed for failure to state a claim.

### B.    Plaintiff Fails To Plead Fraud with Sufficient Particularity.

Plaintiff incorrectly asserts that it may avoid this Circuit's most *basic* requirements for pleading fraud by not describing the "where" and "when" of the alleged fraudulent statements.[12]

Plaintiff concedes that the Complaint does not provide the "place" for the alleged fraudulent misrepresentations. Opp. at 27. Plaintiff asserts that alleging that false representations were made "during the negotiation" of the service contracts is a sufficient particularization of "time." *Id.* at 26-30. Plaintiff is wrong. Alleging "that a defendant made false statements during 'negotiations leading up to' an event for the purpose of inducing someone to enter into a contract with him--without any additional factual support--*does not allege the particular time* and *place* of the false representations. . . ." Ex. 2, *American Realty Trust*, 2004 WL 2297150, at *4 (emphasis added); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (dismissing complaint for not stating place and time of

●    ───────────────────

[11] *See also Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489-90 (6th Cir. 1990) (stating that to survive motion to dismiss on fraud claim the plaintiff must plead a particular statement of facts upon which his belief of fraudulent intent is based); *Stewart-Warner Corp. v. Remco, Inc.*, 205 F.2d 583, 587 (7th Cir. 1953) ("fraud in the inducement must be based upon a misrepresentation of fact and cannot rest on a false promise to do an act in the future, even though accompanied by an intention not to perform") (internal quotation omitted).

[12] To minimize these requirements, Plaintiff cites to a Third Circuit case involving different circumstances and in conflict with the majority of circuits, including the Fourth. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citing 5B Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 590 (2d ed. 1990)); *U.S. ex rel. Wilkins v. North Am. Constr. Corp.*, 173 F. Supp. 2d 601, 615-16 (S.D. Tex. 2001) (noting that only the Third and Eleventh Circuits recognize time and place exceptions to the specific fraud requirements).

representations); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992) (stating that the standard "at minimum, requires a plaintiff to identify the time and place of the alleged predicate acts").

**V.      Conclusion**

       For the aforementioned reasons, as well as Blackwater's prior pleadings, Plaintiff has failed to state any claim for which relief may be granted. Consequently, Blackwater requests that the Court dismiss Plaintiff's suit pursuant to Fed. R. Civ. P. 12(b)(6).

This the 11th day of March, 2005.

WILEY REIN & FIELDING LLP

By: _____
       Fred. F. Fielding
       D.C. Bar No. 099296
       Margaret A. Ryan
       CO Bar No. 034687
       1776 K Street NW
       Washington, DC  20006
       (202) 719-7000 (O)
       (202) 719-7049 (F)

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP

By: _____
       Kirk G. Warner
       N.C. State Bar No. 16238
       Mark A. Ash
       N.C. State Bar No. 13967
       P.O. Box 2611
       Raleigh, North Carolina 27602
       (919) 821-1220 (O)
       (919) 821-6800 (F)

*Attorneys for Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served the foregoing in the above-entitled action upon all other parties to this cause by facsimile and U.S. Mail, addressed to the following parties:

> David F. Kirby
> William B. Bystrynski
> Kirby & Holt, LLP
> 3201 Glenwood Avenue
> Suite 100
> Raleigh, North Carolina  276212
> *Attorneys for Plaintiff*
>
> Daniel J. Callahan
> Brian J. McCormack
> Marc P. Miles
> Callahan & Blaine, APLC
> 3 Hutton Centre Drive, Suite 900
> Santa Ana, California  92707
> *Attorneys for Plaintiff*
>
> Patricia L. Holland
> Rachel Esposito
> Cranfill, Sumner & Hartzog, LLP
> P.O. Box 27808
> Raleigh, NC  27611-7808
> *Attorney for Defendant Justin McQuown*
>
> Ralph J. Caccia
> William C. Crenshaw
> Don R. Berthiaume
> Powell & Goldstein, LLP
> 901 New York Avenue, NW
> Third Floor
> Washington, DC  20001-4413
> *Attorney for Defendant Justin McQuown*

This the ___11th___ day of March, 2005.

Kirk G. Warner

 **U.S. Department of Labor**

**Benefits Review Board**



*www.dol.gov/brb*

 Search / .

Find It!: By Topic | By Audience | By Top 20 Requested Items | By Form | By Organization | E

**March 7, 2005**    DOL Home > BRB Home

BRB No. 99-1135

VICTOR MARINELLI                          )
                                          )
      Claimant-Respondent              )
                                          )
    v.                                    )
                                          )
AMERICAN STEVEDORING, LIMITED             )    DATE ISSUED:    <u>08/01/2000</u>
                                          )
                                          )
      Self-Insured                     )
      Employer-Petitioner              )
                                          )
DIRECTOR, OFFICE OF WORKERS'              )
COMPENSATION PROGRAMS,                    )
UNITED STATES DEPARTMENT                  )
`F LABOR                                  )
                                          )
      Party-in-Interest                )    DECISION and ORDER

    Appeal of the Interim Decision and Order on Jurisdiction and the Decision and Order of Ralph A. Romano, Administrative Law Judge, United States Department of Labor.

    Philip J. Rooney (Israel, Adler, Ronca & Gucciardo), New York, New York, for claimant.

    Lawrence P. Postol (Seyfarth, Shaw, Fairweather & Geraldson), Washington, D.C., for self-insured employer.

    Before: HALL, Chief Administrative Appeals Judge, SMITH, Administrative Appeals Judge, and NELSON, Acting Administrative Appeals Judge.

    PER CURIAM:

    Employer appeals the Interim Decision and Order on Jurisdiction and the Decision and Order (97-LHC-2580) of Administrative Law Judge Ralph A. Romano rendered on a claim filed pursuant to the provisions of the Longshore and Harbor Workers' Compensation Act, as amended, 33 U.S.C. §901 *et seq.* (the Act). We must affirm the findings of fact and conclusions of law of the administrative law judge if they are rational, supported by substantial evidence, and in accordance with law. *O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc.,* 380 U.S. 359 (1965); 33 U.S.C. §921(b)(3).

    Claimant worked as a shop steward at employer's facility where he mediated labor-management disputes, and received his wages from employer pursuant to the collective bargaining agreement between employer and the union. After engaging in

a dispute with some of the workers, claimant, on March 16, 1997, experienced chest pain and passed out after taking nitroglycerin tablets, striking his head. ⌐aimant was taken to a hospital and underwent a cardiac catherization. He was ⌐ischarged on March 18, 1997, and thereafter treated with medication. It is undisputed that claimant, who has not returned to work since this incident, suffered from pre-existing coronary artery disease, previously underwent a coronary bypass procedure in 1989, and had been suffering from chest pain for three years before the incident occurred. Subsequent to March 16, 1997, claimant began treatment for psychological symptoms. Claimant filed a claim for permanent total disability compensation, contending that stressful conditions at his employment aggravated his underlying heart and psychological conditions.

In his Interim Decision and Order on Jurisdiction, the administrative law judge found that as employer is required to pay claimant's wages pursuant to the collective bargaining agreement, an employer-employee relationship existed between claimant and employer. The administrative law judge further found that claimant's job duties as a shop steward were an integral part of employer's stevedoring business, and therefore claimant was a covered maritime employee under Section 2(3) of the Act, 33 U.S.C. §902(3). In his Decision and Order on the merits, the administrative law judge first found that claimant was entitled to invocation of the presumption at Section 20(a) of the Act, 33 U.S.C. §920(a), and that employer established rebuttal of the presumption based on the opinion of Dr. Israel. The administrative law judge thereafter credited the opinions of Drs. Konka, Lomazow and Mannucci, over the contrary opinions of Drs. Israel and Head, to find that claimant's work stress aggravated his underlying cardiac condition and caused adverse psychiatric consequences. After finding that claimant is unable to return to his usual employment, the administrative law judge awarded claimant permanent total disability compensation under the Act, 33 U.S.C. §908(a), and medical benefits, 33 U.S.C. §907.[1]

On appeal, employer challenges the administrative law judge's award of benefits. Specifically, employer contends that the administrative law judge erred in finding that it, and not claimant's union, was claimant's employer, and in finding that claimant satisfied the status requirement for coverage under the Act. Employer further challenges the administrative law judge's findings regarding causation and the nature and extent of claimant's disability, contending that claimant's symptoms were not caused or aggravated by his employment, but rather, were due to his underlying heart condition, and that claimant is not permanently and totally disabled. Employer further contends that the administrative law judge's analysis does not comply with the requirements of the Administrative Procedure Act (APA), 5 U.S.C. §557(c)(3)(A). Claimant responds, urging affirmance of the administrative law judge's decisions, and requesting an attorney's fee for work performed before the Board in the instant appeal. Employer replies, reiterating its arguments on appeal, and objecting to the fee petition as it fails to state who performed the work and his qualifications.

The threshold issue presented by the instant appeal is whether the administrative law judge erred in finding that claimant was an employee of employer on March 16, 1997. In the instant case, claimant worked for many years on the waterfront as a safety man before being appointed shop steward by the union in 1986 or 1987. He was later elected to this position by the union members. See April 23, 1998 Tr. at 20; January 29, 1999 Tr. at 91. It is undisputed that, pursuant to the collective bargaining agreement between employer and the union, employer paid claimant's wages. See April 23, 1998 Tr. at 112. Claimant ⌐estified that his chief duty as shop steward was to mediate labor disputes between management and the workers, which often concerned work safety issues and staffing shortages. Id. at 21-33. He had an office on employer's premises and would be present on the pier and on board vessels to talk to workers and management, but

he was paid as long as a ship was being worked regardless of his presence at
employer's facility. *Id.* at 32-33, 112, 116. He would often go to Frank
rdan, the assistant terminal manager or to Sabato Catucci, employer's owner, to
voice the workers' complaints, specifically when work crews were not fully manned.
Claimant testified, however, that in some disputes he sided with management
regarding the enforcement of work rules. *Id.* at 41, 66-67, 76. Mr. Catucci
testified that he had no control over when claimant arrived and left the work site,
nor did he have control over claimant's work activities. *Id.* at 110.

In rendering his determination in the instant case, the administrative law
judge reasoned that the most significant factor in his analysis of whether an
employer-employee relationship existed between employer and claimant was that
employer was required to pay claimant's salary in accordance with the existing
collective bargaining agreement. The administrative law judge further found that
employer, a stevedoring company, was a statutory employer under Section 2(4) of the
Act, 33 U.S.C. §902(4),[2] and that whether
claimant's job duties as a shop steward were under the control of the union has no
bearing on the analysis, as he was engaged in maritime employment and therefore was
a covered maritime employee. *See* 33 U.S.C. §902(3) and discussion,
*infra*. Thus, the administrative law judge found that claimant was an
employee of employer by reason of its contract with the union. *See* Interim
Decision and Order on Jurisdiction at 4. On appeal, employer asserts that since
it had no control over claimant's job duties, it is not claimant's employer and
thus is not liable for any compensation liability.

Section 2(2) of the Act defines the term "injury" as follows:

The term "injury" means accidental injury or death arising out of and in
the course of employment, and such occupational disease or infection as
arises naturally out of such employment or as naturally or unavoidably
results from such accidental injury, and includes an injury caused by
the willful act of a third person directed against an employee because
of his employment.

33 U.S.C. §902(2). Thus, for a claim to be compensable under the Act, the
injury must arise out of and in the course of employment; therefore, an employer-employee relationshi
the time of the injury. *See Clauss v. Washington Post Co.*, 13 BRBS 525
(1981), *aff'd mem.*, 684 F.2d 1032 (D.C. Cir. 1982). Generally, the Board
has applied three tests to determine whether an employer-employee relationship
exists within the meaning of the Act: (1) the relative nature of the work, (2) the
right to control details of the work, and (3) those listed in the Restatement
(Second) of Agency, Section 220, subsection 2, which encompasses factors set forth
in each of the other two tests.[3] The
administrative law judge should apply whichever test is best suited to the facts
of the particular case. *See Herold v. Stevedoring Services of America*, 31
BRBS 127 (1997); *Reilly v. Washington Metropolitan Area Transit Authority*,
20 BRBS 8 (1987); *Tanis v. Rainbow Skylights*, 19 BRBS 153 (1986). Where the
administrative law judge's application of one test is affirmable, the Board need
not address the administrative law judge's application of the other tests. *See
Holmes v. Seafood Specialist Boat Works*, 14 BRBS 141 (1981).

After consideration of employer's contentions on appeal, we affirm the
dministrative law judge's finding that employer was claimant's employer at the
.me of the injury, as it is supported by substantial evidence. Contrary to
employer's argument, the instant case does not concern the borrowed employee
doctrine, *see Total Marine Services, Inc. v. Director, OWCP*, 87 F.3d

774, 30 BRBS 62 (CRT)(5th Cir. 1996), *reh'g en banc denied*, 99 F.3d 1137
(5th Cir. 1996); *Ricks v. Temporary Employment Services, Inc.*, 33 BRBS 81
'999), or whether claimant is an independent contractor.[4]    *See* Restatement (Second) of Agency, §
ɔituations, the issue of control over the details of the work may be of paramount
concern.  By contrast, the issue here concerns whether claimant was an employee of
the stevedoring company or his union.  In his analysis, the administrative law
judge applied neither the "right to control the details of the work" test nor the
"relative nature of the work" test.  Rather, the administrative law judge
considered two factors listed in the Restatement of Agency, the method of payment
and the extent of control over the details of work, and determined that the fact
that claimant received his wages from employer pursuant to a collective bargaining
agreement under which employer was bound outweighed any consideration of which
entity, employer or the union, controlled the details of claimant's work.  As the
administrative law judge acted within his discretion in finding that the method of
claimant's payment of wages indicated that employer was his employer, we affirm the
administrative law judge's finding that employer, not claimant's union, was
claimant's employer at the time of the injury based on the administrative law
judge's application of relevant factors listed in the Restatement of Agency.
*See, e.g., Herold*, 31 BRBS at 129.
    We next consider employer's contention that the administrative law judge erred
in finding that claimant satisfied the status element for coverage under the Act.
To be covered under the Act, a claimant must satisfy the "status" requirement of
Section 2(3) , and the "situs" requirement of Section 3(a). *See Northeast Marine
Terminal Co., Inc. v. Caputo*, 432 U.S. 249, 6 BRBS 150 (1977).  Section 2(3)
defines an "employee" for purposes of coverage under the Act as "any person engaged
in maritime employment, including any longshoreman or other person engaged in
longshoring operations, and any harbor-worker including a ship repairman,
ˈhipbuilder and ship-breaker . . . ."  33 U.S.C. §902(3).  An employee is
ᴜngaged in maritime employment as long as some portion of his job activities
constitutes covered employment.  *Caputo*, 432 U.S. at 275-276, 6 BRBS  at
166.  While maritime employment is not limited to the occupations specifically
enumerated in Section 2(3), claimant's employment must bear an integral
relationship to the loading, unloading, building or repairing of a vessel. *See
generally Chesapeake & Ohio Ry. Co. v. Schwalb*, 493 U.S. 40, 23 BRBS 96
(CRT)(1989).  In *Schwalb*, the United States Supreme Court held that
employees who are injured while maintaining or repairing equipment essential to the
loading or unloading process are covered under the Act, as their work is an
integral part of and essential to those overall processes. *Id.*


    On appeal, employer contends that claimant's job as a shop steward, which
involved mediating labor-management disputes, did not have any nexus to the loading
and unloading process.  Thus, employer asserts that the status requirement for
coverage under Section 2(3) of the Act was not met.  We reject employer's
contention.  In determining that claimant satisfied the status requirement for
coverage under the Act, the administrative law judge credited claimant's testimony,
as supported by the testimony of Frank Jordan and Sabato Catucci, that although
claimant often took the side of the workers in a dispute, he would also at times
support management's position when there was misconduct by a worker, and other
times directed employees to return to work when a work stoppage was threatened.
*See* April 23, 1998 Tr. at 40-42, 69-70, 80, 126-127.  The administrative law
judge found that claimant's performance of his duties as shop steward facilitated
ˈhe day-to-day loading and unloading process by removing interpersonal obstacles
ᴊnat might otherwise obstruct such ongoing operations.[5]  Thus, the administrative law judge determ
an integral part of and essential to employer's stevedoring business, and thus
constituted covered maritime employment under Section 2(3) of the Act. *See*

Interim Decision and Order on Jurisdiction at 5.

Contrary to employer's contention, the instant case is not controlled by the Board's decision in *Sanders v. Alabama Dry Dock & Shipbuilding Co.*, 20 BRBS 104 (1987)(Brown, J., dissenting), *rev'd*, 841 F.2d 1085, 21 BRBS 18 (CRT)(11th Cir. 1988), inasmuch as the Board's decision was reversed on appeal. In *Sanders*, a case similar to the instant case, the United States Court of Appeals for the Eleventh Circuit held that the claimant's job as a labor relations assistant, the function of which was to keep the shipyard work uninterrupted by labor disputes or misconduct of the workers, was significantly related to and directly furthered the employer's shipbuilding and ship repair operations. Therefore, the court concluded that the claimant was a covered maritime employee under Section 2(3) of the Act. As *Sanders* was decided prior to *Schwalb*, the court did not specifically determine whether the claimant's functions were "integral to" the employer's maritime operations.[6]  *See Atlantic Container Service, In Coleman*, 904 F.2d 611, 23 BRBS 101(CRT)(11th Cir. 1990)(court questioned validity of legal test for coverage used in *Sanders* in light of *Schwalb*). Nevertheless, *Sanders* is supportive of the administrative law judge's finding of coverage in the instant case, inasmuch as the administrative law judge applied the *Schwalb* test to claimant's duties. Like the claimant in *Sanders*, claimant herein performed many of his duties as shop steward on the dock, where, in addition to mediating labor disputes, he attempted to ensure compliance with safety codes and that work crews were fully manned. *Sanders*, 841 F.2d at 1088, 21 BRBS at 21 (CRT). The administrative law judge fully considered claimant's job functions and found that his employment was integral to the loading and unloading process as he removed interpersonal obstacles that might otherwise hinder employer's day-to-day operations. This finding is supported by the testimony concerning claimant's job duties. *See* April 23, 1998 Tr. at 40-42, 69-70, 80, 126-127; *see also Sanders*, 841 F.2d at 1088, 21 BRBS at 21 (CRT); *Jannuzzelli v. Maersk Container Service Co.*, 25 BRBS 66 (1991) (Board held that a timekeeper who checked in men for payroll purposes and ensured work crews were fully manned was covered under the Act). *Cf. Sette v. Maher Terminals Inc.*, 27 BRBS 224 (1993)(claimant who performed only clerical duties not covered under the Act). The administrative law judge applied the proper legal standard in this case, and his conclusion that claimant's functions as shop steward were integral to the loading and unloading process is supported by substantial evidence. Accordingly, the administrative law judge's finding that claimant is a covered maritime employee under Section 2(3) of the Act is affirmed.

We next address employer's challenge to the administrative law judge's findings regarding causation and the nature and extent of claimant's disability. In order to be entitled to the Section 20(a) presumption that claimant's condition is causally related to this employment, claimant must establish a *prima facie* case by establishing the existence of a harm and that an accident occurred or working conditions existed that could have caused the harm. *See Kelaita v. Triple A Machine Shop*, 13 BRBS 326 (1981); *see also Merrill v. Todd Pacific Shipyards Corp.*, 25 BRBS 140 (1990). A psychological impairment which is work-related is compensable under the Act. *American National Red Cross v. Hagen*, 327 F.2d 559 (7th Cir. 1964); *Manship v. Norfolk & Western Ry. Co.*, 30 BRBS 175 (1996); *Konno v. Young Bros., Ltd.*, 28 BRBS 57 (1994). Once the Section 20(a) presumption is invoked, the burden shifts to employer to rebut the presumption with substantial evidence that claimant's condition was not caused, contributed to or aggravated by his employment. *Peterson v. General Dynamics Corp.*, 25 BRBS 71, 78 (1991), *aff'd sub nom. Ins. Co. of North America v. U.S. Dep't of Labor*, 969 F.2d 1400, 26 BRBS 14 (CRT)(2d Cir. 1992), *cert. denied*, 507 U.S. 909 (1993); *Davison v. Bender Shipbuilding &*

*Repair Co., Inc.*, 30 BRBS 45, 46-47 (1996). If the administrative law judge finds that the Section 20(a) presumption is rebutted, then all relevant evidence must be weighed to determine if a causal relationship has been established, with claimant bearing the burden of persuasion. *See Director, OWCP v. Greenwich Collieries*, 512 U.S. 267, 28 BRBS 43 (CRT)(1994); *Santoro v. Maher Terminals, Inc.*, 30 BRBS 171 (1996).

In his Decision and Order, the administrative law judge credited claimant's testimony that his job was abundantly stressful due to constant disputes and tension between the workers and management. The administrative law judge found the testimony of Sabato Catucci that he preferred a shop steward who was "blind and deaf" supported claimant's account of disputes and stress. *See* April 23, 1998 Tr. at 132. The administrative law judge further noted that William Molligar, the terminal hiring agent, corroborated claimant's view that staffing shortages occurred after employer took over the terminal, which was a major source of tension between the workers and management. *See* March 16, 1999 Tr. at 136; Decision and Order at 5 n.4. Finding that claimant's work-place stress could have precipitated the cardiac incident on March 16, 1997, the administrative law judge found that claimant established invocation of the Section 20(a) presumption. On appeal, employer contends that the administrative law judge erred in crediting claimant's testimony regarding the March 16, 1997, incident, and further asserts that the administrative law judge erred in not considering the testimony of other witnesses that claimant's job was not stressful. Employer also argues that claimant did not suffer from work-related angina.

We reject employer's contentions of error. Initially, we hold that the administrative law judge acted within his discretion in crediting claimant's testimony concerning his stressful working conditions, as corroborated by Sabato Catucci and William Molligar.[7] *See Cordero v. Triple A Machine Shop*, 580 F.2d 1331, 8 BRBS 744 (9th Cir. 1978), *cert. denied*, 470 U.S. 911 (1979); *Wheatley v. Adler*, 407 F.2d 307 (D.C. Cir. 1968); *Cairns v. Mason Terminals, Inc.*, 21 BRBS 252 (1988). Moreover, it is undisputed that claimant did in fact pass out during work on March 16, 1997, requiring that he be rushed to the hospital. The administrative law judge credited the opinion of Dr. Konka that claimant suffered angina on March 16, 1997, and found that the opinions of Drs. Israel, Lomazow, Mannucci and Head established that stress may cause such a cardiac incident. *See* Emp. Ex. 66 at 17; January 12, 1999 Tr. at 39-40, 199; Cl. Ex. 5. As this evidence is sufficient to entitle claimant to the benefit of the Section 20(a) presumption, we affirm the administrative law judge's finding in this regard. *See Sinclair v. United Food & Commercial Workers*, 23 BRBS 148 (1989); *Cairns,* 21 BRBS at 252.

The administrative law judge found that employer established rebuttal of the presumption based on the opinion of Dr. Israel, who stated that claimant did not suffer from angina on March 16, 1997, and that stressful working conditions cannot promote or worsen coronary artery disease. Considering the evidence as a whole, the administrative law judge found that the observations of claimant's treating physicians, Drs. Konka and Lomazow, supported claimant's perception of intolerable work-place stress, which had both cardiac and psychological consequences. Dr. Lomazow found that work stress caused claimant's chest pain which necessitated the taking of nitroglycerin and resulted in claimant's passing out.[8] *See* Emp. Ex. 30; Cl. Ex. 1. In this regard, employer's contention that it was the taking of nitroglycerin that caused claimant to pass out, and not work stress, does not support its contention that the March 16, 1997, incident was not work-related, as claimant took the nitroglycerin while at work in response to chest pain. Moreover, the administrative law judge accepted the view of Dr. Konka, claimant's cardiologist who performed the post-incident catherization,

work-related stress. *See* Emp. Ex. 31; Cl. Ex. 2. The administrative law
judge further credited claimant's treating psychiatrist, Dr. Mannucci, who opined
at claimant suffers from adjustment disorder with anxiety and depression, and
that his psychiatric symptoms and cardiac dysfunction are directly related to the
amount of stress he was subjected to in his job. *See* Emp. Ex. 65; Cl. Ex.
5. Dr. Head, a neurologist and psychiatrist, opined that job stress could not have
caused claimant's depression and anxiety because claimant continued to suffer from
these symptoms after he left his job, *see* January 12, 1999 Tr. at 217-218,
but the administrative law judge rejected this opinion as Dr. Head failed to
recognize additional stressors that entered claimant's life after he left his
employment, such as anxiety due to the inability to work and a loss of income. The
administrative law judge considered Dr. Israel's opinion that claimant's pain on
March 16, 1997 was non-anginal because the catherization indicated insufficient
coronary blockage to cause chest pain. *See* Emp. Ex. 66 at 28, 56-57.
However, the administrative law judge rejected this opinion as Dr. Israel did not
indicate the degree of blockage that may result in angina, and found that Dr.
Israel's opinion was outweighed by the contrary opinion of Dr. Konka, who performed
the catherization. The administrative law judge further rejected as speculation
Dr. Israel's opinion that claimant suffered from either chest wall pain due to the
previous surgery or esophageal pain, in light of the absence of these types of pain
in claimant's prior history. Ultimately, the administrative law judge found that
the March 16, 1997, incident brought to a head claimant's coronary and
psychological conditions as a result of work-place stress. As the administrative
law judge acted within his discretion in crediting the opinions of Drs. Konka,
Lomazow and Mannucci over those of Drs. Israel and Head, we affirm the
administrative law judge's determination that claimant's current coronary and
psychological conditions are causally related to his employment. *See Calbeck v.
Strachan Shipping Co.*, 306 F.2d 693 (5th Cir. 1962), *cert. denied*, 372
U.S. 954 (1963); *John W. McGrath Corp. v. Hughes*, 289 F.2d 403 (2d Cir.
1961).

    With regard to the above holdings, we reject employer's contention that the
administrative law judge's analysis does not comport with the APA.[9]  Having set forth the evidence,
administrative law judge weighed the evidence with regard to each of his findings
and provided reasons for his findings based on the evidence. Contrary to
employer's assertion, the administrative law judge did consider the opinions of
Drs. Scarpa and Seldon in invoking the Section 20(a) presumption, finding that
these opinions agreed that claimant suffered from angina on March 16, 1997, and
that Dr. Seldon reversed his prior implication of a finding of angina upon
employer's counsel's urging.[10]  *See*
Decision and Order at 6. As employer has not established reversible error in the
administrative law judge's weighing of conflicting evidence, we reject employer's
contention that the administrative law judge's decision does not comport with the
APA.


    With regard to the nature and extent of claimant's disability, employer
challenges the administrative law judge's finding that claimant is permanently and
totally disabled, essentially asking the Board to reverse the administrative law
judge's weighing of the evidence. We decline to do so. Claimant has the burden
of establishing the nature and extent of his disability. *Trask v. Lockheed
Shipbuilding & Constr. Co.*, 17 BRBS 56, 59 (1980). In order to establish a
prima facie case of total disability, claimant must prove that he is unable
to perform his usual work due to the injury. *See, e.g., Delay v. Jones
Washington Stevedoring Co.*, 31 BRBS 197 (1998). In the instant case, the
administrative law judge, relying on the opinion of Drs. Mannucci and Konka, found

that claimant is unable to perform his usual employment.[11]   Dr. Mannucci, in his May 5, 1997, repor
severe adjustment disorder with anxiety and depression, related to his impaired
  rdiovascular status, incapacitates claimant from work on a permanent basis.
ᴐee Cl. Ex. 3.  Dr. Konka agreed with the opinion that claimant is unable
to do his usual work on a permanent basis, due to angina on minimal exertion and
depression.[12]   See Emp. Ex. 31.  As the
administrative law judge acted within his discretion in crediting the opinions of
Drs. Mannucci and Konka, over the contrary opinions of Drs. Israel and Head, we
affirm the administrative law judge's finding that claimant is unable to perform
his usual employment. See Calbeck, 306 F.2d at 693; Todd Shipyards Corp.
v. Donovan, 300 F.2d 741 (5th Cir. 1962).  As employer presented no evidence
of suitable alternate employment, the  administrative law judge's award of
permanent total disability compensation is affirmed. See generally Pietrunti v.
Director, OWCP, 119 F.3d 1035, 31 BRBS 84 (CRT)(2d Cir. 1997).

    Lastly, we consider claimant's counsel's request for an attorney's fee for
services performed before the Board in connection with his defense of employer's
appeal to the Board.  Counsel for claimant has submitted a petition for an
attorney's fee seeking $2,843, representing 16.25 hours of services performed at
an hourly rate of $175.  Employer objects to the fee request, on the grounds that
the fee petition does not specify who performed the work or the qualifications of
such attorney.  Based on our review of counsel's fee petition, we disagree that the
fee petition is inadequate.  In the instant case, counsel's fee petition was signed
by lead counsel who filed the brief before the Board and who solely litigated the
case before the administrative law judge, and we note that this attorney has
litigated numerous cases before the Board.  It is apparent that this attorney
performed the work listed in the fee petition, which included reviewing employer's
  ˥ief on appeal and drafting claimant's response brief.  As  counsel successfully
 ᴜefended claimant's award against employer's appeal, and as the entries and hourly
rate requested are reasonable, we grant counsel the requested fee. See Lewis v.
Todd Shipyards Corp., 30 BRBS 154, 159 (1996); Smith v. Alter Barge Line,
Inc., 30 BRBS 87, 89 (1996); 33 U.S.C. §928; 20 C.F.R. §802.203.

    Accordingly, the Interim Decision and Order on Jurisdiction and the Decision
and Order of the administrative law judge are affirmed.  Claimant's counsel is
entitled to an attorney's fee for 16.25 hours for work performed before the Board
at an hourly rate of $175, for a total fee of $2,843, payable directly to counsel
by employer.

    SO ORDERED.




            BETTY JEAN HALL, Chief
            Administrative Appeals Judge




            ROY P. SMITH
            Administrative Appeals Judge

MALCOLM D. NELSON, Acting
Administrative Appeals Judge

To Top of Document

# Footnotes.

1)The administrative law judge further found that employer is
entitled to relief under Section 8(f) of the Act, 33 U.S.C. §908(f).
Back to Text

2)Section 2(4) of the Act states:

> The term "employer" means an employer any of whose employees
> are employed in maritime employment, in whole or in part, upon
> the navigable waters of the United States (including any
> adjoining pier, wharf, dry dock, terminal, building way,
> marine railway, or other adjoining area customarily used by an
> employer in loading, unloading, repairing, or building a
> vessel).

33 U.S.C. §902(4).
Back to Text

3)The Restatement (Second) of Agency §220 (1958),
subsection 2 provides that in determining whether one is considered an employee or
an independent contractor, the following factors must be considered:

> (a) the extent of control which, by the agreement, the master
> may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct
> occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the
> locality, the work is usually done under the direction of the
> employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the
> instrumentalities, tools, and the place of work for the person
> doing the work;
>
> (f) the length of time for which the person is employed;
>
> (g) the method of payment, whether by the time or by the job;
>
> (h) whether or not the work is a part of the regular business

of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.
Back to Text


4)In this regard, the administrative law judge properly distinguished *Total Marine Services, Inc.*, 87 F.3d at 774, 30 BRBS at 62 (CRT), and *Herold*, 31 BRBS at 127, as these cases concerned the issue of which of several entities was the employer responsible for benefits.
Back to Text


5)In cases concerning whether an injury occurred during the course of employment, state courts have increasingly found injuries to shop stewards and union officials compensable by employers, finding that they act in the interest of employers as well as unions, as the negotiation and implementation of collective bargaining agreements prevents unrest and promotes the uninterrupted operation of an enterprise. *See, e.g., New England Tel. Co. v. Ames*, 124 N.H. 661, 474 A.2d 571 (1984); *see also Ackley-Bell v. Seattle Sch. Dist.*, 87 Wash. App. 158, 940 P.2d 685 (1997); *Jones v. Hartford Accident & Indem. Co.*, 811 S.W.2d 516 (Tenn. 1991); *D'Alessio v. State*, 509 A.2d 986 (R.I. 1986); *Caterpillar Tractor Co. v. Shook*, 313 N.W.2d 503 (Iowa 1981); *Repco Products Corp. v. Workmen's Comp. App. Bd.*, 32 Pa. Cmwth. 554, 379 .2d 1089 (1977); *Nallan v. Motion Picture Studio Mechanics Union, Local #52*, 49 A.D.2d 365, 375 N.Y.Supp.2d 164 (1975), *rev'd on other grounds*, 40 N.Y.2d 1042, 391 N.Y.Supp.2d 853 (1976).
Back to Text


6)In *Sea-Land Service, Inc. v. Rock*, 953 F.2d 56, 25 BRBS 112 (CRT)(3d Cir. 1992), *rev'g* 21 BRBS 187 (1988), the United States Court of Appeals for the Third Circuit held that a courtesy-van driver was not covered under the Act as his function of transporting maritime personnel, though helpful to the employer, was not integral to the loading and unloading process. Similarly, in *Coloma v. Director, OWCP*, 897 F.2d 394, 23 BRBS 136 (CRT)(9th Cir.), *cert. denied*, 498 U.S. 818 (1990), the United States Court of Appeals for the Ninth Circuit affirmed the Board's determination that a messman/cook was not covered under the Act as his duties were not essential to the loading and unloading process. *See also Gonzalez v. Merchants Bldg. Maintenance*, 33 BRBS 146 (1999).
Back to Text


7)The administrative law judge rationally determined that claimant's inconsistent testimony regarding his ownership of a home was inconsequential. *See* Decision and Order at 6.
Back to Text


8)Dr. Lomazow, a neurologist, opined that claimant struck his head on March 16, 1997, after passing out and suffered a concussion and cervical

radiculopathy as a result of his fall. *See* Emp. Ex. 30; Cl. Ex. 1.
Back to Text


9)The Administrative Procedure Act requires that every
adjudicatory decision be accompanied by a statement of "findings and conclusions,
and the reasons or basis therefor, on all the material issues of fact, law or
discretion presented on the record." 5 U.S.C. §557(c)(3)(A). An
administrative law judge must independently analyze and discuss the evidence, and
must adequately detail the rationale behind his decision and specify the evidence
upon which he relied. *Ballesteros v. Willamette W. Corp.*, 20 BRBS 184
(1988); *Williams v. Newport News Shipbuilding & Dry Dock Co.*, 17 BRBS 61
(1985).
Back to Text


10)Dr. Scarpa concluded in his January 9, 1998, letter that
claimant's angina attack was unrelated to his work activities on March 16, 1997,
but provided no rationale for this conclusion. *See* Emp. Ex. 45. Dr. Seldon,
in his January 22, 1999, report, agreed with Dr. Israel that claimant's chest pain
was not consistent with angina, based on the results of the catherization.
*See* Emp. Ex. 67A.
Back to Text


11)In addition, the administrative law judge determined that
the medical evidence supported claimant's fearful perception that a return to his
usual work would result in further coronary and psychological impairment.
See Decision and Order at 8.
Back to Text


12)The administrative law judge found that the opinions of Drs.
Mannucci and Konka were supported by Dr. Head's testimony that claimant's heart
condition will cause chest pain, and that this pain will cause claimant to try to
get out of work. *See* January 12, 1999 Tr. at 208-210.
Back to Text


### NOTE: This is an UNPUBLISHED LHCA

Frequently Asked Questions | Freedom of Information Act | Customer Survey
Privacy & Security Statement | Disclaimers | E-mail to a Friend

**U.S. Department of Labor**                                                          **1-866**
Frances Perkins Building                                                              TTY: 1-8
200 Constitution Avenue, NW
Washington, DC 20210

# Westlaw.

115 Fed.Appx. 662                                              Page 1
115 Fed.Appx. 662, 2004 WL 2297150 (5th Cir.(Tex.))
**(Cite as: 115 Fed.Appx. 662, 2004 WL 2297150 (5th Cir.(Tex.)))**

**H**

**Briefs and Other Related Documents**

This case was not selected for publication in the
Federal Reporter.

Please use FIND to look at the applicable circuit
court rule before citing this opinion. Fifth Circuit
Rule 47.5.4. (FIND CTA5 Rule 47.)

United States Court of Appeals,
Fifth Circuit.
AMERICAN REALTY TRUST, INC., Basic
Capital Management, Inc., Plaintiffs-
Appellants,
v.
HAMILTON LANE ADVISORS, INC., Leslie A.
Brun, Paul Bagley, Defendants-
Appellees.
**No. 03-10179.**

Decided Oct. 13, 2004.

**Background:** Affiliated real estate corporations
sued a company and related individuals, alleging
that the defendants conspired to fraudulently
convince the corporations to enter into a contract
with one of the individuals by promising financing
from the company in return. The United States
District Court for the Northern District of Texas,
2003 WL 158878, dismissed, and the corporations
appealed.

**Holdings:** The Court of Appeals, Dennis, Circuit
Judge, held that:
(1) company and its principal lacked sufficient
minimum contacts with Texas to subject them to
personal jurisdiction;
(2) dismissal for lack of personal jurisdiction
should have been without prejudice;
(3) corporations failed to plead fraud with the
requisite particularity; but
(4) rule requiring particularity in allegations of
fraud did not extend to claims of negligent

misrepresentation.
Affirmed in part, reversed in part, and remanded.

West Headnotes

**[1] Federal Civil Procedure** ⟵1755
170Ak1755 Most Cited Cases
Res judicata is affirmative defense that should not
be raised as part of motion to dismiss for failure to
state a claim, but should instead be addressed at
summary judgment or at trial. Fed.Rules
Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[2] Federal Courts** ⟵76.20
170Bk76.20 Most Cited Cases

**[2] Federal Courts** ⟵79
170Bk79 Most Cited Cases
Company and its principal lacked sufficient
minimum contacts with Texas to subject them to
personal jurisdiction there in an action brought by
affiliated Texas real estate corporations alleging
that the company and the principal had conspired to
fraudulently convince the corporations to enter into
a contract with a co-defendant by promising
financing from the company in return; the sole
connection of the company and its principal to the
case involved one meeting in New York in which
the principal, on behalf of the company, allegedly
made fraudulent statements to the corporations.

**[3] Federal Courts** ⟵97
170Bk97 Most Cited Cases
Dismissal for lack of personal jurisdiction should
have been without prejudice where the court did not
address the merits of the plaintiff's allegations
against the defendants over whom the court lacked
jurisdiction. Fed.Rules Civ.Proc.Rule 41(b), 28
U.S.C.A.

**[4] Federal Civil Procedure** ⟵636
170Ak636 Most Cited Cases
Affiliated real estate corporations failed to plead
fraud with the requisite particularity in an action
against a consultant with whom the corporations
had entered an agreement; the corporations'

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

115 Fed.Appx. 662
115 Fed.Appx. 662, 2004 WL 2297150 (5th Cir.(Tex.))
(Cite as: 115 Fed.Appx. 662, 2004 WL 2297150 (5th Cir.(Tex.)))

Page 2

allegation that, "[i]n the negotiations leading up to the signing of the Consulting Agreement, [the consultant] represented that he had contacts and business relationships with individual financing institutions that would assist [the corporations]," did not allege the particular time and place of the false representations, nor did it set forth any specific facts to support an inference of fraud. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[5] Federal Civil Procedure ☞636**
170Ak636 Most Cited Cases
Rule requiring particularity in allegations of fraud did not extend to claims of negligent misrepresentation. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

*663 Mitchell Madden, Law Offices of Mitchell Madden, John Frederick Redwine, Redwine Law Firm, Dallas, TX, for Plaintiff-Appellant.

Mark Grazia Stromberg, Stromberg & Associates, Frederick Linton Medlin, Michael D. Napoli, Kirkpatrick & Lockhart, Dallas, TX, for Defendant-Appellee.

Appeal from the United States District Court for the Northern District of Texas, (3:02-CV-00641).

Before DUHE', BARKSDALE, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge: [FN*]

> FN* Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**1 [1] Upon reconsideration, we withdraw our previous opinion and substitute the following: American Realty Trust, Inc. ("ART") and Basic Capital Management, Inc. ("BCM") brought suit against Hamilton Lane Advisors, Inc. ("HLA"), Leslie A. Brun, and Paul Bagley, alleging claims of fraud, conspiracy to defraud, and negligent misrepresentation. The district court granted HLA and Brun's motion to dismiss for lack of personal jurisdiction and *664 Bagley's motion to dismiss for failure to satisfy the pleading requirements of

Federal Rule of Civil Procedure 9(b). [FN1] The district court dismissed all claims with prejudice. For the reasons described herein, we AFFIRM in part, REVERSE in part, and REMAND for proceedings consistent with this opinion.

> FN1. In addition to his claims involving Rule 9(b), Bagley also argues that plaintiffs' claims in this case should be barred by the *res judicata* effect of another district court decision in which plaintiffs were involved, *American Realty Trust, Inc. v. Matisse,* 2002 U.S. Dist. LEXIS 17472 (N.D.Tex., Sept. 16, 2002). We decline to address that issue now because it is premature. *Res judicata* is an affirmative defense that should not be raised as part of a 12(b)(6) motion, but should instead be addressed at summary judgment or at trial. *See Moch v. East Baton Rouge Parish School Bd.,* 548 F.2d 594, 596 n. 3 (5th Cir.1977) ("Generally, a party cannot base a 12(b)(6) motion on res judicata."); *see also Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir.1986) (noting that Rule 12(b)(6) only applies to affirmative defenses that appear on the face of the plaintiffs' complaint).

I.

Plaintiff ART is a Georgia corporation with its principal place of business in Texas. Plaintiff BCM is a Texas corporation with its principal place of business in Texas. ART and BCM are affiliated companies engaged in the business of buying and selling real estate. In the fall of 1999, they began negotiations with defendant Paul Bagley, a resident of New Jersey, to discuss obtaining refinancing assistance from Mattise Capital Partners, a company affiliated with Bagley. By early 2000, plaintiffs still had not reached an agreement with Bagley, and questioned whether a relationship with Bagley and his associates made business sense.

In April 2000, Bagley set up a meeting in New York with ART, BCM, and defendant Leslie Brun, an individual residing in the state of New York, and HLA, a Pennsylvania corporation owned by Brun with its principal place of business in New York. Plaintiffs had one meeting with HLA and Brun in New York on April 5, 2000, in which plaintiffs

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

115 Fed.Appx. 662                                                                              Page 3
115 Fed.Appx. 662, 2004 WL 1297150 (5th Cir.(Tex.))
(Cite as: 115 Fed.Appx. 662, 2004 WL 1297150 (5th Cir.(Tex.)))

allege that they were led to believe that HLA would provide them with financing if they entered into a separate consulting agreement with Mattise.

Less than two weeks later, plaintiffs entered into a consulting agreement with Mattise. Later, plaintiffs learned that HLA was not in a position to help them with financing. Plaintiffs then filed suit in March 2002 in federal district court in Texas against defendants alleging fraud, conspiracy to defraud, and negligent misrepresentation. Plaintiffs asserted that HLA, Brun, and Bagley all conspired to fraudulently convince plaintiffs to enter into a contract with Mattise by promising financing from HLA if plaintiffs entered into such a contract and that they would not have entered into the consulting agreement but for the fraudulent representations of defendants. In response, defendants HLA and Brun moved to dismiss for lack of personal jurisdiction, which the district court granted. All of the claims against HLA and Brun were dismissed with prejudice.

Bagley moved to dismiss plaintiffs' fraud complaint because plaintiffs did not plead fraud with particularity as required by Rule 9(b). The district court agreed, granted Bagley's motion, and dismissed all claims against Bagley with prejudice, including plaintiffs' negligent misrepresentation claims which had not been previously discussed by the district court. Plaintiffs timely appealed.

II.

A.

**2 Plaintiffs initially argue that the district court erred in holding that the court *665 lacked personal jurisdiction over HLA and Brun. Alternatively, plaintiffs contend that even if the court lacked personal jurisdiction over those defendants, the district court erred in dismissing the claims with prejudice.

The plaintiff bears the burden of establishing the district court's personal jurisdiction over a nonresident who moves for dismissal. [FN2] When, as here, the district court does not hold a full evidentiary hearing on personal jurisdiction, the district court can consider affidavits and other properly obtained evidentiary materials when making its determination. [FN3] The district court shall, however, accept the uncontroverted

allegations in the complaint as true and shall resolve all factual conflicts in favor of the plaintiff. [FN4]

> FN2. *Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir.1994).

> FN3. *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir.1985).

> FN4. *Wilson,* 20 F.3d at 648.

The federal court sitting in diversity in Texas has personal jurisdiction over a defendant to the same extent as the Texas state courts. [FN5] "[I]t is well-established that the Texas long-arm statute authorizes the exercise of personal jurisdiction to the full extent allowed by the Due Process Clause of the Fourteenth Amendment," so our inquiry collapses into whether Texas can exercise personal jurisdiction over HLA and Brun consistent with Due Process. [FN6]

> FN5. *Central Freight Lines Inc. v. APA Transp. Corp.,* 322 F.3d 376, 380 (5th Cir.2003).

> FN6. *Id.*

According to the long-established Due Process standard, a court can constitutionally exercise personal jurisdiction over a defendant if (1) the defendant has "minimum contacts" with the forum state and (2) the exercise of such jurisdiction does not "offend traditional notions of fair play and substantial justice." [FN7] "The 'minimum contacts' prong of the inquiry may be further subdivided into contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction." [FN8] When the cause of action is related to or arises from the defendant's contacts with the forum state, then the court has specific jurisdiction over the defendant for that cause of action. [FN9] If the defendant has "continuious and systematic" contacts with the forum state, then the court can exercise jurisdiction over the defendant generally. [FN10] The parties in this case concede that Texas does not have general jurisdiction over HLA or Brun, so our inquiry narrows into whether Texas has specific jurisdiction over HLA and Brun for this cause of action.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

115 Fed.Appx. 662
115 Fed.Appx. 662, 2004 WL 2297150 (5th Cir.(Tex.))
(Cite as: 115 Fed.Appx. 662, 2004 WL 2297150 (5th Cir.(Tex.)))

Page 4

FN7. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

FN8. *Wilson,* 20 F.3d at 647.

FN9. *Id.*

FN10. *Id.*

For specific jurisdiction purposes, "whether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." [FN11] In making this case-by-case determination, courts focus on whether the defendant's contacts with the forum state should cause the defendant to "reasonably anticipate" being *666 subject to jurisdiction in that state. [FN12] In addition, courts examine whether the defendant has "purposefully directed" its activities toward the forum state or whether, in contrast, the defendant's contacts with the forum state are simply "random" or "fortuitous." [FN13] "[M]erely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." [FN14] In addition, communications or contractual payments directed to a forum, standing alone, do not constitute purposeful availment of the forum, but simply reflect "the mere fortuity that [the plaintiff] happens to be a resident of the forum." [FN15]

FN11. *Mississippi Interstate Express, Inc. v. Transpo, Inc.,* 681 F.2d 1003, 1006 (5th Cir.1982).

FN12. *Wilson,* 20 F.3d at 648-49.

FN13. *Id.; see also Stuart v. Spademan,* 772 F.2d 1185, 1190 (5th Cir.1985).

FN14. *Holt Oil & Gas Corporation v. Harvey,* 801 F.2d 773, 778 (5th Cir.1986) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

FN15. *Id.* (internal citations and quotations

omitted.).

**3 [2] The district court found that HLA and Brun did not have sufficient minimum contacts with Texas to subject them to personal jurisdiction there. We agree. HLA and Brun's sole connection to this case involves the April 5, 2000, meeting in New York in which Brun, on behalf of HLA, allegedly made fraudulent statements to plaintiffs on which plaintiffs allegedly relied. HLA and Brun did not sign a contract with plaintiffs nor did they enter into any other sort of business relationship with plaintiffs. HLA and Brun also did not direct any communications toward Texas or even lead plaintiffs to believe that they *would* direct any communications toward Texas. One meeting in New York City between Brun and plaintiffs does not create minimum contacts sufficient to cause HLA and Brun to "reasonably anticipate" being subject to suit in Texas. To the extent this case relates to Texas at all, it does so only through "the mere fortuity that [the plaintiffs] happen to be [ ] resident[s] of [Texas]." [FN16]

FN16. Plaintiffs also argue that Texas should have personal jurisdiction over HLA and Brun because Bagley was in a conspiracy with HLA and Brun to defraud plaintiffs and, therefore, that Bagley's actions can be imputed to HLA and Brun for personal jurisdiction purposes. We disagree. Plaintiffs have presented no facts supporting a conspiracy among the defendants, alleging only that Brun and HLA made false statements to plaintiffs "only to induce [plaintiffs] to enter into the contract that Bagley desired," without any factual support for the assertion. As the district court correctly noted, bare allegations of conspiracy without factual support do not suffice to establish minimum contacts for personal jurisdiction purposes. *See Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."); *Guidry v. United States Tobacco Co.,* 188 F.3d 619, 631-32 (5th Cir.1999) ("[A] general allegation of conspiracy without a statement of the facts

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

115 Fed.Appx. 662                                                                    Page 5
115 Fed.Appx. 662, 2004 WL 2297150 (5th Cir.(Tex.))
(Cite as: 115 Fed.Appx. 662, 2004 WL 2297150 (5th Cir.(Tex.)))

constituting that conspiracy is only an allegation of a legal conclusion.").

[3] The district court, however, erred in dismissing HLA and Brun with prejudice. The district court's ruling on personal jurisdiction did not address the merits of plaintiff's allegations as to HLA and Brun, and, as a result, the claim against them should have been dismissed without prejudice for filing in an appropriate forum. [FN17] Rule 41(b) of the Federal Rules of Civil Procedure "specifically exempts dismissals for lack of jurisdiction ... from *667 the presumption that the dismissal is with prejudice." [FN18]

> FN17. *Hollander v. Sandoz Pharmaceuticals Corp.,* 289 F.3d 1193, 1216-17 (10th Cir.2002); *see also Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1221 (11th Cir.1999); *Arrowsmith v. United Press, Int'l,* 320 F.2d 219 (2nd Cir.1963).

> FN18. 8 Moore's Federal Practice § 41.50[7][c] (Matthew Bender 3d ed.) (citing *Costello v. United States,* 365 U.S. 265, 285, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961) (discussing "lack of jurisdiction over the person or subject matter" as examples of dismissals that should be without prejudice pursuant to Rule 41)); Fed.R. Civ. P. 41.

Accordingly, we AFFIRM the district court's dismissal of HLA and Brun for lack of personal jurisdiction. However, we REVERSE the district court's judgment to the extent that the dismissal is with prejudice.

### B.

[4] Plaintiffs also argue that the district court erred by dismissing their fraud and negligent misrepresentation claims against defendant Bagley. The district court dismissed these claims because plaintiffs did not plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).

Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." [FN19] Rule 9(b) serves several purposes, including protecting a defendant's reputation from the harm

that general, unsubstantiated fraud accusations will cause, [FN20] and preventing a claimant from searching for a valid particular claim after filing suit. [FN21]

> FN19. Fed.R.Civ.P. 9(b).

> FN20. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 288 (5th Cir.1992).

> FN21. 2 Moore's Federal Practice § 9.03[1][a] (Matthew Bender 3d ed.) (citing *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir.1985)).

What constitutes particularity for purposes of Rule 9(b) "necessarily differ[s] with the facts of each case and hence the 5th Circuit has never articulated the requirements of Rule 9(b) in great detail." [FN22] However, this Court has established that "Rule 9(b) requires the plaintiff to allege the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." [FN23] In addition, "[a]lthough scienter may be averred generally, case law amply demonstrates that pleading scienter requires more than a simple allegation that a defendant had fraudulent intent. To plead scienter adequately, a plaintiff must set forth *specific facts* that support an inference of fraud." [FN24] This Court reviews a district court's Rule 9(b) dismissal *de novo.* [FN25]

> FN22. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 288 (5th Cir.1992).

> FN23. *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1068 (5th Cir.1994).

> FN24. *Id.* (emphasis added).

> FN25. *See Melder v. Morris,* 27 F.3d 1097, 1099, n. 4 (5th Cir.1994).

**4 On October 24th, 2002, the district court held that plaintiffs' original complaint did not plead fraud with the particularity required by Rule 9(b) but allowed plaintiffs "leave to replead their claims against Bagley" because it was "mindful of the well-settled principle that dismissal should be avoided until the plaintiffs have been afforded an

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

115 Fed.Appx. 662                                                                                        Page 6
115 Fed.Appx. 662, 2004 WL 2297150 (5th Cir.(Tex.))
(Cite as: 115 Fed.Appx. 662, 2004 WL 2297150 (5th Cir.(Tex.)))

opportunity to file an amended complaint." [FN26] Plaintiffs filed an amended complaint on November 14, 2002. Bagley again moved for dismissal of the complaint under Rule 9(b). On January 16th, 2003, the district court granted Bagley's motion *668 and dismissed all of plaintiffs' claims with prejudice.

> FN26. October 24, 2002 Memorandum Order (Civil Action 3:02-CV-0641- G) (N.D.Tx.).

Reviewing plaintiffs' amended complaint *de novo,* we agree with the district court that plaintiffs' fraud claims should be dismissed under Rule 9(b) for failure to plead fraud with particularity. With regards to defendant Bagley, plaintiffs allege that "[i]n the negotiations leading up to the signing of the Consulting Agreement on April 13, 2002, Bagley represented that he had contacts and business relationships with individual financing institutions that would assist [plaintiffs] ... Bagley made the[se] statements for the sole purpose of inducing [plaintiffs] into signing a contract with him and his company." This statement does not meet Rule 9(b)'s enhanced pleading requirements. Specifically, alleging that a defendant made false statements during "negotiations leading up to" an event for the purpose of inducing someone to enter into a contract with him--without any additional factual support--does not allege the particular time and place of the false representations, nor does it set forth any "specific facts" to support the inference of fraud. In short, it does not satisfy Rule 9(b), and we affirm the district court's decision dismissing it. [FN27]

> FN27. All of plaintiffs' other allegations of fraud involve allegations of conspiracy among Bagley and Brun and HLA to defraud plaintiffs. As explained above, vague allegations of conspiracy, without factual support do not suffice to overcome a motion to dismiss. *See* footnote 15, *supra,* and the cases cited therein.

### C.

[5] However, in addition to dismissing the fraud claim, the district court, without analysis or discussion, dismissed plaintiffs' claims of negligent misrepresentation against Bagley *sua sponte* for failure to plead the claims with particularity. This

dismissal was in error and we reverse. Rule 9(b) is an exception to the liberal federal court pleading requirements embodied in Rule 8(a). [FN28] Rule 9(b)'s stringent pleading requirements should not be extended to causes of actions not enumerated therein. [FN29] Accordingly, plaintiffs' negligent misrepresentation claims are only subject to the liberal pleading requirements of Rule 8(a), which Bagley does not contest that they satisfy. [FN30] Therefore, it *669 was error for the district court to dismiss plaintiffs' negligent misrepresentation claims for failure to plead with particularity.

> FN28. *See* Fed.R.Civ.P. 8(a) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

> FN29. *Swierkiewicz v. Sorema N.A,* 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("This Court, however, has declined to extend [Rule 9(b)'s] exceptions to other contexts."); *Leatherman v. Tarrant County,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (indicating that the doctrine of *expressio unius est exclusio alterius* operates to prevent courts from expanding Rule 9(b)'s stringent pleading requirements to other causes of action); *see also* Wright & Miller, Federal Practice and Procedure: Civil 2d § 1297 ("Since [Rule 9(b)] is a special pleading requirement and contrary to the general approach of simplified pleading adopted by the federal rules, its scope of application should be construed narrowly and not extended to other legal theories or defenses.").

> FN30. In their brief, plaintiffs properly distinguished between their fraud and negligent misrepresentation claims and correctly argued that the Rule 9(b) requirement of particularized pleading of fraud by its terms does not apply to negligent misrepresentation claims. Bagley argues to the contrary and mistakenly relies on *Williams v. WMX Technologies,* 112 F.3d 175, 177 (5th Cir.1997) and *Shushany v. Allwaste, Inc.,* 992 F.2d 517, 520 n. 5 (5th Cir.1993).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Those cases are inapposite for two reasons. First, the plaintiffs in those cases failed to distinguish their negligent misrepresentation claims in their appellate briefs and argue them separately from their fraud claims, thus waiving the argument that their negligent misrepresentation claims should not have been dismissed because they were not subject to Rule 9(b) and its particularized pleading requirement. *See Williams,* 112 F.3d at 177 (indicating that the parties "do not attempt to distinguish [the fraud and negligent misrepresentation claims] in their briefs"); *Shushany,* 992 F.2d at 520 n. 5 (noting that the appellant did not attempt to distinguish the claims in his brief and that issues not briefed are waived). *Benchmark Electronics v. J.M. Huber Corp.,* 343 F.3d 719, 723 (5th Cir.2003), decided after briefing in this case was completed, is also not applicable because in *Benchmark* the appellant failed to distinguish between its fraud claims and negligent misrepresentation claims on appeal. *See Benchmark,* 343 F.3d at 723. Second, this court in *Williams,* 112 F.3d at 177, and *Shushany,* 992 F.2d at 520 n. 5, did not purport to amend Rule 9(b). Congress has empowered the Supreme Court to issue general rules of procedure binding on the District Courts. 28 U.S.C. § 2072(a). This court has no authority to amend the rules established by the Supreme Court. 28 U.S.C. § 2071.

### III.

We REVERSE in part the district court's dismissal of HLA and Brun for lack of personal jurisdiction with prejudice. We AFFIRM the dismissal of plaintiffs' fraud claims against Bagley. We VACATE the district court's dismissal of plaintiffs' negligent misrepresentation claims with prejudice. We REMAND with instructions to convert the dismissal of HLA and Brun into a dismissal without prejudice, to consider plaintiffs' negligent misrepresentation claims against defendant Bagley, and for any other proceedings consistent with this opinion.

**\*5** AFFIRMED IN PART; REVERSED IN

PART; REMANDED.

115 Fed.Appx. 662, 2004 WL 2297150 (5th Cir.(Tex.))

### Briefs and Other Related Documents (Back to top)

. 2003 WL 24009546 (Appellate Brief) Brief of Appellees Hamilton Lane Advisors, Inc. and Leslie A. Brun (Jul. 17, 2003)Original Image of this Document (PDF)

. 2003 WL 24008969 (Appellate Brief) Brief of Appellee Paul Bagley (Jul. 16, 2003)Original Image of this Document (PDF)

. 2003 WL 24008971 (Appellate Brief) Brief of Appellants (May. 16, 2003)Original Image of this Document (PDF)

. 03-10179 (Docket)
                              (Feb. 19, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.