IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. <u>5:05-CV-48-FL(1)</u>

| | |
|---|---|
| Richard P. Nordan, as Ancillary Administrator for the separate Estates of STEPHEN H. HELVENSTON, MIKE R. TEAGUE, JERKO GERALD ZOVKO and WESLEY J. K. BATALONA, <br><br> Plaintiff, <br><br> v. <br><br> BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited Liability Company; BLACKWATER LODGE AND TRAINING CENTER, INC. a Delaware Corporation, JUSTIN L. McQUOWN, an individual; and THOMAS POWELL, an individual, <br><br> Defendants. | **DEFENDANT JUSTIN L. MCQUOWN'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS** |

## DEFENDANT JUSTIN L. MCQUOWN'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Defendant, Justin L. McQuown, files the following Reply to Plaintiff's Opposition to the Motion to Dismiss filed by Defendant McQuown, pursuant to Local Civil Rule 7.1(f), EDNC.

### BACKGROUND

Plaintiff, Richard P. Nordan, as Ancillary Administrator of the Estates of Stephen H. Helvenston, Michael R. Teague, Jerko Gerald Zovko, and Wesley J.K. Batalona (collectively, "Decedents"), filed suit in the Superior Court of Wake County against Defendants, Blackwater Security Consulting, LLC, Blackwater Lodge and Training

Center, Inc. (collectively, "Blackwater"), Justin L. McQuown ("McQuown"), and Thomas Powell ("Powell"). The Complaint purports to allege state law claims against Defendants as a result of Decedents' murder by Iraqi insurgents in Fallujah, Iraq.

Blackwater filed a Notice of Removal removing the case to this Court, in which McQuown and Powell joined. Plaintiff filed a Motion to Remand that is currently pending before the Court.[1] On January 31, 2005, Blackwater filed its Motion to Dismiss the Complaint, along with a supporting Memorandum. On February 1, 2005, Defendant McQuown filed his Motion to Dismiss along with a supporting Memorandum.[2] On February 22, 2005, Plaintiff filed his Memorandum of Law in Opposition to Defendant McQuown's Motion to Dismiss (the "Opposition"). This Reply is filed in response to the Opposition.

The Opposition raises virtually the same issues as the Motion to Remand. Accordingly, this Reply will summarize the arguments made by Defendant McQuown in his Memorandum of Law in Opposition to Plaintiff's Motion to Remand (the "Remand Memorandum").[3] The only issue raised by the Opposition that is not specifically addressed in connection with the remand issues is Plaintiff's argument that the Defense Base Act, 42 U.S.C. §1651 *et. seq.* (the "DBA") does not apply to the purported "intentional conduct" alleged by Plaintiff in the Complaint. Opposition at 3. In fact, despite his protestations to the contrary, Plaintiff has cited only a single case (*Malbrough v. Haliburton Logging Services, Inc.*, 710 So.2d 1149 (La. App. 1998)) for his assertion

---

[1] On March 7, 2005, Blackwater and Defendant McQuown each filed a Memorandum of Law in Opposition to the Motion to Remand.

[2] In order to avoid repetition, Defendant McQuown incorporated portions of Blackwater's Memorandum of Law in Support of Motion to Dismiss into his filing.

[3] Please refer to the Remand Memorandum for a further discussion of the remand issues.

2

that the Longshoremen's and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.* "does not preclude an employee from asserting a cause of action based upon an intentional tort." 710 So.2d at 1150.

As established in the Remand Memorandum, the DBA applies here and precludes any claim against Defendant McQuown based on the express language of the LHWCA, 33 U.S.C. §933(i) (discussed below). Even in the event the Court were inclined to recognize the possibility that a claim for an intentional tort could be stated against a fellow employee such as Defendant McQuown, notwithstanding the provisions of the LHWCA to the contrary, Plaintiff has not alleged "a specific intent to injure" as required by the case relied upon by Plaintiff. *Id.* at 1152. Accordingly, this Defendant respectfully contends that the Court should grant the Motion to Dismiss.

## LEGAL ARGUMENT

Defendant McQuown respectfully submits that the Motion to Dismiss raises the following issues for consideration by the Court: (1) does the DBA apply; (2) assuming the DBA applies, what effect does the DBA have on the disposition of the case; (3) does the DBA allow claims against employees for intentional torts; and (4) assuming the DBA allows claims against employees for intentional torts, does the Complaint allege sufficient intentional conduct to support a claim against Defendant McQuown.

Each of these issues is discussed below.

### I. THE DBA APPLIES TO THE FACTS AS ALLEGED BY PLAINTIFF.

Pages 3-10 of the Remand Memorandum explain in detail why the DBA applies here. In summary, the DBA applies for the following reasons:

(1) The Department of Labor previously determined that the DBA applies to Decedents Teague and Zovko[4] and the other Decedents' families have applied for, and are receiving, DBA benefits.

(2) Notwithstanding the fact that the Decedents' contracts with Blackwater refer to them as independent contractors, the facts alleged in the Complaint establish that Decedents were employees of Blackwater.[5]

(3) Decedents were within the coverage of the DBA, 42 U.S.C. § 1651(a)(4). Based on a fair reading of the Complaint, the contract under which services were being provided related to services to "U.S. Armed Forces and other contracting agencies in Iraq and Kuwait." Complaint, ¶18; *see also* Complaint, ¶¶19, 20 and 57. Furthermore, Defendants were engaged in "public work," as defined in 42 U.S.C. §1651(b)(1).[6]

Thus, Defendant McQuown contends that the DBA applies here.

---

[4] *In re Teague*, Dept. of Labor Informal Conference, Case No. 02-135368 (Feb. 25, 2005); *Zovko v. Blackwater Security Consulting*, Dept. of Labor Case No. 02-135369 (Oct. 8, 2004).

[5] As described in detail in the Remand Memorandum, paragraphs 13 and 15 of the Complaint make a series of specific allegations concerning the relationship between Blackwater and Decedents that, as a matter of law, results in Decedents being classified as employees of Blackwater, not independent contractors. *Farlow v. Wachovia Bank*, 259 F.3d 309, 313 (4th Cir. 2001) (the determination of whether the relationship is an employer-employee or an independent contractor is a question of law). For example, the Complaint alleges Blackwater was to provide Decedents with protection, tools, and information; Blackwater determined the number of team members for each mission, the type of vehicles to be used, the composition of the security teams, the type of weapons to be used, the amount of notice prior to a security mission, whether the threat level was too high to perform, and the logistics to carry out the security detail. Complaint ¶¶13 a.-g.; 15 a.-g. Under either the "nature of the work test" or the "control" test, these allegations establish that Decedents were employees, not independent contractors. *See, e.g., American Stevedoring Ltd. v. Marinelli*, 248 F.3d 54, 62-63 (2d Cir. 2001) (nature of the work test); *White v. Bethlehem Steel Corp.*, 222 F.3d 146, 149 (4th Cir. 2000) (control test).

[6] Under the DBA, "any military purpose is a public use no matter how accomplished." *Berven v. Fluor Corp.*, 171 F. Supp. 89 (S.D.N.Y. 1959).

4

## II.   GIVEN THE FOURTH CIRCUIT'S DECISION IN *SHIVES*, THE COURT SHOULD DISMISS THIS ACTION.

As described in detail in the Remand Memorandum at pages 11-19, disputes relating to the DBA are within the province of federal, not state, courts. Defendant can support federal jurisdiction if it establishes that either (1) federal law completely preempts Plaintiff's asserted state law claim; or (2) the case presents issues of unique federal interest so that federal common law supplants state law. *Caudill v. Blue Cross and Blue Shield,* 999 F.2d 74 (4th Cir. 1993).

Given the important and unique federal interest in the DBA, and the Fourth Circuit's decision in *Shives v. CSX Transp., Inc.*, 151 F.3d 164, 171 (4th Cir. 1998), the DBA preempts Plaintiff's state law claims. As the *Shives* Court held, the "question of whether the LHWCA applies to a work-related injury is exclusively a federal question which Congress never intended for state courts to resolve." *Id.* at 171. Alternatively, even if the Court were to find that the DBA does not preempt state claims, the DBA certainly reflects a unique federal interest that is sufficient to support federal jurisdiction. *See, e.g., Caudill, supra. See also Boyle v. United Tech. Corp.,* 487 U.S. 500, 507 (1988).[7]

---

[7] As the Court in *Caudill* explained, in order for a federal interest to supplant a state law claim, a two part test has to be satisfied: (1) "the matter must involve a uniquely federal interest"; and (2) "a 'significant conflict' must exist between the federal interest or policy and the effect of the state law, 'or the application of state law [must] "frustrate specific policy objectives" of federal legislation'" *Id.* at 77, 78, quoting *Boyle,* 487 U.S. 500, 507 (1988). Both prongs of this test are satisfied here. The DBA involves a unique federal interest in that it is designed both to ensure certainty of compensation to employees as well as to limit the liability of government contractors. As recognized by the Supreme Court in *Boyle,* the government would be adversely affected if liability were improperly imposed on government contractors given the fact that they would either decline to provide government services in the future or raise the price. 487 U.S. at 507. In addition,

Defendant McQuown respectfully submits that the Fourth Circuit's decision in *Shives* controls the disposition of this matter. In *Shives*, the plaintiff railroad employee was injured at a marine terminal. The plaintiff sued the defendant railroad in state court, asserting a Federal Employers' Liability Act (FELA) claim. The defendant removed the case to federal court on the basis that the LHWCA applied. The district court remanded the case to state court, finding that the employee was not covered by the LHWCA. On appeal, the Fourth Circuit concluded that the plaintiff's claim, even though *couched* as an FELA claim, in reality was a claim under the LHWCA, because the plaintiff was covered under that statute. Moreover, the court concluded "[t]his LHWCA coverage is exclusive and precludes [plaintiff] from pursuing an FELA claim." 151 F. 3d at 171. Having found LHWCA coverage, the Fourth Circuit then concluded that under 33 U.S.C. § 910(a) an LHWCA claim must be filed with the Department of Labor, and accordingly dismissed the case for lack of subject matter jurisdiction.[8] *Id.* Thus, given the binding Fourth Circuit precedent in *Shives*, Defendant McQuown respectfully submits that the case should be dismissed.

### III.   THE DBA DOES NOT ALLOW CLAIMS AGAINST EMPLOYEES FOR INTENTIONAL TORTS.

The DBA and the incorporated provisions of the LHWCA specifically preempt an employee's state law tort claims against both the employer and any fellow employee. *See* 42 U.S.C. § 1651(c) ("liability of an employer…under this chapter shall be exclusive and in place of all other liability by such employer…"); 33 U.S.C. § 933(i)("right to

---

allowing Plaintiff to pursue state law claims, thereby exposing contractors to potential liability, would directly frustrate the objectives of the DBA.

[8] The court found that remanding the case to state court would not be proper because state courts do not have jurisdiction over LHWCA cases. 151 F.3d at 164.

6

compensation under [the LHWCA] shall be the exclusive remedy to an employee when he is injured..."); *see also Colon Colon v. United States Dept. of Navy*, 223 F.Supp.2d 368 (D. P.R. 2002) (dismissing complaint containing tort claims because DBA provided exclusive remedy for plaintiff's injuries).

Plaintiff attempts to circumvent the statute's exclusive remedy provision by claiming an exception, not found in the statutory language, for an employee's claims of intentional torts. However, Plaintiff's argument that intentional torts are exempted from the preemptive effect of the DBA is belied by the clear language of the LHWCA. Section 933(i) provides as follows:

> (i)   **Right to Compensation as Exclusive Remedy**.
>
> The right to compensation or benefits under this Act shall be the exclusive remedy to an employee when he is injured, or to his eligible survivors or a legal representatives if he is killed, by the *negligence or wrong* of any other person or persons in the same employ: Provided that this provision shall not affect the liability of a person other than an officer or an employee of the employer.

33 U.S.C. § 933(i) (emphasis added).

The inclusion of the language "by the negligence or wrong" of an employee clearly contemplates the preemption of *all* claims including those for negligence or any other wrong, *i.e.*, an intentional tort. *See Sharp v. Elkins*, 616 F.Supp. 1561, 1564 (W.D. La. 1985) (the term "wrong" under section 933(i) "clearly encompasses intentional or willful torts"). Unlike most state law worker's compensation statutes,[9] the LHWCA does not have a provision expressly stating that an employer's intentional tort is an exception to the statute's exclusive remedy provision. *See Jenkins v. Bill Lawrence, Inc.*, No. Civ.

---

[9] Most state worker's compensation laws exempt claims for intentional acts on the part of the employer. *See* 6 Arthur Larson, *The Law of Workmen's Compensation* § 103 (2004).

A. 97-2777, 2000 WL 680254 (E.D. La. May 24, 2000) (although the Louisiana Worker's Compensation Act contains an exception to employer's tort immunity for an intentional tort, the LHWCA does not).

Notably, Plaintiff has failed to cite to any binding authority supporting its position that the exclusive remedy provision of the LHWCA provides an exception for an employee's intentional tort claims. Instead, Plaintiff has directed the Court's attention to two state court decisions interpreting the language of this federal statute.

Plaintiff's reliance upon *Bowen v. Aetna Life & Casualty Co.*, 512 So.2d 248 (Fla. Dist. Ct. App. 1987), to support its claim for an exception to the exclusive remedy provision of the LHWCA is clearly inapposite. In *Bowen*, the plaintiff brought a claim against *the employer's insurance company* for intentional infliction of emotional distress for refusal to pay benefits. This case is not only irrelevant to the facts at issue here, but its holding has also been rejected by other courts. *See, e.g., In re Bender Shipbuilding & Repair Co. Inc.*, 879 So.2d 577 (Ala. 2003) (finding the plaintiff's claim for intentional refusal to pay benefits was preempted by the LHWCA and noting that the majority of federal courts that have addressed the question of whether an employee's state law claim for bad faith termination of LHWCA benefits, or the intentional infliction of emotional distress for the termination of LHWCA benefits, have determined that such claims are preempted by the LHWCA).

In addition, *Malbrough v. Halliburton Logging Services, Inc.* 710 So.2d 1149, 1152 (La. Ct. App. 1998), the Louisiana state court case cited by Plaintiff, simply ignores

the clear language of the statute as well as federal court precedent on this issue.[10] *See Sharp v. Elkins*, 616 F.Supp. 1561, 1567 (W.D. La. 1985) (Section 933(i) of the LHWCA "completely obliterates the rights at common, civil or maritime law against a fellow employee. A determination in this case that a common-law cause of action against a fellow employee for intentional tort still exists under the Act, would prostitute that finding.") (internal citations omitted). Plaintiff may not evade the clear federal preemption mandate of the LHWCA and DBA by citation to state court cases that attempt to carve out an exception for intentional torts that is contrary to the express language of the federal statute. Accordingly, Plaintiff's claims for any intentional torts should be dismissed. *See Sharp, supra*, 616 F.Supp. at 1567 (the plaintiff's intentional tort claim was preempted by the immunity afforded a fellow employee under 33 U.S.C. § 933(i)).

IV.  **EVEN ASSUMING THE DBA DOES ALLOW CLAIMS AGAINST EMPLOYEES FOR INTENTIONAL TORTS, THE COMPLAINT DOES NOT ALLEGE SUFFICIENT INTENTIONAL MISCONDUCT TO SUPPORT A CLAIM AGAINST DEFENDANT MCQUOWN.**

Although Defendant McQuown asserts that the DBA and LHWCA provide Plaintiff with its exclusive remedy under the facts of this case, should the Court recognize an intentional tort exception to the exclusive remedy provision of the LHWCA, Plaintiff has failed to set forth facts sufficient to state a claim for an intentional tort. Plaintiff does not even meet the standard set forth in the case upon which it relies: "the plaintiff must allege a genuine intentional injury. The courts require the claimant to submit proof of a specific intent to injure the employee." *Malbrough, supra*, 710 So.2d at 1152.

---

[10] Despite claiming that *Sharp, supra*, "has been criticized and declined to follow by other courts" (Opposition at 21), *Malbrough* is the *only* authority cited by Plaintiff to support this claim.

Here, Plaintiff has not alleged a "genuine intentional injury" or a "specific intent to injure" Decedents. *See* Plaintiff's Memorandum of Law in Opposition to McQuown's Motion to Dismiss at 20. None of the allegations contains any assertions of an intention to specifically injure Decedents. At best, Plaintiff has alleged that Defendants knew that sending Decedents out on the mission "could result in death to the entire team." *Complaint* at ¶ 56. This does not rise to the level of a specific intent to injure, and Plaintiff's claims for intentional torts must be dismissed. *See, e.g. Houston v. Bechtel Assoc. Prof. Corp.*, 522 F.Supp. 1094, 1095 (D.D.C. 1981) (motion to dismiss granted; LHWCA barred claim against employer that it had "willfully, wantingly, recklessly, negligently and in violation of the applicable safety regulations exposed plaintiff to unusually high levels of silica dust, as a result of which he contracted silicosis.")

## CONCLUSION

Defendant McQuown respectfully submits that this Court should grant his Motion to Dismiss for the reasons stated above.

This the 11th day of March, 2005.

Respectfully submitted,

**POWELL GOLDSTEIN LLP**

_____
Ralph J. Caccia
DC Bar No. 412557
William C. Crenshaw
DC Bar No. 968545
901 New York Ave., N.W.
Third Floor
Washington, D.C. 20001
202-624-7380 (phone)
202-624-7222 (fax)

10

                **Cranfill, Sumner & Hartzog, LLP**

                */s/ Patricia L. Holland*
                Patricia L. Holland
                Post Office Box 27808
                Raleigh, North Carolina  27611-7808
                Telephone:  (919) 828-5100
                Facsimile:  (919) 828-2277
                State Bar No. 8816
                LR 83.1 Counsel

                ATTORNEYS FOR JUSTIN L. MCQUOWN

::ODMA\PCDOCS\WSH\347224\1

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served the foregoing REPLY OF JUSTIN L. MCQUOWN TO PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS in the above-entitled action on all of the parties to this cause by:

_____    Hand delivering a copy hereof to the attorney for each said party addressed as follows:

__X__   Depositing a copy hereof, postage prepaid, in the United States Mail, addressed to the attorney for each said party as follows:

_____    Depositing a copy hereof with a nationally recognized overnight courier service, for overnight delivery, addressed to the attorney for each said party as follows:

_____    Telecopying a copy hereof to the attorney for each said party as follows:

| | |
|---|---|
| David F. Kirby, Esq. | Daniel J. Callahan, Esq. |
| William B. Bystrynski, Esq. | Brian J. McCormack, Esq. |
| Kirby & Holt, LLP | Marc P. Miles, Esq. |
| Post Office Box 31665 | Callahan & Blaine, APLC |
| Raleigh, North Carolina 27622 | 3 Hutton Centre Dr., Ste. 900 |
| *Attorneys for Plaintiff* | Santa Ana, California 92707 |
| | *Attorneys for Plaintiff* |

Fred F. Fielding, Esq.
Margaret A. Ryan, Esq.
WILEY REIN & FIELDING, LLP
1776 K Street NW
Washington, DC 20006

Mark A. Ash, Esq.
Kirk G. Warner, Esq.
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL &
   JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602
*Attorneys for Blackwater Lodge and Training Center, Inc., and Blackwater Security Consulting, LLC*

This the 11th day of March, 2005.

::ODMA\PCDOCS\WSH\347224\1