

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:05-CV-48 FL (1)



RICHARD P. NORDAN, as Ancillary )
Administrator for the separate Estates of )
STEPHEN S. HELVENSTON, MIKE R. )
TEAGUE, JERKO GERALD ZOVKO and )
WESLEY J.K. BATALONA, )
  )
      Plaintiffs, )
  )
v. )
  )
BLACKWATER SECURITY )
CONSULTING, LLC, a Delaware Limited )
Liability Company; BLACKWATER )
LODGE AND TRAINING CENTER, INC., )
a Delaware Corporation, JUSTIN L. )
MCQUOWN, an individual; and THOMAS )
POWELL, an individual, )
  )
      Defendants. )
_____ )

**PLAINTIFF'S MEMORANDUM
OF LAW IN REPLY TO DEFENDANT
JUSTIN L. MCQUOWN'S OPPOSITION
TO MOTION FOR REMAND**

The Plaintiff hereby submits this Memorandum of Law in reply to the Defendant JUSTIN L. MCQUOWN's Opposition to the Motion for Remand.

## STATEMENT OF LAW

**A.     This Court Lacks Subject Mater Jurisdiction Over this Case.**

This court lacks subject matter jurisdiction over the action because: (1) An anticipated defense cannot serve as the basis for removal jurisdiction; and (2) The Defense Base Act does not completely preempt any and all state law.

**1.     An Anticipated Defense Cannot Serve as the Basis for Removal Jurisdiction.**

Any defenses which this Defendant may assert throughout the litigation <u>do not</u> create federal subject matter jurisdiction. This principle is a pillar of federal civil procedure. *See Taylor*, 234 U.S. at 75; *Franchise Tax Board*, 463 U.S. at 10; *Gully v. First National Bank*, 299 U.S. 109 (1936); *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58 (1987); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987); *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 163 (1997); and *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 472 (1998).

Simply because a federal statute *may* preempt or exclude liability on state causes of action, said statute <u>does not</u> create federal subject matter jurisdiction. This precise principle has been clearly articulated by the U.S. Supreme Court not less than three times in the past 20 years. "Federal pre-emption is ordinarily a federal defense to the Plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63 (1987); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987). The Supreme Court has also recognized and accepted the fact that, similar to this case, state courts will be charged with the task of resolving federal defenses to state law claims:

> Although such allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution. For better or worse, under the present statutory scheme as it has existed since 1887, a defendant

1

may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case "arises under" federal law. [Italics in original.] *Franchise Tax Board*, 463 U.S. at 10.

In the instant action, the factual allegations and claims contained in the Complaint simply do not "arise under" federal law. Instead, the facts contained in the Complaint give rise to two state law claims for wrongful death and fraud. The Defendant is still free to assert his federal defenses, but must do so in state court.

### 2. There is no "Complete Preemption" of the Plaintiff's Claims.

For there to be "complete preemption" of an entire area of state law, there must be **CLEAR** Congressional intent for the federal law to obliterate any and all state law. First, neither the U.S. Supreme Court, the Fourth Circuit, nor any other Circuit or District Court in the nation has ever found the Defense Base Act to completely preempt any and all state law. Second, there is nothing in the legislative history of the Defense Base Act which clearly indicates Congress's intention for complete preemption.

The only reliance this Defendant has asserted in support of his argument is based upon bits and pieces of *dicta* from a handful of cases, which—when closely examined—never actually address the issue of whether the Defense Base Act completely preempts any and all state law for the purpose of federal removal jurisdiction. The relied-upon language is simply non-controlling judicial *dicta*—which does not constitute an intent Congress did not otherwise formulate in passing the Defense Base Act.

In a case <u>directly on point</u>, *Aaron v. National Union Fire Insurance Company*, 876 F.2d 1157 (5th Cir. 1989). The same issue contained in the instant case was address by the Court in *Aaron*, except in the context of the LHWCA, instead of the Defense Base Act. The Defendants argued that the exclusive remedy provision of the LHWCA is a federal question, and although asserted as a defense, it completely preempts state law. In a well-reasoned decision, the Fifth

2

Circuit analyzed general removal jurisdiction and the exception thereto. The issue was whether the LHWCA "completely preempts" state law to convert the Plaintiffs' state law claim into one over which the federal court could exercise original jurisdiction. The Court analyzed the "completed preemption" exception as set forth in *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968). *See Id.* at 1161. First, the Court recognized that, up until that point in time, there had only been a judicial finding that <u>two</u> federal statutes completely preempted state law: the LMRA and ERISA. *See Id.* at 1162-63. Next, the Court analyzed the LHWCA to determine whether it has the same force and effect as those statutes to completely preempt state law. The Court concluded it does not. *Id.* at 1164.

Nonetheless, the defendants in *Aaron* argued that the LHWCA expressly denied the plaintiff's cause of action, and thus there existed complete preemption. The Court rejected this argument:

> However, the "express denial" of a cause of action will always be present where federal law preempts state law. Every time federal preemption is asserted as a defense, and the defendant seeks to use that defense as a basis for removal jurisdiction, the defendant can assert that the "express denial" language of *Franchise Tax* is satisfied. <u>Something more must therefore be required to create removal jurisdiction if the well-pleaded complaint rule is to have continued vitality, a result clearly indicated by the cases.</u> [Emphasis added.] *Id.* at 1165.

Ultimately, the Court expressly and undeniably found that the LHWCA does NOT have the preemptive force to create federal removal jurisdiction:

> The LHWCA contains no specific jurisdictional grant similar to those found in ERISA and the LMRA. On the contrary, federal question jurisdiction can only be obtained from claims regarding the LHWCA under the general federal question provisions of *28 U.S.C. § 1331* (1976). Further, the legislative history of the statute is devoid of any indication of the kind of congressional intent to exist with respect to ERISA. **The argument that the LHWCA is among the few statutes to which the *Avco* exception will apply must therefore fail. There is no federal cause of action the plaintiffs could have pleaded, and the parties have not pointed to, nor have we found, any expression in the statute or the legislative history of congressional intent to apply something similar to *Avco* exception. The exclusivity provision of section 905, coupled with the**

3

**admittedly broad scope of the LHWCA, is not enough under *Avco, Franchise Tax* and *Taylor* to create an *Avco* exception. <u>The LHWCA is, in this case, nothing more than a statutory defense to a state-court cause of action — the classic circumstance of non-removability.</u>** [Emphasis added.] *Id.* at 1165-66.

The Court further noted that since the *Avco* exception was created in 1968, Congress has twice amended the LHWCA, at which times it certainly could have expressed its intention for complete preemption. However, it did not. "Further, we note that broad amendments were made to the statute in both 1972 and 1984. Thus, the statute has been amended twice since the decision in *Avco* and once since the passage of ERISA and the legislative history of the amendments is similarly devoid." *Id.* at 1166, fn 14.

By the same token, the Defense Base Act has been amended by Congress <u>five</u> times since its enactment, and the plain language and legislative history of the amendments is similarly devoid of any intent by Congress for complete preemption. With both of these statutes and their subsequent amendments, Congress certainly had the opportunity to express its intention for them to provide complete preemption—but declined to do so.

**B.    The Defense Base Act Does Not Apply to the Instant Action.**

The Defense Base Act does not apply to the instant case because: (1) The decedents were independent contractors and not employees; (2) They were not engaged in any of the six types of work to which the Act applies; and (3) The wrongful conduct was intentional and not negligent.

**1.    The Decedents Were Independent Contractors and Not Employees.**

This Defendant contends that the Decedents were "employees" of Blackwater. In doing so, he relies upon three paragraphs in the Complaint, which describe the false representations made by BLACKWATER. However, what this Defendant did not reveal to the court is the language in the Complaint specifically relating to the employment relationship between the Decedents and BLACKWATER: **"Helvenston, Teague, Zovko and Batalona, and each of**

4

**them, were hired by BLACKWATER as independent contractors, and were at no relevant time employees of BLACKWATER."** [*Complaint*: ¶ 31.] Therefore, when looking to the actual allegations contained in the Complaint, and considering them as true as this court must do for the instant Motion for Remand, the Decedents were not employees of BLACKWATER, but instead were expressly independent contractors.

The Defense Base Act only applies to "employees" of a company, and does not apply to independent contractors. *See* 42 U.S.C. § 1651(a). Consequently, for the purpose of analyzing the instant Motion for Remand, it can be readily determined that the Decedents were independent contractors of BLACKWATER, and thus the Defense Base Act is inapplicable. The Court's analysis should end here, and the case should be remanded. However, out of an abundance of caution, the balance of the Defendant's argument will be addressed herein below.

While ignoring these pertinent factual allegations in the Complaint, this Defendant attempts to argue that the paragraphs it relies upon indicate that the Decedents were employees of BLACKWATER. The determination of whether an individual is an employee or an independent contractor is premised upon an analysis of a number of common law factors. *See National Labor Relations Board v. United Insurance Co.*, 390 U.S. 254, 256 (1968).

In *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 322 (1992), the U.S. Supreme Court articulated the numerous factors to consider in the determination of whether a person is an employee or independent contractor. *See Id.* at 323; *see also Hayes v. Board of Trustees of Elon College*, 224 N.C. 11, 16 (1944); Cf. *Restatement (Second) of Agency; 220 (2)* (1958). "Since the common-law test contains no shorthand formula or magic phrase that can be applied to find the answer . . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Id.*; and *Hayes*, 224 N.C. at 16.

However, the determination of whether the Decedents were employees or independent

5

contractors is a mixed question of law and fact, which cannot be decided in the context of the instant Motion for Remand. "Whether a party is an independent contractor is a mixed question of law and fact. Determining the terms of the agreement between the parties is a question of fact. Once the factual disputes are resolved, deciding whether that agreement establishes an independent contractor relationship is a matter of law." *Johnson v. The News and Observer Publishing Company*, 604 S.E. 2d 344, 346 (2004).

To the extent that an analysis of the factors listed above is to be performed, it necessarily involves an extensive determination and resolution of facts. Such a factual determination by this court would invade the province of the jury. Essentially, the factors of this analysis concern "whether the party for whom the work is being done has the right to control the worker with respect to the manner or method of doing the work, as distinguished from the right merely to require certain definite results conforming to the contract." *Pearson v. Peerless Flooring Company*, 247 N.C. 434, 443 (1958). Although the court should not even reach the issue of analyzing these factors, it is worthy to note that this Defendant has misapplied the allegations in the Complaint to said factors.

For example, in attempting to argue that BLACKWATER exercised complete control over the Decedents, this Defendant states: "Blackwater determined whether the threat level was too high to perform the mission." [*Opposition*: pg. 7.] However, this contention is not at all what the factual allegations in the Complaint allege. The paragraph this Defendant cites in support of his contention *actually* states: "They [Decedents] were told that each security detail mission would be subject to a Risk Assessment completed prior to the mission, and that if the threat level was too high, **they** would have the option of not performing the mission." [Emphasis added.] [*Complaint*: ¶ 13f.] Thus, this factual allegation clearly places the control over whether to even perform the security missions with the Decedents—not BLACKWATER.

6

Similarly, this Defendant erroneously contends: "Blackwater determined the logistics to carry out the security detail." [*Opposition*: pg. 7.] However, in looking to the actual language cited by the Defendant in support of this proposition, the Complaint states: "They [Decedents] were told that **they** would be afforded the opportunity to review the travel routes, gather intelligence about each mission, do a pre-trip inspection of the route and determine the proper logistics to carry out the security detail." [Emphasis added.] [*Complaint*: ¶ 13g.] Once again, this Defendant has mischaracterized the allegations contained in the Complaint, which reveal that the control over the method and manner by which the Decedents performed their work resided within their own discretion—which is a classic indication of an independent contractor relationship.

In all, this court should take the allegations contained in the Complaint as true, and find that the Decedents were independent contractors, and were at no relevant time employees of BLACKWATER. Furthermore, at this point of the litigation, and without the benefit of all parties having conducted discovery on these issues, the court should not be engaged resolving questions of fact concerning the agreement(s) between the parties in analyzing the independent contractor relationship. Finally, to the extent that this court feels compelled to decide questions of fact, this Defendant's application of the facts contained in the Complaint are misplaced, in that the allegations in the Complaint describe the Decedents' ability to control the method and manner by which they conducted their security operations. This control leads to the conclusion that they were independent contractors.

In all, the Decedents were not employees of BLACKWATER, but instead were independent contractors. The Defense Base Act does not apply to independent contractors, and thus it does not cover the death of the Decedents. Since it does not cover the death of the Decedents, it cannot preempt the Plaintiff's state law claims. Hence, remand should be granted.

### 2. The Decedents Were Not Engaged in Any of the Six Categories of Work in the Defense Base Act.

The Defense Base Act applies to any injury or death of an "employee" engaged in six specific categories of employment. *See* 42 U.S.C. § 1651(a)(1)-(6). The work being performed by the Decedents, as alleged in the Complaint, does not fall within any of these six categories of employment. This Defendant contends that category 4 of the Act applies, which relates to employment "under a contract entered into with the United States . . . ." 42 U.S.C. §1651(a)(4).

This category of employment under the Defense Base Act does not apply to the instant case, in that the Decedents were not engaged in employment pursuant to a contract with the United States (or an agency thereof). The structure of the contracts articulated in the Complaint, which are deemed to be true, is extremely clear. A Cyprus Corporation named ESS entered into a contract with a Kuwaiti Corporation named REGENCY. REGENCY then entered into a contract with BLACKWATER. [*Complaint*: ¶¶18-22.] The services for which BLACKWATER entered into the contract with REGENCY were to provide security services "for ESS's catering operations in the Middle East." [*Complaint*: ¶21.] In turn, BLACKWATER then entered into Independent Contractor Service Agreements with the Decedents. [*Complaint*: ¶31.]

Nowhere within the Complaint are there any allegations whatsoever that the Decedents were working pursuant to a contract with the United States. Even the Defendant himself cannot cite this court to any such contract with the United States. The only mention of such a contract with the United States is defense counsel's conjecture in his Opposition Brief.

However, even this conjecture misinterprets the allegations contained in Paragraph 18 of the Complaint. Paragraph 18 indicates that ESS is "a business with two divisions: <u>one which provides catering support services</u> and <u>the other which provides design and building services to U.S. Armed Forces and other U.S. contracting agencies in Iraq and Kuwait.</u>" [Emphasis added.]

[*Complaint* ¶18.] What is misinterpreted by this Defendant is the fact that the Complaint alleges that BLACKWATER and the Decedents entered into a contract to support ESS's "catering services." [*Complaint*: ¶¶21-22.] However, there are <u>no</u> allegations that indicate BLACKWATER entered into a contract to provide security services for ESS's other division, which provides design and building services to the U.S. Armed Forces.

Nonetheless, the Defendant has attempted to categorize the Decedents' employment as one in which they provided security services for the U.S. Armed Forces, and thus *somehow* had entered into an unidentified contract with the United States. However, this concept is purely a fiction, and found nowhere in the Complaint.

In all, this court will be hard-pressed to find the existence of a contract between the Decedents and the United States government, which would bring their scope of employment within category 4 of Section 1651(a). Not only are the Decedents not employees which would subject them to the provisions of the Defense Base Act, but their employment does not fall within any of the six categories articulated therein. Thus, the Defense Base Act does not apply.

### 3.   The Defendant's Wrongful Conduct Was Intentional and Not Negligent.

The Complaint in this matter alleges an intentional tort for wrongful death against Defendant MCQUOWN. The factual allegations that support this cause of action are based exclusively upon intentional conduct:

> "JUSTIN MCQUOWN and TOM POWELL knew that sending Scott Helvenston and the three other team members out on a mission into Fallujah in this condition—without a six-member team, without armored vehicles, and without directions or maps—could result in death to the entire team." [*Complaint*: ¶ 56.]
>
> "On March 30, 2004, JUSTIN MCQUOWN and TOM POWELL sent this team out, without the required six-members, without armored vehicles and without even a map for directions . . . ." [*Complaint*: ¶ 57.]
>
> "[A]t the direction of JUSTIN MCQUOWN, TOM POWELL sent only four contractors on the security detail, in direct violation of all of BLACKWATER's

9

policies and agreements. [*Complaint*: ¶ 51.]

"JUSTIN McQUOWN . . . intentionally, deliberately and with reckless disregard for their health and safety, sent Helvenston, Teague, Zovko and Batalona, and each of them, into the very high-risk area of Fallujah, without the required [vehicles, weapons, intelligence and logistics]." [*Complaint*: ¶69.]

However, the Defense Base Act, and by extension the LHWCA, does not apply to intentional conduct, but instead applies only to accidental or negligent conduct (similar to almost all state workers' compensation acts). "[T]he exclusivity provision of the Longshoreman and Harbor Worker's Compensation Act is limited to accidental injury arising out of and in the course of employment." *Bowen v. Aetna Life and Casualty Co.*, 512 So.2d 248, 249-50 (1987).

In *Malbrough v. Halliburton*, 710 So.2d 1149 (1998), the court held that the LHWCA applies only to negligent conduct, and "the LHWCA does not preclude an employee from asserting a cause of action based upon an intentional tort." *Id.* at 1150. In articulating the distinction between negligent and intentional conduct, the court recognized that "Congress intended to immunize fellow workers from <u>negligent</u> acts. Accordingly, the federal court have held that actions against fellow employees based upon <u>negligence</u> are barred by § 933(I)." [Emphasis added.] *Id.* at 1151-52. However, the LHWCA does **not** bar actions for intentional torts: "We find no logical reason to bar a LHWCA covered employee from bringing a state tort suit against a fellow employee whose intentional injury caused him damage." *Id.* at 1152.

Therefore, in addition to the Decedents not being "employees" under the Defense Base Act, and in addition to the Decedents not being engaged in the categories of employment covered by the Defense Base Act, the type of conduct alleged in the Complaint [an intentional tort] falls outside the exclusivity provisions of the Defense Base Act and by extension the Longshore and Harbor Workers' Compensation Act. Hence, the Defense Base Act does not apply to this case.

10

## CONCLUSION

Based on the foregoing, it is respectfully requested that this court remand the case back to the North Carolina Superior Court, Wake County, for want of jurisdiction, and award Plaintiff recovery of attorney's fees in the amount of $12,123.

This 15th day of March 2005.

CALLAHAN & BLAINE, APLC

By: _____
DANIEL J. CALLAHAN (Cal. Bar No. 91490)
BRIAN J. McCORMACK (Cal. Bar No. 167547)
MARC P. MILES (Cal. Bar No. 197741)
3 Hutton Centre Drive, Suite 900
Santa Ana, California 92707
(714) 241-4444
Fax: (714) 241-4445
Attorneys for Plaintiff
RICHARD P. NORDAN, as the Ancillary Administrator of the separate Estates of STEPHEN S. HELVENSTON, MIKE R. TEAGUE, JERKO GERALD ZOVKO and WESLEY J.K. BATALONA

KIRBY & HOLT, LLP

By: _____
DAVID F. KIRBY (N.C. Bar No. 7841)
WILLIAM B. BYSTRYNSKI (N.C. Bar No. 20883)
P.O. Box 31665
Raleigh, North Carolina 27622
(919) 881-2111
Fax: (919) 781-8630
Attorneys for Plaintiff
RICHARD P. NORDAN, as the Ancillary Administrator of the separate Estates of STEPHEN S. HELVENSTON, MIKE R. TEAGUE, JERKO GERALD ZOVKO and WESLEY J.K. BATALONA

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served the foregoing **Plaintiff's Memorandum of Law in Reply to Defendant Justin L. McQuown's Opposition to Motion for Remand** in the above-entitled action on all of parties to this cause by depositing a copy, postage prepaid, in the United States Mail, addressed as follows:

Fred F. Fielding
Margaret A. Ryan
*Attorneys for Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc.*
Wiley Rein & Fielding LLP
1776 K Street, NW
Washington, DC 20006

Kirk G. Warner
Mark A. Ash
*Attorneys for Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc.*
Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP
P. O. Box 2611
Raleigh, NC 27602

Ralph J. Caccia
William C. Crenshaw
Don R. Berthiaume
*Attorneys for Justin L. McQuown*
Powell Goldstein, LLP
901 New York Avenue, NW, 3rd Floor
Washington, DC 20001

Patricia L. Holland
Rachel Esposito
*Attorneys for Justin L. McQuown*
Cranfill, Sumner & Hartzog, L.L.P.
P. O. Box 27808
Raleigh, NC 27611-7808

This is 17 day of March, 2005.

David F. Kirby
Kirby & Holt, L.L.P.