**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: Blackwater Security
Consulting, LLC, a Delaware
Limited Liability Company;
Blackwater Lodge and Training
Center, Incorporated, a Delaware
Corporation,                                      No. 05-1949
                                *Petitioners.*

In Re: Justin L. McQuown,
                *Petitioner.*                     No. 05-1992

Dockets.Justia.com

2          In Re: Blackwater Security Consulting

Richard P. Nordan, as Ancillary
Administrator for the separate
Estates of Stephen S. Helvenston,
Mike R. Teague, Jerko Gerald
Zovko and Wesley J.K. Batalona,
                    *Plaintiff-Appellee,*

          and

Estate of Stephen S. Helvenston;
Estate of Mike R. Teague;
Estate of Jerko Gerald Zovko;
Estate of Wesley J.K. Batalona,
                    *Plaintiffs,*

          v.

Blackwater Security Consulting,         No. 05-2033
LLC, a Delaware Limited Liability
Company; Blackwater Lodge and
Training Center, Incorporated, a
Delaware Corporation,
          *Defendants-Appellants,*

          and

Justin L. McQuown, an individual;
Thomas Powell,
                    *Defendants.*

Professional Services Council;
International Peace Operations
Association; American
International Group,
Incorporated,
          *Amici Supporting Appellants.*

RICHARD P. NORDAN, as Ancillary
Administrator for the separate
Estates of Stephen S. Helvenston,
Mike R. Teague, Jerko Gerald
Zovko and Wesley J.K. Batalona,
          *Plaintiff-Appellee,*

          and

ESTATE OF STEPHEN S. HELVENSTON;
ESTATE OF MIKE R. TEAGUE;
ESTATE OF JERKO GERALD ZOVKO;
ESTATE OF WESLEY J.K. BATALONA,
          *Plaintiffs,*

          v.

JUSTIN L. MCQUOWN, an individual,
          *Defendant-Appellant,*          No. 05-2034

          and

BLACKWATER SECURITY CONSULTING,
LLC, a Delaware Limited Liability
Company; BLACKWATER LODGE AND
TRAINING CENTER, INCORPORATED, a
Delaware Corporation; THOMAS
POWELL,

          *Defendants.*

PROFESSIONAL SERVICES COUNCIL;
INTERNATIONAL PEACE OPERATIONS
ASSOCIATION; AMERICAN
INTERNATIONAL GROUP,
INCORPORATED,
          *Amici Supporting Appellants.*

4         IN RE: BLACKWATER SECURITY CONSULTING

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Louise W. Flanagan, Chief District Judge.
(CA-05-48-5; CA-05-48-5-FL)

Argued: March 14, 2006

Decided: August 24, 2006

Before SHEDD and DUNCAN, Circuit Judges, and
James P. JONES, Chief United States District Judge
for the Western District of Virginia, sitting by designation.

---

Appeal dismissed; petition for writ of mandamus denied; motion to
strike denied as moot by published opinion. Judge Duncan wrote the
opinion, in which Judge Shedd and Judge Jones joined.

---

## COUNSEL

**ARGUED:** C. Allen Foster, GREENBERG TRAURIG, L.L.P.,
Washington, D.C., for Petitioners/Appellants. Marc Phillip Miles,
CALLAHAN & BLAINE, A.P.L.C., Santa Ana, California, for
Appellee. **ON BRIEF:** Michael P. Socarras, Joe R. Reeder, GREEN-
BERG TRAURIG, L.L.P., Washington, D.C., Kirk G. Warner, Mark
A. Ash, SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL
& JERNIGAN, Raleigh, North Carolina, for Blackwater Security
Consulting, L.L.C., a Delaware Limited Liability Company, and
Blackwater Lodge and Training Center, Incorporated, a Delaware
Corporation; William C. Crenshaw, Ralph J. Caccia, Don R.
Berthiaume, POWELL & GOLDSTEIN, L.L.P., Washington, D.C.,
Patricia L. Holland, Rachel Esposito, CRANFILL, SUMNER &
HARTZOG, L.L.P., Raleigh, North Carolina, for Justin L. McQuown.
Daniel J. Callahan, Brian J. McCormack, CALLAHAN & BLAINE,
A.P.L.C., Santa Ana, California, David F. Kirby, William B. Bystryn-
ski, KIRBY & HOLT, L.L.P., Raleigh, North Carolina, for Richard
P. Nordan, as Ancillary Administrator for the separate Estates of Ste-

phen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley J. K. Batalona. David C. Hammond, Amy E. Laderberg, CROWELL & MORING, L.L.P., Washington, D.C., for Professional Services Council and International Peace Operations Association, Amici Supporting Appellants. Keith L. Flicker, FLICKER, GARELICK & ASSOCIATES, L.L.P., New York, New York, for American International Group, Incorporated, Amicus Supporting Appellants.

---

## OPINION

DUNCAN, Circuit Judge:

This appeal and petition for writ of mandamus require us to consider the extent to which we can review a district court order remanding a case to state court for lack of subject matter jurisdiction. Concluding that the limited exceptions to the congressional proscription of our ability to review such orders are not applicable here, we dismiss the appeal for lack of jurisdiction and decline to issue a writ of mandamus.

## I.

Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko, and Wesley J.K. Batalona (collectively, "decedents") entered into independent contractor service agreements with Blackwater Security Consulting, L.L.C., and Blackwater Lodge and Training Center, Inc., (collectively, "Blackwater") to provide services in support of Blackwater's contracts with third parties in need of security or logistical support. Blackwater assigned the decedents to support its venture with Regency Hotel and Hospital Company ("Regency") to provide security to ESS Support Services Worldwide, Eurest Support Services (Cyprus) International, Ltd. ("ESS"). ESS had an agreement to provide catering, build, and design support to the defense contractor firm Kellogg, Brown & Root, which, in turn, had arranged with the United States Armed Forces to provide services in support of its operations in Iraq.

According to the complaint, at the time the decedents entered into the independent contractor service agreements on or about March 25,

2004, Blackwater represented that certain precautionary measures would be taken with respect to the performance of their security functions in Iraq. For example, they were told that each mission would be handled by a team of no fewer than six members, including a driver, navigator, and rear gunner, and would be performed in armored vehicles; they would have at least twenty-one days prior to the start of a mission to become familiar with the area and routes to be traveled; and they would have an opportunity to do a pre-trip inspection of their anticipated route.

Instead, the complaint alleges, Blackwater failed to provide the decedents with the armored vehicles, equipment, personnel, weapons, maps, and other information that it had promised, or with the necessary lead time in which to familiarize themselves with the area. On March 30, 2004, the decedents' supervisor, Justin McQuown, directed them to escort three ESS flatbed trucks carrying food supplies to a United States Army base known as Camp Ridgeway. Lacking the necessary personnel and logistical support, the decedents ultimately became lost in the city of Fallujah. Armed insurgents ambushed the convoy; murdered the decedents; and beat, burned, and dismembered their remains. Two of the mutilated bodies were hung from a bridge.

Richard Nordan, in his capacity as administrator for the decedents' estates, sued Blackwater and McQuown (hereinafter referred to collectively as "Blackwater") in the Superior Court of Wake County, North Carolina, alleging causes of action for wrongful death and fraud under North Carolina tort law. Blackwater removed Nordan's action to federal district court. It asserted that 28 U.S.C. § 1441(a) (2000) permitted removal both because the Defense Base Act ("DBA"), 42 U.S.C. §§ 1651-1654 (2000), completely preempted Nordan's state-law claims, and because the issues in the case presented unique federal interests sufficient to create a federal question. Once in federal court, Blackwater moved to dismiss the case, arguing that the district court lacked subject matter jurisdiction because the DBA covered Nordan's claims and, therefore, that Nordan could litigate his claims only before the Department of Labor, which decides DBA claims in the first instance.

The district court first considered whether Blackwater had met its burden of establishing federal removal jurisdiction. *Nordan v. Black-*

*water Sec. Consulting*, 382 F.Supp.2d 801, 806 (E.D.N.C. 2005). In concluding that Blackwater had not met this burden, the district court rejected both of Blackwater's asserted bases for removal jurisdiction. The court reasoned that, because the DBA grants the Secretary of Labor exclusive original jurisdiction over DBA claims, the statute does not completely preempt state-law claims; the hallmark of complete preemption, the district court concluded, is the presence of original jurisdiction over the matter in federal district court. *Id.* at 807-10 (citing *Lontz v. Tharp*, 413 F.3d 435, 442-43 (4th Cir. 2005)). Further, the court determined that Blackwater's assertion of removal jurisdiction by way of a unique federal interest in the adjudication of Nordan's claims "assume[d] the very conclusion which [the] court lack[ed] jurisdiction to reach, namely that the decedents in this case are covered as employees under the DBA." *Id.* at 813.

Finding no basis for removal, the district court concluded that it lacked subject matter jurisdiction and, citing 28 U.S.C. § 1447(c) (2000),[1] determined that it must remand the case. *Nordan*, 382 F.Supp.2d at 813-14. Although Blackwater encouraged the district court to remedy its lack of jurisdiction by dismissing the case rather than remanding it, the district court further concluded that it lacked the authority to dismiss. The court reasoned that federal district courts play no role in the adjudication or review of DBA claims[2] and, therefore, that it had no jurisdiction to decide whether the DBA applied to Nordan's claims. *Id.* at 814. The district court thus remanded the case to state court without reaching the merits of Blackwater's motion to dismiss.

---

[1]Section 1447(c) provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. . . . The State court may thereupon proceed with such case."

[2]The district court incorrectly concluded that the federal district courts play no role in the adjudication of DBA claims. The federal district courts, followed by the federal courts of appeals and the United States Supreme Court, review DBA claims after they have been initially adjudicated in the Department of Labor. *See* 42 U.S.C. § 1653(b) (2000); *see also Lee v. Boeing Co., Inc.*, 123 F.3d 801, 803-05 (4th Cir. 1997) (describing agency and judicial review of DBA claims).

Blackwater now seeks review, via both an ordinary appeal and a petition for a writ of mandamus. For the reasons that follow, we hold that we lack jurisdiction to hear the appeal and decline to issue a writ of mandamus.[3]

## II.

We first address the issue of our authority to review this case by appeal. Blackwater faces a formidable hurdle in this regard because Congress has severely circumscribed federal appellate review of certain orders remanding a case to the state court from which it was removed. We begin our analysis with a review of the body of law related to and developed from that jurisdictional circumscription. We then address whether the principles inherent in that body of law allow us to exercise appellate jurisdiction in this case.

## A.

### 1.

The legal principles that govern appellate jurisdiction in this case derive from Congress's limitation on our authority to review remand orders. A district court order "remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."[4] 28 U.S.C. § 1447(d) (2000). This limitation on review applies even if the remand order is "manifestly, inarguably erroneous." *Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1450 (4th Cir. 1996) (Phillips, J., specially concurring and delivering the opinion of the court on the issue of subject matter jurisdiction) (citing *Gravitt v. Sw. Bell Tel.*

---

[3]Nordan moved to strike a portion of the record that Blackwater submitted on appeal. Because we dismiss the appeal and the petition for lack of jurisdiction, we deny this motion as moot.

[4]The full text of § 1447(d) is as follows:

An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

*Co.*, 430 U.S. 723 (1977) (per curiam)). If the plain language of the statute were all that we had to consult, we might not tarry long with the notion that we could entertain a review of the merits of this case. Several cases, however, provide for limited exceptions to the reach of § 1447(d).[5]

First, the Supreme Court has interpreted § 1447(d) to prohibit review only when the order of remand was based upon § 1447(c), which requires remand when the district court determines that it lacks subject matter jurisdiction. *See Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 346 (1976) ("[O]nly remand orders issued under § 1447(c) and invoking the grounds specified therein . . . are immune from review under § 1447(d)."), *overruled on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 714-15 (1996).

Second, § 1447(d) does not prohibit review of a collateral decision that is severable from the remand order. *See City of Waco v. U.S. Fid. & Guar. Co.*, 293 U.S. 140, 143 (1934) (holding § 1447(d) inapplicable to the portion of a remand order that dismissed a cross-claim because the dismissal "in logic and in fact . . . preceded [the order] of remand and was made by the District Court while it had control of the cause . . . . [A]nd, if not reversed or set aside, [the dismissal] is conclusive upon the petitioner"); *see also Nutter v. Monongahela Power Co.*, 4 F.3d 319, 321 (4th Cir. 1993) ("[W]here portions of a remand order are 'in logic and in fact' severable from the court's determinations regarding remand, we may review the severable portions of the order on appeal.") (citing *Waco*, 293 U.S. at 143).

Finally, § 1447(d) does not prohibit review of a remand order if

---

[5]In addition to the judicially developed exceptions upon which we focus today, § 1447(d) itself permits review of a remand order in a case removed to federal court pursuant to 28 U.S.C. § 1443 (2000), which concerns removal of state civil and criminal actions involving civil rights claims. In addition, a separate statute allows review of remand orders in cases concerning certain land restrictions applicable to the Five Civilized Tribes of Oklahoma. *See* Act of Aug. 4, 1947, ch. 458, sec. 3(c), 61 Stat. 731, 732, 25 U.S.C. § 355 note (2000); *see also* 28 U.S.C. § 1447 note (2000) (Exception to Subsection (d)). Neither statutory provision is at issue in this case.

that order exceeds the scope of the district court's authority. *See Thermtron*, 423 U.S. at 351 (holding that § 1447(d) does not bar review of a remand order based on "grounds that [the district court] had no authority to consider" because such action "exceed[s] [the court's] statutorily defined power"); *Borneman v. United States*, 213 F.3d 819, 826 (4th Cir. 2000) ("§ 1447(d) prohibits review of district courts' determinations of whether jurisdictional statutes have been satisfied, not review of determinations where district courts exceed their jurisdictional authority") (citing *Thermtron*, 423 U.S. at 351). The issue before us is whether one of these limited exceptions to the broad jurisdictional proscription of § 1447(d) applies to the district court's actions in this case.

### 2.

In order to determine whether an exception to § 1447(d) allows us to exercise appellate jurisdiction in this case, we draw from a related body of statutory text and jurisprudence governing removal of cases from state court to federal district court. Except as federal law may otherwise provide, when a defendant removes a state civil action to federal district court, federal removal jurisdiction exists if the action is one "of which the district courts of the United States have original jurisdiction." § 1441(a). Among other categories of cases, the federal district courts possess original jurisdiction over civil cases raising federal questions, which are "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2000). Removal jurisdiction is not a favored construction; we construe it strictly in light of the federalism concerns inherent in that form of federal jurisdiction. *See Lontz*, 413 F.3d at 440. The party seeking removal bears the burden of demonstrating that removal jurisdiction is proper. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

Under what has become known as the well-pleaded complaint rule, § 1331 federal question jurisdiction is limited to actions in which the plaintiff's well-pleaded complaint raises an issue of federal law; actions in which defendants merely claim a substantive federal defense to a state-law claim do not raise a federal question. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). In other words, a defendant may not defend his way into federal court

because a federal defense does not create a federal question under § 1331.

The doctrine of complete preemption provides a corollary to the well-pleaded complaint rule. This doctrine recognizes that some federal laws evince such a strong federal interest that, when they apply to the facts underpinning the plaintiff's state-law claim, they convert that claim into one arising under federal law. *See, e.g., Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987). Because complete preemption transforms a state-law claim into one arising under federal law, "the well pleaded complaint rule is satisfied" even though the complainant never intended to raise an issue of federal law. *Lontz*, 413 F.3d at 441. However, "the sine qua non of complete preemption is a preexisting federal cause of action that can be brought in the district courts. . . . Congress's allocation of authority to an agency and away from district courts defeats a complete preemption claim . . . ." *Id.* at 442-43. The doctrine of complete preemption, therefore, concerns itself with the uniquely jurisdictional inquiry into whether a purportedly state-law claim actually arises under federal law so as to create federal jurisdiction over that claim.

By contrast, under the principles of "ordinary" preemption, some federal laws may simply provide either a substantive defense to a plaintiff's state-law claims or a right to adjudication of those claims in a federal administrative forum or according to a federal scheme. *See generally id.* at 440. "Complete preemption is a jurisdictional doctrine, while ordinary preemption simply declares the primacy of federal law, regardless of the forum or the claim." *Id.* (internal quotation marks and citation omitted). The presence of ordinary federal preemption thus does not provide a basis for federal question jurisdiction, and, in a case removed from state court on the basis of federal question jurisdiction, is relevant only after the district court has determined that removal was proper and that it has subject matter jurisdiction over the case.

B.

We now turn our attention to the district court's actions in this case to determine whether § 1447(d) removes our ability to hear it.

1.

As we have explained, § 1447(d) bars appellate review of a remand order only if that order was issued pursuant to § 1447(c)'s instruction to remand removed cases over which the district court possesses no subject matter jurisdiction. *See Thermtron*, 423 U.S. at 346. However, a district court's mere citation to § 1447(c) is insufficient to bring a remand order within the purview of that provision. We must instead look to the substantive reasoning behind the order to determine whether it was issued based upon the district court's perception that it lacked subject matter jurisdiction. *See, e.g.*, *Borneman*, 213 F.3d at 824-25 ("Whether a district court's remand order is reviewable under § 1447(d) is not determined by whether the order explicitly cites § 1447(c) or not. The bar of § 1447(d) applies to any order invoking substantively one of the grounds specified in § 1447(c).") (internal citation omitted).

The district court's remand order in this case clearly falls within the ambit of § 1447(c)'s requirement of remand in the absence of subject matter jurisdiction. The court first concluded that the DBA did not completely preempt overlapping state law and thus did not create a federal question. *Nordan*, 382 F.Supp.2d at 807-11. It then reasoned that Blackwater's assertion of a unique federal interest in the adjudication of Nordan's claims likewise did not confer federal removal jurisdiction. *Id.* at 811-13. The district court cited the untenability of these two suggested jurisdictional bases as the source of its decision to remand the case. "[T]his court lacks subject matter jurisdiction over this cause of action . . . . [W]here the court finds no basis for subject matter jurisdiction, § 1447(c) compels the court to remand this action to state court. . . . Accordingly . . . remand, rather than dismissal for lack of subject matter jurisdiction, is proper." *Id.* at 813-14.

To conclude that the remand order was issued pursuant to § 1447(c), we need not delve into whether the district court was correct to hold that it lacked subject matter jurisdiction over the removed action. Rather, an order is issued pursuant to section § 1447(c) if the district court *perceived* that it was without jurisdiction over the cause. *See, e.g.*, *Mangold*, 77 F.3d at 1450 (holding that courts must "look past contextually ambiguous allusions and even specific citations to § 1447(c) to determine by independent review of the record the actual

grounds or basis upon which the district court considered it was empowered to remand"). Furthermore, as we have noted, § 1447(d)'s jurisdictional bar applies with equal force to unassailably correct and "manifestly, inarguably erroneous" orders of remand. *Id.* Because the reasoning behind the district court's remand order in this case indicates the court's belief that it lacked subject matter jurisdiction upon removal, we conclude that the remand order was issued pursuant to § 1447(c) and, consequently, that § 1447(d) prohibits our review of that order.

2.

Having determined that the order before us was, indeed, predicated upon § 1447(c), and therefore within the purview of § 1447(d), we turn now to a consideration of whether one of the other judicially created exceptions to § 1447(d) applies. The severable order exception to § 1447(d) set forth in *Waco* allows appellate review of certain distinct component decisions that may be issued as part of a remand order. We first discuss the contours of the *Waco* severable order exception and then consider whether *Waco* permits review of two constituent aspects of the district court's remand order.

a.

The Supreme Court in *Waco* construed § 1447(d) not to prohibit categorically appeals of certain orders in cases that had been remanded to state court. In that case, the district court dismissed the claim upon which the court's removal jurisdiction had been based; it then remanded the case to the state court because, once the claim was no longer part of the case, no basis for federal jurisdiction existed. The Supreme Court held that § 1447(d)'s prohibition of appellate review did not apply to the order dismissing the claim, even though it clearly applied to the remand order itself. *Waco*, 293 U.S. at 143-44. The order dismissing the claim was appealable, the Court reasoned, because "in logic and in fact the decree of dismissal preceded that of remand and was made by the District Court while it had control of the cause. Indisputably this order is the subject of an appeal; and, if not reversed or set aside, is conclusive upon the petitioner." *Id.* at 143. The Court concluded that, though action on the order of dismissal "cannot affect the order of remand . . . it will at least, if the

dismissal of the petitioner's complaint was erroneous, remit the entire controversy . . . to the state court . . . ." *Id.* at 143-44.

This circuit has construed *Waco* to require, at a minimum, that the purportedly reviewable order have a conclusive effect upon the parties' substantive rights. *See Nutter*, 4 F.3d at 321. We have interpreted this conclusiveness requirement to mean that the challenged order must have a preclusive effect in subsequent proceedings. *See id.*

As the Supreme Court recently reiterated, *Waco* also requires that the reviewable decision be able to be "disaggregated" from the remand order itself because "the order of remand cannot be affected notwithstanding any reversal of a separate order." *Kircher v. Putnam Funds Trust*, 126 S. Ct. 2145, 2156 n.13 (2006) (internal quotation marks and citation omitted). Similarly, other circuits have had occasion to recognize as a key component of *Waco* the requirement that the reviewable decision be logically and factually precedent to the remand order. *See, e.g.*, *Carlson v. Arrowhead Concrete Works, Inc.*, 445 F.3d 1046, 1052 (8th Cir. 2006) (holding that *Waco* requires that the reviewed decision be both conclusive on the parties and logically and factually precedent to the remand order); *Hernandez v. Seminole County*, 334 F.3d 1233, 1241 (11th Cir. 2003) (construing *Waco* to require the challenged decision to be both conclusive on the parties and logically and factually precedent to the remand order); *Christopher v. Stanley-Bostitch, Inc.*, 240 F.3d 95, 99 (1st Cir. 2001) (holding *Waco* applicable to a decision that was not "inextricably intertwined with" or essential to the remand order); *Carr v. Am. Red Cross*, 17 F.3d 671, 675 (3d Cir. 1994) (explaining that *Waco* requires the reviewed portion of a remand order to be "both logically precedent to, and separable from, the remand decision" and measuring the severability of an issue by whether the district court reached it as part of an inquiry into the existence of subject matter jurisdiction); *see also Kimbro v. Velten*, 30 F.3d 1501, 1503 (D.C. Cir. 1994) (concluding that *Waco* applies to decisions that "logically precede[ ] the question of remand") (internal quotation marks and citation omitted). Our precedent also suggests that *Waco* applies to orders that are logically and factually "antecedent" to the order of remand. *See Borneman*, 213 F.3d at 825 (holding § 1447(d) inapplicable to two "antecedent components of the district court's remand order"). We therefore conclude

that logical and factual severability, along with conclusiveness, are central requirements of *Waco*'s exception to § 1447(d).

b.

i.

Blackwater argues that *Waco* permits appellate review of the district court's choice of remedy for its lack of removal jurisdiction. Specifically, the district court denied as moot Blackwater's motion to dismiss for lack of jurisdiction, choosing instead to cure its lack of removal jurisdiction by remanding Nordan's claims to state court. According to Blackwater, the district court's denial of its motion to dismiss is reviewable because it conclusively decided Blackwater's assertion that the DBA and the Constitution's foreign affairs and war powers clauses convey upon it an immunity from suit in either state or federal court. This position relies heavily on our decision in *Shives v. CSX Transp., Inc. (In re CSX Transp., Inc.)*, 151 F.3d. 164 (4th Cir. 1998). For the reasons that follow, its reliance is misplaced.

*Shives* concerned a railroad employee's action in state court under the Federal Employers' Liability Act ("FELA"), 45 U.S.C.A. §§ 51-60 (West 1986 & Supp. 2006), against his employer for injuries that he had sustained while unloading a train at a marine terminal. The employer removed the case to federal court, claiming that the case raised a federal question. The employer then moved to dismiss the case, arguing that, because the employee had been injured while performing maritime work, he could receive compensation for that injury only by filing a claim with the United States Department of Labor under the Longshore and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C.A. §§ 901-950 (West 2001 & Supp. 2006). Because 28 U.S.C. § 1445(a) (2000) prohibited removal of FELA claims that had been initiated in state court, the district court first had to determine whether the FELA or the LHWCA covered the employee's claims. The district court concluded that the employee had not been engaged in maritime work and, therefore, that the LHWCA did not apply. Because the LHWCA did not apply, the court concluded, the claim had been properly filed under the FELA. The district court then remanded the case to state court because § 1445(a) prohibited removal of the case.

"[W]ith some delicacy," we exercised appellate jurisdiction of the employer's appeal of the remand order. *Shives*, 151 F.3d at 168. We first concluded that the remand was not based on the district court's perceived lack of subject matter jurisdiction and, therefore, that it had not been issued pursuant to § 1447(c). *Id.* at 167. The district court, we reasoned, had not perceived that it lacked subject matter jurisdiction over the employee's FELA claim because federal and state courts have concurrent original jurisdiction over such claims. *Id.* Instead, it had remanded the case because § 1445(a) prohibited removal in that instance. *Id.*

Alternatively, we concluded that the district court's decision concerning the LHWCA's applicability to the employee's claim was a "conceptual antecedent" to the order of remand. *Id.* We noted that letting the remand order stand would

> commit to the state courts the decision of whether the LHWCA provided coverage to the employee. To follow that course would thus deprive the federal courts of their proper role in resolving this important issue and would circumvent Congress' intent that LHWCA coverage issues be resolved in the first instance by the Department of Labor and ultimately in the federal courts of appeals.

*Id.*

The procedural posture of this case distinguishes it from *Shives* in two critical particulars. First, as already noted, in *Shives* we exercised appellate jurisdiction over an appeal of a remand order that we somewhat hesitantly construed to be predicated upon § 1445(a)'s prohibition against removal of state-filed FELA claims, *not* upon § 1447(c)'s mandate to remand in the absence of subject matter jurisdiction. *See id.* at 167-68. Because the Supreme Court has clarified that § 1447(d)'s restriction on review applies only to remand orders made pursuant to § 1447(c), *see Thermtron*, 423 U.S. at 346, we concluded that § 1447(d) did not prohibit appellate jurisdiction, *see Shives*, 151 F.3d at 167. In other words, appellate jurisdiction existed in *Shives* because the district court's order did not rest upon lack of subject matter jurisdiction, the ground set forth in § 1447(c).[6] By contrast, as

---

[6]We drew a similar conclusion in *Mangold*, 77 F.3d at 1452, a decision that Blackwater misguidedly cites to ameliorate its jurisdictional position

we have explained, the district court remanded this case under § 1447(c) for lack of subject matter jurisdiction.

The second distinction that defeats Blackwater's reliance on *Shives* to support appellate jurisdiction in this case is the existence in *Shives* of a "conceptual antecedent" to the district court's remand order. As we have noted, a key component of *Waco*'s collateral order exception is that the challenged order "in logic and in fact . . . preceded that of remand." *Waco*, 293 U.S. at 143. The district court in *Shives* faced, on the one hand, § 1445(a), which prohibited removal of state-filed FELA claims, and, on the other hand, a notice of removal claiming that the plaintiff's claim was not brought under the FELA but was instead preempted by the LHWCA. We concluded in *Shives* that the district court had remanded the case because § 1445(a) prohibited removal of FELA claims. *See* 151 F.3d at 167. In order to reach its conclusion that § 1445(a) prohibited removal, the district court in *Shives* had to determine whether the LHWCA applied to the employee's claim. If the LHWCA was applicable, it would erase § 1445(a)'s protection of state-filed FELA claims from removal. *Shives* thus presented the court of appeals with an LHWCA coverage decision by the district court, a distinct determination that was not entangled with the jurisdictional analysis supporting the remand order. *Shives* itself does not cite to *Waco* or explain how the LHWCA coverage decision at issue in that case satisfied *Waco*'s severability standard. It is nevertheless clear that we took appellate jurisdiction in *Shives* because the district court made a decision that was a "conceptual antecedent" to the remand order. That conceptual antecedent took the form of the district court's substantive ruling that, because the plaintiff had not been engaged in maritime employment, the application of the LHWCA had not been triggered in that case. *See id.*

No such conceptual antecedent exists here. The district court made no DBA coverage decision that might form the basis of our review. In *Shives*, the district court reached the issue of the LHWCA's appli-

---

in this case. In that case, we concluded that § 1447(d) did not prohibit appellate review of the district court's remand order because that order did not arise from the district court's perception that it lacked subject matter jurisdiction, and thus was not issued pursuant to § 1447(c). *Id.*

cation to the plaintiff's claim, but not because it needed help deciding how to remedy its lack of removal jurisdiction. Rather, a determination of LHWCA coverage in *Shives* was a necessary step in the district court's inquiry into the permissibility of removal. Here, the district court appropriately did *not* decide whether the DBA applied to Nordan's claims because such an inquiry was both unnecessary to its jurisdictional analysis and unreachable on the merits once the court had determined that removal jurisdiction was absent.[7]

The fact that the district court's order made no determination of DBA coverage has significance beyond serving to distinguish the facts before us from those in *Shives*. It also supports our conclusion that the denial of Blackwater's motion to dismiss was not conclusive upon its substantive rights. We note again the caution in *Nutter* that, for the purpose of determining whether an order meets the criteria of *Waco*, "[a]t a minimum, the challenged portion of the order must affect the parties' substantive rights" by having a preclusive effect in subsequent proceedings. *Nutter*, 4 F.3d at 321. Here, the district court made no determination with respect to whether the DBA covered Nordan's claims. One of the first principles of preclusion, however, is that the precluding order either actually determined the issue sought to be precluded (in the case of issue preclusion) or issued a final judgment on the merits (in the case of claim preclusion). *See, e.g.*, *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 650, 653 (4th Cir. 2005). Therefore, neither the district court's refusal to decide whether the DBA applies to Nordan's claims, nor its concurrent conclusion that it lacked jurisdiction to reach the merits of the case will have any preclusive effect on Blackwater's ability to assert in state court its arguments concerning ordinary federal preemption.

We further note that remanding despite a potential federal defense does not hamstring the litigation of that defense in state court. In

---

[7]Another case upon which Blackwater significantly relies is also distinguishable on this basis. In *Jamison v. Wiley*, 14 F.3d 222, 233 (4th Cir. 1994), we concluded that *Waco*'s exception permitted review of the district court's refusal to substitute the United States as a defendant. We so concluded because the district court decided to deny substitution "*before* it decided to remand the case to state court, while it still had control of the case." *Id.*

*Lontz*, 413 F.3d 435, we decided a similar case in which the defendant had removed a state labor dispute to federal court, claiming federal question jurisdiction via complete preemption. The *Lontz* defendant had claimed complete preemption on the theory that Sections 7 and 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 157-158 (2000), required resolution of certain labor disputes before the National Labor Relations Board ("NLRB") rather than in state or federal court. We concluded that the NLRA provisions do not completely preempt state law and that the district court consequently lacked federal question removal jurisdiction. *Lontz*, 413 F.3d at 442-43. We directed the district court to remand, rather than dismiss, claims that, if the NLRA applied to them, would not be justiciable in state court. *See id.* at 443-44. We recognized in *Lontz* that, to the extent that the NLRA applied to the plaintiff's claims, the statute entitled the defendant to adjudication of those claims solely before the NLRB. *See id.* Nevertheless, that possible entitlement did not transform a defense of ordinary federal preemption into a right to a federal forum in which to raise and litigate that defense on the merits. Furthermore, "the futility of a remand to [state court] does not provide an exception to the plain meaning of § 1447(c)." *Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 49 (4th Cir. 1996). We therefore see no reason why Blackwater's possible entitlement to adjudication before the Department of Labor should allow it to characterize the district court's denial of its motion to dismiss as a conclusive denial of a substantive right.

Finally, once a district court determines that it lacks subject matter jurisdiction over a removed case, § 1447(c) directs that the case "shall be remanded." This mandate is so clear that, once a district court has found that it lacks subject matter jurisdiction in a removed case, no other fact-finding, legal analysis, or exercise of judicial discretion is necessary in order to follow the congressional directive; the decision to remand a case to remedy a lack of subject matter jurisdiction is purely ministerial. *See Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) (noting that § 1447(c) grants "no discretion to dismiss rather than remand [a removed] action" in which subject matter jurisdiction is lacking (internal quotation marks and citation omitted)), *superseded on other grounds by* 28 U.S.C. § 1442(a)(1) (2000). We therefore conclude that the district court's "decision" to remand instead of dismiss is not only not conclusive, but

also intimately enmeshed with and unseverable from the remand order.

### ii.

We similarly do not have jurisdiction under *Waco*'s severable order exception to review the district court's conclusions that neither complete preemption nor a unique federal interest created a federal question for the purposes of removal. Our decision in *Nutter*, 4 F.3d 319, forecloses the possibility.

The *Nutter* defendant had claimed that removal jurisdiction was proper because two federal statutes completely preempted the plaintiff's state-law claims and, therefore, presented federal questions. The district court rejected this complete preemption argument and remanded the case to state court for lack of removal jurisdiction. We concluded that this determination that the federal statutes did not completely preempt Nutter's state-law claims would have no preclusive effect in subsequent proceedings and thus that it was not a decision that was conclusive upon the parties. *Id.* at 321-22.

Similarly here, the district court's findings regarding complete preemption could foreclose state-court litigation of Blackwater's DBA and constitutional claims only if principles of preclusion prevented Blackwater from later raising a defense of ordinary federal preemption. Here, as we did in *Nutter*, we conclude that the district court's finding that complete preemption did not create federal removal jurisdiction will have no preclusive effect on a subsequent state-court defense of federal preemption. We conclude that *Nutter*'s reasoning applies with equal force to the district court's companion conclusion that Blackwater's asserted unique federal interest could not convey federal removal jurisdiction.

In addition, the district court's complete preemption and unique federal interest analysis cannot be disengaged from the remand order itself. In *Nutter*, we concluded that the district court's complete preemption conclusion was unseverable from its determination that it lacked removal jurisdiction: "the [district] court's findings regarding preemption and jurisdiction are indistinguishable. The preemption findings were merely subsidiary legal steps on the way to its determi-

nation that the case was not properly removed." *Id.* at 321 (internal quotation marks and citation omitted). Indeed, the district court's conclusions here with respect to complete preemption and the presence of a unique federal interest cannot be severed from the remand order, as they are simply the necessary legal underpinning to the court's determination that the case was not properly removed.[8]

3.

As we have explained, § 1447(d) also does not apply to remand orders based upon factors that the district court was not statutorily authorized to consider. *See Thermtron*, 423 U.S. at 351. A district court exceeds its statutory authority when it remands a case "on grounds that seem justifiable to [the court] but which are not recognized by the controlling statute." *Id.* For example, in *Thermtron* the Supreme Court held that § 1447(d) does not prohibit review of a

---

[8]Blackwater additionally argues that it is the functional equivalent of a federal officer and that removal jurisdiction therefore existed in the district court under 28 U.S.C. § 1442(a) (2000). Blackwater failed to raise this issue before the district court. Citing 28 U.S.C. § 1653 (2000), Blackwater nevertheless invites us to deem its notice of removal to be amended to include § 1442(a) as an asserted basis for removal, to interpret the district court's failure to consider that basis as severable from its remand order under *Waco*, and thereby to create jurisdiction to review an issue that the district court never considered.

While "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts," § 1653, Blackwater did not simply omit to cite to § 1442(a). Rather, it failed to argue before the district court that the provision supported removal. This court generally declines to consider issues raised for the first time on appeal absent a fundamental miscarriage of justice. *See, e.g.*, *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993). Even if it were appropriate, at this point, to deem an action taken that Blackwater never sought to take, it would not cure Blackwater's waiver of the possible jurisdictional basis by failing to marshal arguments and evidence in support of it below. *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 421-22 (4th Cir. 2005) (holding that a miscarriage of justice had not occurred, so as to require appellate review, when the district court failed to consider a cause of action not presented to it). We therefore do not consider whether § 1447(d) bars our review of this newly raised issue.

remand order based on the district court's assessment that its docket was too crowded to hear the case. *Id.*

Blackwater argues that the court exceeded its authority by remanding the case instead of dismissing it. The district court declined to dismiss the case as an alternative to remand because it determined that it did not have the authority to decide whether the DBA applied to Nordan's claims. *Nordan*, 382 F.Supp.2d at 814. It based this determination upon the erroneous belief that district courts play no role in the federal judicial review of DBA claims.[9] *Id.* Blackwater claims that this error concerning the pipeline of review of DBA claims demonstrates that the district court exceeded its authority by remanding and that the order is therefore not subject to § 1447(d)'s prohibition of review. It contends that the district court's remand order had nothing to do with its stated lack of removal jurisdiction and was instead based on an erroneous interpretation of the DBA's judicial review provisions.

The district court did not remand on statutorily unauthorized grounds. Rather, as we have already explained, the remand order was based upon the district court's judgment that removal jurisdiction was not present. Of course, we need look no further than § 1447(c) to conclude that Congress has not only authorized remand under such a circumstance, but also emphatically required it. The district court's error concerning the mechanism of judicial review of DBA claims is a non sequitur to its determination that remand was necessary because it lacked subject matter jurisdiction to reach any issue other than the removability of the action.

The correctness of the district court's jurisdictional analysis is irrelevant under § 1447(d). *See Mangold*, 77 F.3d at 1450. If it were not, we could circumvent the statute simply by declaring the remand order to be wrong. Such an interpretation of § 1447(d) would eviscerate the

---

[9]As we have noted, the federal district courts, followed by the federal courts of appeals and the United States Supreme Court, review DBA claims after they have been initially adjudicated in the Department of Labor. *See* 42 U.S.C. § 1653(b) (2000); *see also Lee v. Boeing Co., Inc.*, 123 F.3d 801, 803-05 (4th Cir. 1997) (describing agency and judicial review of DBA claims).

congressional policy of limiting litigation over the procedural matters that give rise to remand orders. We also need not decide whether, possessing a proper understanding of the district court's role in the judicial review of DBA claims, the district court would have been correct to dismiss the case rather than remand it. For the purposes of § 1447(d), the only relevant aspect of the district court's decision not to dismiss the case is that it was grounded upon a perceived lack of subject matter jurisdiction to decide DBA claims. The presence of an error in that analysis does not change its jurisdictional character. *Thermtron*'s exception to § 1447(d) for ultra vires remands thus does not apply in this case.

4.

Finally, Blackwater argues that § 1447(d) does not prohibit appellate review in this case because the district court's decision to remand undermines the constitutional sequestration of foreign affairs and war powers within the political branches of the federal government, out of reach of both the federal and the state judiciaries. Specifically, it contends that:

> Even if the DBA is not applicable, the constitutional separation of powers would preclude judicial intrusion into the manner in which the contractor component of the American military deployment in Iraq is trained, armed, and deployed. Decedents were performing a classic military function — providing an armed escort for a supply convoy under orders to reach an Army base — with authorization from the Office of the Secretary of Defense that classified their missions as "official duties" in support of the Coalition Provisional Authority. Federal courts, and *a fortiori* state courts, may not impose liability for casualties sustained in the battlefield in the performance of these duties. A North Carolina trial court may not adjudicate national political questions that the Supreme Court has deemed non-justiciable by federal courts.

Br. of Appellant pp. 10-11.

Blackwater overstates both the extent of our decision today and the state of the record. What we have before us is a complaint alleging

that the decedents were independent contractors working for a security company, a notice of removal, a motion to dismiss, and a remand order. Without intending to diminish the magnitude of the concerns that Blackwater articulates, we are unprepared to say at this juncture that the Constitution overrides Congress's ability to prescribe the limits of federal appellate jurisdiction in matters such as these.

Blackwater's argument that neither federal nor state courts may decide decedents' claims also proves too much. Distilled to their essence, Blackwater's arguments appear to be that we must have jurisdiction because we have no jurisdiction and that our founding document simultaneously creates and prohibits jurisdiction in this case. Both constitutional interpretations are too extravagantly recursive for us to accept. It is, in fact, axiomatic under our federalist system of government that state courts have the authority to decide federal constitutional issues. Blackwater may assert in state court, subject to review by the United States Supreme Court, its defenses regarding the constitutional exclusivity of a federal administrative remedy. As we recently noted in *Lontz*, the ability of a state court "to determine its own jurisdiction is a serious obligation, and not something that federal courts may easily take for themselves." 413 F.3d at 442. For these reasons, we decline to graft a new exception onto the already significantly burdened text of § 1447(d).

III.

Blackwater alternatively claims that, even if § 1447(d) prohibits appellate jurisdiction, we should issue a writ of mandamus to the district court. We are unpersuaded.

We may issue a writ of mandamus if the petitioner has no other adequate means to obtain relief to which there is a "clear and indisputable" right. *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 433 (4th Cir 2005). "Mandamus is a drastic remedy to be invoked only in extraordinary situations." *United States v. Moussaoui*, 333 F.3d 509, 516 (4th Cir. 2003) (internal quotation marks and citation omitted). Before we may determine whether Blackwater has met these stringent requirements, however, we must first inquire whether we have the authority to issue the writ.

A.

Congress's restriction on review of remand orders applies to review "on appeal or otherwise." § 1447(d). The Supreme Court has interpreted this language to forbid the use of mandamus to circumvent the requirements of § 1447(d). *Thermtron*, 423 U.S. at 343. Given that § 1447(d) precludes our ability to review the district court's order by appeal, precedent dictates that it applies to preclude our review by mandamus as well.

Further, given the state of the record at this juncture, reflecting only cursory, untested factual allegations, mandamus would still be inappropriate under these circumstances. Mandamus is an extraordinary remedy whose issuance depends upon the discretion of the court considering the petition. *United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 502, 511 (4th Cir. 1999) (citing *Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*, 426 U.S. 394, 403 (1976)). As the Supreme Court has instructed, we refrain from issuing a writ of mandamus in all but the most extraordinary circumstances to avoid circumventing congressional judgments about the proper scope of appellate jurisdiction. *See Kerr*, 426 U.S. at 403 ("A judicial readiness to issue the writ of mandamus in anything less than an extraordinary situation would run the real risk of defeating the very policies sought to be furthered by [the] judgment of Congress.").

B.

Blackwater argues, however, that we may issue a writ of mandamus because this case presents a conflict between § 1447(d) and the DBA. We held in *Borneman* that § 1447(d) could not "be read categorically when other statutes in tension with it are considered." 213 F.3d at 825. Because we interpreted the statute creating that tension to prohibit absolutely the district court's remand of the case, we concluded that this tension alternatively permitted review via mandamus. *Id.* at 826. However, the statute "in tension" with § 1447(d) in *Borneman* declared that certain state-court actions brought against federal employees "shall be removed." 28 U.S.C. § 2679(d)(2) (2000).[10] That

---

[10]The tension-creating statute in *Borneman* was a portion of the Federal Employees Liability Reform and Tort Compensation Act of 1988

statute thus directly and specifically addressed the removability of the relevant class of claims and contained language that channeled the district court's authority to remand in such cases. This absence of discretion to remand created the tension of which we spoke in *Borneman*. 213 F.3d at 825. By contrast, Blackwater has not identified any portion of the DBA that similarly addresses either the removability to federal district court of state court actions purportedly preempted by the DBA or the district court's peculiar lack of discretion with respect to remand of such cases.[11]

C.

Blackwater next argues that we may issue a writ of mandamus because the remand order risks unnecessary tension between state and federal judicial fora on an extraordinarily important question of federal law. Blackwater attempts to characterize our opinions in *Mangold*, *Jamison*, and *Shives* as authority for the proposition that a writ of mandamus may issue despite the applicability of § 1447(d) simply because the remand will have the practical effect of allowing a state court to decide a federal issue. Blackwater misapprehends the import of our jurisprudence in two fundamental respects.

First, Blackwater contorts the meaning of *Thermtron*, in which the Supreme Court held that federal appellate courts may review via man-

---

("the Westfall Act"). Sections 5 and 6 of the Westfall Act, 28 U.S.C. § 2679(b), (d) (2000), give federal employees absolute immunity from liability in tort for actions within the scope of their employment and create a procedural mechanism by which this immunity is enforced. When a federal employee is sued for a tort committed within the scope of his or her employment, the Attorney General may issue a certification that the facts underlying the claim did in fact arise within the scope of the defendant's federal employment. § 2679(d)(1)-(2). If such a certification is issued in a case brought in state court, the case "shall be removed without bond . . . to the [appropriate federal] district court," where the court must substitute the United States as the sole defendant. § 2679(d)(2).

[11]Indeed, the statutory authority under which Blackwater sought removal in this case simply allows that state-court actions raising a federal question "may be removed" to federal district court. § 1441(a).

damus remand orders that are not covered by § 1447(d). The *Therm-tron* Court concluded that, even though § 1447(d) did not apply to the remand order at issue, the order was nevertheless unreviewable by appeal because it was not a final judgment. 423 U.S. at 352-53, *over-ruled by Quackenbush*, 517 U.S. at 714-15 (holding that remand orders are final for the purposes of appellate review). *Thermtron*, therefore, established mandamus as a means to circumvent not § 1447(d)'s proscription against review of certain remand orders, but the finality requirement of 28 U.S.C. § 1291 (2000). 423 U.S. at 352-53. Similarly, in *Mangold* and *Jamison*, we referred to the use of the writ of mandamus not as an end-run around § 1447(d) but as an alternative to satisfaction of § 1291 or membership in the narrow class of collateral orders reviewable under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546-47 (1949). *See Mangold*, 77 F.3d at 1453; *Jamison*, 14 F.3d at 233-34. Because we conclude that Blackwater has not overcome the hurdle of § 1447(d), we have no occasion to consider whether the doctrine of finality has been satisfied in this case.

Second, Blackwater fails to acknowledge a key difference between the record before us today and the record before us in *Shives*. We expressed in *Shives* some doubt about our ability to exercise appellate jurisdiction, but concluded that we could, in the alternative, issue a writ of mandamus "[t]o avoid forfeiting the federal courts' role of reviewing LHWCA coverage issues." 151 F.3d at 167. As we have explained, in *Shives*, the district court decided whether the employee's claim, which had been filed in state court under the FELA, was in fact covered by the LHWCA. If the FELA provided the employee with his cause of action, then removal was improper because § 1445(a) prohibits removal of state-filed FELA claims. However, if the LHWCA governed the claim instead, the employee could not proceed under the FELA and § 1445(a) would not apply. Determination of the applicability of the LHWCA to the employee's claims was, therefore, a critical step in the district court's inquiry into the propriety of removal in that case. Furthermore, the parties had stipulated to the facts relevant to the question of whether the LHWCA applied to the employee's claim. *Shives* thus presented the court of appeals with an order in which the district court actually decided, on an uncontested factual record and as part of its inquiry into the permissibility of removal, whether the LHWCA covered the plaintiff's claims.

Here, as we have explained, we have no coverage question to review — and rightfully so, as the district court did not need to reach that issue as part of its removal jurisdiction analysis — nor do we have a factual record in which the legally material facts are uncontested. Given the preliminary nature of the proceedings below and the resulting lack of adversarial development of the factual allegations in this case, as well as the absence of an independently reviewable order, mandamus is not only not compelled by *Shives* but is also particularly inappropriate. We therefore decline to expand *Shives* so far afield of the original congressional intent embodied in § 1447(d).

## IV.

For the foregoing reasons, we conclude that we lack jurisdiction to hear this case and grant Nordan's motion to dismiss Blackwater's appeal. We also deny Blackwater's petition for a writ of mandamus. Finally, we deny as moot Nordan's motion to strike.

*APPEAL DISMISSED;*
*PETITION FOR WRIT OF MANDAMUS DENIED;*
*MOTION TO STRIKE DENIED AS MOOT*